UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| RACHEL LYNN WILLIAMSON and CONSTANCE NOCOA, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>GERARDO LORENZO LINARDUCCI, an Indiana individual, and INTEGRITY WEALTH PARTNERS, LLC, an Indiana limited liability Corporation, and DUCCI ENTERPRISES, LLC, an Indiana limited liability corporation,<br><br>Defendants. | CASE NO.: 1:24-CV-01526-TWP-MJD |

### DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS

Gerardo Lorenzo Linarducci, *et al.*, ("Defendants") by counsel, files this *Brief in Support of Motion to Dismiss*.

### FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND

On September 6, 2024, Rachel Lynn Williamson and Constance Nocoa, ("Plaintiffs") filed a *Class Action Complaint and Demand for Jury Trial* on September 6, 2024 (the "Complaint") (Dkt. No. 1). Plaintiffs allege that Gerardo Lorenzo Linarducci ("Linarducci") was in the business of selling investments through his "financial advisor/wealth management firm" Integrity Wealth Partners, LLC and Ducci Enterprise, LLC (collectively "Defendants"). (Compl. ¶ 3). Plaintiffs

also allege that Linarducci was an employee of Drive Planning, LLC ("Drive Planning, LLC"). (*Id.*)

### *The Ponzi Scheme*

Plaintiffs allege that they are the victims of a ponzi scheme orchestrated by non-parties Drive Planning, LLC, and its founder, Russell Todd Burkhalter. Plaintiffs admit that their allegations about the alleged ponzi scheme are largely made on information and belief rather than personal knowledge, based on the SEC's investigation and publicly filed materials in the SEC receivership venued in the Northern District of Georgia. (*Id.* p. 1) ("Plaintiffs allege the following upon information and belief, except as to those allegations concerning Plaintiffs, which are alleged upon personal knowledge." (citing *SEC v. Drive Planning et al.*, 1:24-cv-03583-VMC (N.D. Ga.)).

The alleged ponzi scheme centered around Real Estate Acceleration Loans ("REALs") (*Id.* ¶¶ 12, 40–42). REALs are promissory notes by which Plaintiffs loaned a principal sum to Drive Planning at a fixed interest rate to be payable in three months, with an option to rollover all or part of that amount at the same current rate or for another three-month period. (*Id.* ¶¶ 22, 43; Compl. Exs. B & C (Dkt. Nos. 1-2 and 1-3)). The promissory note was purportedly "secured by real property located in" a portfolio owned by Drive Planning. (*Id.* ¶¶ 40–41). Drive Planning would purportedly invest the money loaned by Plaintiffs in the real estate and pay the rate of return to Plaintiffs. (*Id.* ¶¶ 12, 22, 40–41).

Plaintiffs allege that the REAL agreements were actually unregistered securities and were sold to Plaintiffs by Drive Planning to further ponzi scheme. (*Id.* ¶¶ 2, 43). Plaintiffs allege that none of the loans they and other customers of Driver Planning made to Drive Planning were actually invested and that the interest would not be paid from returns on investment but were instead paid out of other loans made to Drive Planning by other persons similarly situated to Plaintiffs. (*Id.* ¶¶ 3, 21, 25–26, 28–30, 37).

### *Defendants' Alleged Actions*

Plaintiffs allege that Linarducci acted as "a sales representative trained and employed by Drive Planning" to sell REALs to purported investors, including Plaintiffs. (*Id.* ¶ 32). They allege he did so through promotional materials that advertised the REALs (*id.*; Compl. Ex. A (Dkt. No. 1-1)), and by making various representations about the REALs "in person, over the telephone, through the mail, and through email." (*Id.* ¶¶ 38, 65.) Specifically, Plaintiffs allege that

> Linarducci told potential investors that he was a "managing director" at Drive Planning. As a sales agent trained by and operating on behalf of Drive Planning, Linarducci falsely told REAL investors that Drive Planning pooled REAL investments and loaned that money out. He promised these investors a guaranteed ten percent return on their money. He did not, however, tell them that the returns would come from new investors money.

(*Id.* ¶ 38). Plaintiffs also allege that

> Defendants put their logos on Drive Planning marketing materials without conducting adequate due diligence to confirm that returns promised to investors were actually being paid from proceeds identifies on the marketing materials.

3

(*Id.* ¶ 39). The Complaint goes on to allege that during those in-person, telephonic, or email solicitations, Linarducci "ma[de] untrue and/or misleading statements of material fact" (Compl. ¶¶ 64, 81) without specifying with any particularity what those alleged statements were, or alternatively, that such statements were strictly limited to the written materials attached to the Complaint. Count III goes further by alleging that Linarducci made these unspecified statements "intentionally" and did so "malicious[ly], reckless[ly], [and] willful[ly]." (Compl. ¶¶ 82, 86.) They allege that by these means, Linarducci "induced" Plaintiffs "to sign a REAL agreement." (*Id.* ¶¶ 40–41.)

Plaintiffs allege the REALs were "sold in a private offering which did not qualify as an exempt offering under SEC regulations" and "were not sold on any national securities exchange." (*Id.* ¶¶ 45–46). Finally, Plaintiffs allege "[n]either Plaintiffs nor Linarducci had access to the type of information normally provided in a prospectus of a SEC registration statement such as Form S-1. (*Id.* ¶ 67).

## ARGUMENT

### A. Standard for motions to dismiss under Fed. R. Civ. Proc. 12(b)(6).

To survive dismissal under Rule 12(b)(6), Plaintiffs must state a claim for relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility requires "more than a sheer possibility" of unlawful conduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The well-pleaded facts of a complaint must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. While the Court must accept all facts pled in the

4

complaint as true, it may disregard "labels and conclusions" and "naked assertion[s] devoid of further factual enhancement." *Id.* (citing *Twombly*, 550 U.S. at 555, 557).

Federal Rule of Civil Procedure 9(b) provides that a complaint alleging fraud must state the "circumstances constituting fraud" with "particularity." This includes the "who, what, when, where, and how" of the fraud. *In re HealthCare Compare Corp. Sec. Litig.*, 75 F.3d 276, 281 (7th Cir. 1996) (cleaned up); *see also Menzies v. Seyfarth Shaw LLP*, 943 F.3d 328, 338 (7th Cir. 2019) (Rule 9(b) requires "precision and some measure of substantiation") (cleaned up).

### B.  Plaintiffs fail to state a Securities Act 12(a)(2) claim.

Plaintiffs' only federal claim is a violation of Section 12(a)(2) of the Securities Act of 1933, which imposes civil liability in connection with a prospectus containing material misstatements or omissions. Plaintiffs fail to state a claim under Section 12(a)(2) because: (1) they have not alleged that there is a prospectus in this case, and (2) they further allege that the alleged unregistered securities were sold in a "private offering." (Compl. ¶ 45.) These deficiencies in the Complaint require dismissal under Rule 12(b)(6).

### B.1.  Section 12(a)(2) Claims apply only to public offerings involving a prospectus.

The Securities Act of 1933, Section 12(a)(2), imposes liability on any person who

> offers or sells a security (whether or not exempted by the provisions of section 77c of this title, other than paragraphs (2) and (14) of subsection (a) of said section), by the use of any means or instruments of transportation or communication in interstate commerce or of the mails, **by means of a prospectus or oral communication**,

5

> which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading (the purchaser not knowing of such untruth or omission), and who shall not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of such untruth or omission

15 U.S.C. § 77*l*(a)(2). The broader Securities Act of 1933, of which Section 12(a)(2) is a part, "protects investors by ensuring that companies issuing securities (known as 'issuers') make a full and fair disclosure of information relevant to a public offering." *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 178 (2015) (cleaned up). "The linchpin of the Act is its registration requirement." *Id.* "The primary innovation of the 1933 Act was the creation of federal duties—for the most part, registration and disclosure obligations—in connection with public offerings." *Gustafson v. Alloyd Co.*, 513 U.S. 561, 571 (1995). Section 10 of the Securities Act requires issuers to file a registration statement with the Securities and Exchange Commission and create a prospectus that will be disclosed to the public that "contains the information in the registration statement." 15 U.S.C. § 77*j*(a)(1).

    The Supreme Court has made clear that "the liability provisions of the 1933 Act are designed for the primary purpose of providing remedies for violations of the obligations it had created." *Gustafson*, 513 U.S. at 572. Accordingly, Section 11 of the Securities Act [15 U.S.C. § 77*k*] provides a remedy for untrue statements in registration statements. Section 12(a)(1) [15 U.S.C. § 77*l*(a)(1)] provides a remedy

6

for the sale of unregistered securities. And Section 12(a)(2) [15 U.S.C. § 77*l*(a)(2)] provides a remedy for material misrepresentations or omissions in prospectuses.

Plaintiffs allege that the REALs were unregistered securities (Compl. ¶¶ 2, 43), and thus, Section 11 would provide a remedy for the alleged sale of unregistered securities. However, Plaintiffs did not assert a Section 11 claim. Rather, Plaintiffs assert only a Section 12(a)(2) claim, which requires Plaintiffs to allege that a "prospectus" exists regarding a security that was sold through a "public offering."

The Supreme Court has defined "prospectus" narrowly as "a term of art referring to a document that describes a public offering of securities by an issuer or controlling shareholder." *Gustafson*, 513 U.S. at 584. The Court rejected a broader definition of "any written communication offering a security for sale," and also held "prospectus" does not mean the words "notice, circular, advertisement, [and] letter." *Id.* at 574–575. Instead, the Court said a prospectus is the same document that is described in Section 10, which must "contain the information in the registration statement." *Id.*

The addition of the phrase "or oral communications" in Section 12(a)(2) does not expand the scope of the definition of prospectus. On that point, the Supreme Court was crystal clear and simply applied the consensus among lower courts: "The Courts of Appeals agree that the phrase 'oral communication' is restricted to oral communications *that relate to a prospectus*." *Gustafson*, 513 U.S. at 567–68 (emphasis added).

7

Courts that have applied *Gustafson* require that Plaintiffs allege that a security was offered or purchased in connection with a prospectus. *Ong ex rel. Ong IRA v. Sears, Roebuck & Co.*, 388 F. Supp. 2d 871, 890 (N. D. Ill. 2004) ("[s]tanding under § 12(a)(2) similarly requires the purchase of securities offered in the prospectus."); *Abrams v. Van Kampen Funds, Inc.*, 2002 WL 1160171, at *5 (N.D. Ill. May 30, 2002) ("To state a claim under ... section 12(a)(2) of the Securities Act, plaintiffs must allege that defendant is responsible for untrue statements of material fact or omitted material facts in a ... prospectus.").

*Gustafson* defined "prospectus" as a document "soliciting the public" and relating to a "public offering." *Gustafson*, 513 U.S. at 569, 574, 576. According, since *Gustafson*, federal courts have also routinely confirmed that a claim may not be made under Section 12(a)(2) in connection with a "private offering." *See Yung v. Lee*, 432 F.3d 142, 149 (2d Cir. 2005) (noting that *Gustafson* is routinely cited in multiple circuits for the conclusion that private offerings do not give rise to claims under Section 12(a)(2)); *see also In re Valence Tech. Sec. Litig.*, 1996 WL 37788, at *4 (N.D. Cal. Jan. 23, 1996) ("§ 12(2) applies only to a transaction which requires a prospectus to be delivered"), *aff'd in part and rev'd in part on other grounds in Berry v. Valence Tech., Inc.*, 175 F.3d 699 (9th Cir. 1999).

**B.2.   Plaintiffs did not allege a "public offering" involving a "prospectus."**

Plaintiffs' Complaint all but admits that there is no prospectus in this case. They allege "[n]either Plaintiffs nor Linarducci had access to the type of information normally provided in a prospectus of a SEC registration statement such as Form S-1." (Compl. ¶ 67). That is fatal to their claim. liability under this section always

8

requires a prospectus. *In re Edward D. Jones & Co., L.P. Sec. Litig.*, No. 2:18-CV-00714-JAM-AC, 2019 WL 2994486, at *8 (E.D. Cal. July 9, 2019) (dismissing Section 12(a)(2) claim because "[t]he Amended Complaint cites no formal prospectus, and the marketing materials in this case are not a substitute for the required prospectus.").

Plaintiffs also allege that the REALs "were sold in a *private offering*, which did not qualify as an exempt offering under SEC regulations." (Compl. ¶ 45) (emphasis added). The Complaint could not be clearer. The sale of the alleged securities in this case were not sold in public offerings. In some cases, Courts have applied a multi-factor test to determine whether a sale or offer is a "public offering." *Faye L. Roth Revocable Tr. v. UBS Painewebber, Inc.*, 323 F. Supp. 2d 1279, 1291 (S.D. Fla. 2004) (compiling cases in which plaintiffs argued that private placements were actually public offerings). But that approach is not necessary here when Plaintiffs have expressly alleged that the alleged securities "were sold in a private offering." (Compl. ¶ 45.)

Whether or not the private offerings were properly qualified "under SEC regulations" is immaterial to the conclusion here that the REALs were not public offerings. The SEC regulations Plaintiffs may have in mind are those in Section 506 of Regulation D of the Securities Act that apply to "private placements." 17 C.F.R. § 230.506. These regulations exempt issuers from having to register or file documents with the SEC. *Premier Cap. Mgmt., L.L.C. v. Cohen*, No. 02 C 5368, 2003 WL 21960357, at *10 (N.D. Ill. Aug. 15, 2003) ("Sales of securities made pursuant to

9

Regulation D, 17 C.F.R. § 230.506, are not public offerings."). By pleading that Defendants did not comply with Section 506, Plaintiffs are likely attempting to plead around the robust body of case law holding, in no uncertain terms, that securities offered through "private placements" do not involve a prospectus and are therefore not actionable under Section 12(a)(2). *Premier Cap. Mgmt., L.L.C.*, 2003 WL 21960357, at *10 ("Section 12(a)(2) applies only to public offerings, not private placements. … [C]auses of action brought under § 12(a)(2), where the transaction at issue was a private placement rather than a public offering, are subject to dismissal."); *Gandhi v. Sitara Cap. Mgmt., LLC*, 689 F. Supp. 2d 1004, 1009 (N.D. Ill. 2010) (dismissing Section 12(a)(2) claim where alleged "prospectus" was actually a "Confidential Private Offering Memorandum").

But whether or not the REALs complied with Section 506 is immaterial to the fact that Plaintiffs allege that only "private offerings" are at issue in this case and not "public offerings"—which are the only offerings that qualify for Section 12(a)(2) claims. If Plaintiffs contend that the REALs did not comply with Section 506, then Plaintiffs should not have tried to circumvent the public offering pleading requirement of Section 12(a)(2) but instead brought a claim under Section 12(a)(1). *Faye L. Roth Revocable Tr.*, 323 F. Supp. 2d at 1288 ("I conclude that this claim does not lie under Section 12(a)(2), but under Section 12(a)(1), which allows a party to bring an action against an offeror or seller for noncompliance with regulation requirements."). They did not do so.

The Court should dismiss Plaintiffs' Section 12(a)(2) claim because it fails to satisfy the essential statutory elements as interpreted by the Supreme Court.

\* \* \*

Plaintiffs' attempt to highlight that Defendants' "private offering" did not comply with SEC regulations has a more practical explanation. Legal commentators have recognized that "[t]he obvious intent of *Gustafson* was to make Rule 10b-5 (a scienter based standard) the norm for civil liability in private offerings, because under *Gustafson*, 12(2) [*i.e.*, Section 12(a)(2)] now only applies to 'public' offerings." Joseph Shade, *Financing Exploration: Requirements of Federal and State Securities Laws*, 37 Nat. Resources J. 749, 779 (1997); *accord Kennedy v. Trustmark Nat. Bank*, No. 3:05CV220-RS, 2006 WL 140707, at \*6 (N.D. Fla. Jan. 17, 2006) ("Courts have interpreted *Gustafson* to limit Section 12(a)(2) to public offerings only and to require that liability for fraud in connection with private offerings be based on Rule 10b-5."); *see also Gustafson*, 513 U.S. at 592 ("To be sure, § 10(b) of the 1934 Act, 15 U.S.C. § 78j(b), and SEC Rule 10b–5 provide a cause of action for misstatements made in connection with secondary and private securities transactions."). By pleading that Defendants' "private offerings" "did not qualify as exempt offerings," Plaintiffs here are attempting to thread the needle between having to concede that *Gustafson*'s holding bars their Section 12(a)(2) claim, on the one hand, or having to meet all of the heightened pleading requirements of Rule 9(b) and the Public Litigation Reform Act when bringing a Section 10(b) and Rule 10b-5 claim, on the

11

other. *See Cornielsen v. Infinium Capital Mgmt., LLC*, 916 F.3d 589, 598 (7th Cir. 2019).

As explained above, Plaintiffs' Section 12(a)(2) claim fails under *Gustafson*. Even if it does not, Plaintiffs claim is still subject to heightened pleading requirements, which it cannot meet.

**C.    Plaintiffs' Securities Act 12(a)(2) claim (Count I) and common law fraud claim (Count III) do not meet the heightened pleading standards under Rule 9(b).**

In some cases, Plaintiffs do not need to plead a Section 12(a)(2) claim with particularity because "neither fraud nor scienter are elements of a Section 12(a)(2) claim." *Premier Cap. Mgmt., L.L.C.*, 2003 WL 21960357, at *10. But when a Section 12(a)(2) claim "sounds in fraud" it is subject to those heightened pleading standards. Plaintiffs have attempted to plead around the possibility that Rule 9(b)'s heightened pleading standard applies by "exclude[ing] and disclaim[ing] any allegation that could be construed as fraud or intentional or reckless misconduct, as this Count is based solely on claims of strict liability and/or negligence under the Securities Act." (Compl. ¶ 62).

But Plaintiffs' disclaimer does not control. In *W. Palm Beach Firefighters' Pension Fund v. Conagra Brands, Inc.*, 495 F. Supp. 3d 622, 636 (N.D. Ill. 2020), *aff'd sub nom. Nat'l Elevator Indus. Pension Fund v. Conagra Brands, Inc.*, No. 21-1155, 2022 WL 1449184 (7th Cir. May 9, 2022), the plaintiffs similarly attempted to "plead around" fraud when asserting their Section 11 and Section 12 claims. Like the Plaintiffs here, the complaint in *Conagra Brands* asserted a Section 12 claim that disclaimed "any allegation of fraud" and asserted that the claim was "based on

12

strict liability and negligence arising out of Defendants' failure to make reasonable investigation into the bases for offering document statements." *Id.* at 636; *c.f.* (Compl. ¶ 62 ("Plaintiffs expressly exclude and disclaim any allegation that could be construed as fraud…as this Count is based solely on claims of strict liability and/or negligence.")) The Court held, however, that "courts generally look beyond such disclaimers to determine whether a Securities Act claim sounds in fraud." *Conagra Brands*, 495 F. Supp. 3d at 636.

Similarly here, the scheme alleged in the Complaint sounds in fraud. So, Rule 9(b) applies to Plaintiffs' federal claim as well as its claim for common law fraud. And Plaintiffs cannot meet the heightened pleading standards.

### C.1. Plaintiffs' Section 12(a)(2) claim sounds in fraud.

"A claim that 'sounds in fraud'—in other words, one that is premised upon a course of fraudulent conduct—can implicate Rule 9(b)'s heightened pleading requirements." *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007) (citations omitted); *Conagra Brands, Inc.*, 495 F. Supp. 3d at 636. A Complaint alleges a "unified course of fraudulent conduct" when all the purported false or misleading statement or material omissions are "false or misleading for the same reasons." *Conagra Brands, Inc.*, 495 F. Supp. 3d at 637. "Where a Securities Act claim merely relies on the same alleged misrepresentations that are central to the section 10(b) fraud claim, that claim is likewise grounded in fraud." *Id.* at 636 (cleaned up); *see Melder v. Morris*, 27 F.3d 1097, 1100 n.6 (5th Cir. 1994) (Rule 9(b) applies to Securities Act claim where the complaint adopts "wholesale" the

13

"allegations under the securities fraud claims for purposes of the Securities Act claims").

Here, Plaintiffs allege a unified scheme in their Complaint in which the alleged misrepresentations that support Count I (12(a)(2) claim) are inseparable from those alleged in Count III (common law fraud). Plaintiffs allege that Defendants distributed the REAL brochure" (Compl. ¶ 34) and "falsely told REAL investors that Drive Planning pooled REAL investments and loaned that money out. He promised these investors a guaranteed ten percent on their money. He did not, however, tell them that the returns would come from new investors' money." (Compl. ¶ 38.) Plaintiffs allege that Defendant Linarducci then "induced" the Plaintiffs "to sign a REAL agreement" at his "behest" and invest their money in the alleged Ponzi scheme. (Compl. ¶¶ 40–42).

These operative facts underlying the alleged unified scheme are what Plaintiffs describe as "FACTS COMMON TO ALL COUNTS" (Compl. p. 4) and facts that are typical of every member of the putative class. (Compl. ¶¶ 57, 59.) In fact, the same alleged facts that purportedly support a Section 12(a)(2) claim are also used to support a common law fraud claim without distinction. (*Compare* Compl. ¶ 61 ("Plaintiffs restate and reallege paragraph 1 through 60 as though fully set forth herein as paragraph 61") *with* Compl. ¶ 80 ("Plaintiffs restate and reallege paragraph 1 through 60 as though fully set forth herein as paragraph 80")). Plaintiffs do not distinguish between any predicate alleged facts that form the basis for their Count I 12(a)(2) claim and their Count III common law fraud claim—they

14

allege one unified scheme based on the same underlying facts and alleged misrepresentations. Finally, the Complaint does not attempt to distinguish between the various acts of each defendant but attributes the same actions to each. *See Conagra Brands, Inc.*, 495 F. Supp. 3d at 637 (distinguishing conduct of defendants that sounded in fraud from other defendants whose conduct did not sound in fraud).

### C.2. Plaintiffs' 12(a)(2) claim that sounds in fraud and its common law fraud claim have not been alleged with sufficient particularity under F.R.C.P. 9(b).

Federal Rule of Civil Procedure 9(b) "ordinarily requires describing the who, what, when, where, and how of the fraud." *Kahn v. Walmart Inc.*, 107 F.4th 585, 594 (7th Cir. 2024). It requires "precision and some measure of substantiation." *Menzies v. Seyfarth Shaw LLP*, 943 F.3d 328, 338 (7th Cir. 2019).

As to the "what" of the fraud allegations, Defendants do not necessarily take issue with the "particularity" of the written brochure attached as Exhibit A to the Complaint. Rather, the deficiency lies in the Complaint's failure to firmly commit that its fraud allegations are limited to those materials. Instead, it includes open-ended allegations that Linarducci held "in-person sales presentations" (Compl. ¶ 34) and "solicited Plaintiffs in person, over the telephone, through the mail, and through email" (Compl. ¶ 65) in which he "induced" Plaintiffs to sign REAL agreements at his "behest." (Compl. ¶¶ 40–42.) The Complaint goes on to allege that during those in-person, telephonic, or email solicitations, Linarducci "ma[de] untrue and/or misleading statements of material fact" (Compl. ¶¶ 64, 81) without specifying with any particularity *what* those alleged statements were, or alternatively, that such statements were strictly limited to the written materials

15

attached to the Complaint. Count III goes further by alleging that Linarducci made these unspecified statements "intentionally" and did so "malicious[ly], reckless[ly], [and] willful[ly]." (Compl. ¶¶ 82, 86.)

In the absence of an allegation confining the alleged misstatements to the written brochure, Defendants are left only to guess at what additional unspecified misstatements Plaintiffs are alleging, much less the "who, …when, where, and how of the fraud." *Kahn v. Walmart Inc.*, 107 F.4th 585, 594 (7th Cir. 2024). When and where were these in-person meetings or telephone calls, with whom, and what was said or communicated? Even as to the written materials, the Complaint is devoid of any detail regarding when, where, or how the lead Plaintiffs received any of those materials, or even if they saw them at all. These details are required to satisfy Rule 9(b)'s pleading requirements for averments of fraud.

As a result, Count I (12(a)(2) claim) and Count III (common law fraud) should be dismissed.

**D.     Without a federal claim, the Court should decline to exercise supplemental jurisdiction over any remaining state law claims.**

The Complaint invokes this Court's subject matter jurisdiction based solely on federal question jurisdiction and supplemental jurisdiction for state law claims. (Compl. ¶ 10, citing 28 U.S.C. § 1331 (federal question) and § 1367(a) (supplemental).) Its sole federal claim is Count I asserted under Section 12(a)(2) of the Securities Act [15 U.S.C.A. § 77l(a)(2)].

For the reasons discussed above, Plaintiffs' sole federal claim should be dismissed. And without a federal claim, the Court should also decline to exercise its

16

discretionary supplemental jurisdiction over any remaining state law claims. *See* 28 U.S.C. § 1367(c)(3) (allowing district court to "decline to exercise supplemental jurisdiction" over state-law claims if the court has dismissed all claims over which it has original jurisdiction). "[I]t is the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial." *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999). The Seventh Circuit "presume[s] that a district court will relinquish jurisdiction over supplemental state-law claims when no federal claims remain in advance of a trial." *Walker v. McArdle*, 861 F. App'x 680, 687 (7th Cir. 2021). "Indeed, this presumption counsels that the better practice is for district courts to state explicitly their reasons for taking the opposite course." *Groce*, 193 F.3d at 501; *see also, Stamatio v. Hurco Companies, Inc.*, 885 F. Supp. 1180, 1186 (S.D. Ind. 1995) (declining to exercise supplemental jurisdiction over common law fraud claims after dismissing federal securities claims); *Tirapelli v. Advanced Equities, Inc.*, 215 F. Supp. 2d 964, 974 (N.D. Ill. 2002) (same).

Thus, the Court should decline to exercise supplemental jurisdiction over any remaining state-law claims and dismiss them without prejudice.

## **CONCLUSION**

THEREFORE, Defendants Gerardo Lorenzo Linarducci, *et al.*, request the Court for an order dismissing Counts I and III, with prejudice, and to dismiss the remaining state-law claims without prejudice, and for all other just and proper relief.

17

Respectfully submitted,

*/s/ Kevin D. Koons*
Kevin D. Koons, Atty. No. 27915-49
Justin R. Olson, Atty. No. 31450-49
KROGER, GARDIS & REGAS, LLP
111 Monument Circle, Suite 900
Indianapolis, IN 46204
Phone: (317) 692-9000
kkoons@kgrlaw.com
jolson@kgrlaw.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on November 15, 2024, I filed the foregoing *Defendants' Brief in Support of Motion to Dismiss* electronically with the Clerk of the Court. Notice of this filing will be sent to the following by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

Mark E. Maddox
Maddox Hargett & Caruso, P.C.
10150 Lantern Road
Suite 175
Fishers, IN 46037
mmaddox@mhclaw.com

Shawn M. Good
Ross M. Good
The Good Law Group
800 E. Northwest Hwy
Suite 814
Palatine, IL 60074
Shawn@thegoodlawgroup.com
ross@thegoodlawgroup.com

Brian Pastor
Sonn Law Group PA
3455 Peachtree Rd Rd NE
Ste 500
Atlanta, GA 30326
bpastor@sonnlaw.com

Jeffrey R. Sonn
Sonn Law Group PA
19495 Biscayne Blvd.
Suite 607
Aventura, FL 33180
jsonn@sonnlaw.com

/s/ *Kevin D. Koons*
Kevin D. Koons

KROGER, GARDIS & REGAS, LLP
111 Monument Circle, Suite 900
Indianapolis, IN 46204
Phone: (317) 692-9000