UNITED STATES DISTRICT COURT
FOR THE SOURTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| RACHEL LYNN WILLIAMSON and CONSTANCE NOVOA, individually and on behalf of all others similarly situated, Plaintiffs, | ) ) ) ) ) ) |
| v. | ) ) Case No.: 1:24-CV-01526-TWP-MJD |
| GERARDO LORENZO LINARDUCCI, an Indiana individual, and INTEGRITY WEALTH PARTNERS, LLC, an Indiana limited liability corporation, and DUCCI ENTERPRISES, LLC, an Indiana limited liability corporation, Defendants. | ) ) ) ) ) ) ) ) |

**PLAINTIFFS' BRIEF IN RESPONSE TO
DEFENDANTS' MOTION TO DISMISS**

NOW COMES Plaintiffs, Rachel Lynn Williamson and Constance Novoa (collectively "Plaintiffs") in response to Defendants' Motion to Dismiss, state as follows:

**A. Standards for Motion to Dismiss pursuant to Fed. R. Civ. Proc. 12(b)(6) and Fed. R. Civ. Proc. 9(b).**

As Defendants correctly state, to survive dismissal under Rule 12(b)(6), Plaintiffs must state a claim for relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility requires "more than a sheer possibility" of unlawful conduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The well-pleaded facts of a complaint must "allow[] the court to draw the reasonable inference that the defendant is liable or the misconduct alleged." *Id.* The well-pleaded facts of a complaint must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

1

Defendants go on to assert that the heightened requirements of Fed. R. Civ. Proc. 9(b) apply in this matter because it alleges fraud.[1] The validity of that assertion, and the nature of those heightened pleading requirements, will be discussed below in Section C.

**B. Contrary to Defendants' assertion, Plaintiffs' Complaint properly alleges violations of Section 12(a)(2) of the Securities Act of 1933 (Securities Act).**

Defendants challenge Count I of Plaintiffs' Complaint for failure to state a claim under Section 12(a)(2) of the Securities Act, asserting that they have not alleged the existence of a "prospectus" and that they have not alleged a public offering. Defs. Brief at 5. Neither assertion has merit. Moreover, the Plaintiffs' allegations track those made in the complaint filed on August 13, 2024 in *United States Securities and Exchange Commission v. Drive Planning, LLC* (1:24-cv-03583) which is pending in the Northern District of Georgia against Drive Planning, LLC. That Court found the allegations in the complaint sufficient to enter an injunction which remains in effect for a Preliminary Injunction which remains in effect as of this filing.

1. <u>Plaintiffs have alleged properly and with particularity the existence of a "prospectus" within the meaning of the Securities Act of 1933.</u>

As Defendants acknowledge, section 12(a)(2) imposes liability upon a seller of a security by means of *either a prospectus or oral communication* that includes an untrue statement of material fact or omits a material fact. 15 U.S.C. § 77*l*(a)(2). Defendants emphasize that "[t]he

---

[1] Rule 9(b) of the Federal Rules of Civil Procedure provides: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." This heightened pleading requirement is a response to the "great harm to the reputation of a business firm or other enterprise a fraud claim can do." *See Payton v. Rush-Presbyterian-St. Luke's Med. Ctr.,* 184 F.3d 623, 627 (7th Cir.1999) (internal quotations omitted). Thus, "[a] plaintiff claiming fraud or mistake must do more pre-complaint investigation to assure that the claim is responsible and supported, rather than defamatory and extortionate." *Id.* A complaint alleging fraud must provide "the who, what, when, where, and how." *See U.S. ex rel. Gross v. AIDS Research Alliance-Chicago,* 415 F.3d 601, 605 (7th Cir. 2005) (quoting *DiLeo v. Ernst & Young,* 901 F.2d 624, 627 (7th Cir.1990)).

primary innovation of the 1933 Act was the creation of federal duties – for the most part, registration and disclosure obligations – in connection with public offerings." Defs. Brief at 6, *citing Gustafson v. Alloyd Co.*, 513 U.S. 561, 571 (1995). As such, pursuant to the Act, issuers of securities must comply with disclosure requirements set forth in 15 U.S.C. § 77*j*(a)(1).

"Prospectus" is defined in the Act as "any prospectus, notice, circular, advertisement, letter, or communication, written or by radio or television, which offers any security for sale or confirms the sale of any security." 15 U.S.C. § 77b(a)(10). Though Defendants rely upon *Gustafson* to suggest that the offerings at issue herein do not fit the Act's definition of a "prospectus," their assertions are flawed. As the Court explained in *Gustafson,* applying rules of statutory construction, "prospectus refers to a document soliciting the public to acquire securities." *Gustafson,* 513 U.S. at 569. The Court went on to explain that the term "communication," as used in the list, refers to documents of wide dissemination as opposed to "face to face or telephone conversations." *Id.*

Pursuant to Section 10 of the Securities Act, a prospectus is a document that must generally include the information contained in the registration statement that a company must file with the SEC prior to an initial public offering. *See* Gustafson, 513 U.S. at 569. That information includes, among other things, certified financial statements and information about the management of the company. *Id.* at 574. Plaintiffs allege the existence of a prospectus within the meaning of the Act by describing promotional materials, including a "large-font three-page color brochure" (the "REAL brochure") that set forth a description of the particulars of the investments in clear bullet points. described the investments in bullet points. Complaint ¶32. Those bullet points set forth the term of the offering, the guaranteed return, the collateral, and the minimum sum to be invested. *Id.; see* Exhibit A to Complaint. The Complaint goes on to detail

further specifications contained in the offering. Specifically, Plaintiffs allege that the brochures disseminated by Defendants contain the following information:

- If you have $20,000 you can participate;
- You can use money from your retirement account;
- You don't have to be an accredited investor;
- You can use money from savings;
- You can use money from a line of credit; and
- You do not need to be a U.S. citizen.

By virtue of the definition of "prospectus" in the Act and the holding in *Gustafson,* a prospectus need not be titled a prospectus to be one. As the brochures prepared and disseminated by Defendants satisfy the definition of a prospectus, Defendants' argument to the contrary falls flat.

2. Plaintiffs have properly alleged that the REALs were sold in a public offering.

Still relying upon *Gustafson,* Defendants insist that the securities offered herein were akin to a private transaction not covered by the Act. In *Gustafson,* those plaintiffs bought securities in connection with a private contract of sale between them and the corporation selling the securities. By contrast, as already discussed above, the securities herein were offered and purchased in connection with a "prospectus," or written communication, disseminated to the public at large. The securities were not, by contrast, offered or issued to a closed, pre-identified group of investors as they were in *Gustafson.*

Taking quotes from the Complaint out of context, Defendants point to allegations that the REAL agreements themselves were sold in a private offering. Defs. Brief at 5, 9. This is, for purposes of Plaintiffs' 12(a)(2) claim, beside the point. Contrary to Defendants' assertion,

Plaintiffs have not "expressly alleged that the alleged securities 'were sold in a private offering.'" *See* Defs. Brief at 9, citing Complaint ¶45. Rather, Plaintiffs alleged that, for purposes of qualifying as exempt pursuant to SEC regulations, "the REAL agreements, aka promissory notes, were sold in a private offering." Complaint ¶45. Defendants' attempts to suggest otherwise notwithstanding[2], nowhere did Plaintiffs allege that the specific investment contracts were entered into in connection with a private offering. Rather, Plaintiffs explain, with great particularity, how the investments were offered and sold in connection with a public offering contained in the brochures (prospectus) described above. The mere fact that individual parties purchased REAL investments described in the prospectus has nothing to do with the issue of whether those investments were part of a public offering.

Indeed, Defendants ignore the allegations in the complaint that describe, with particularity, the public nature of the offering at issue. Specifically, Plaintiffs' Complaint alleges that Defendants offered the REAL investments for sale nationwide and accepted investments from international investors. Complaint, ¶34. Consistent with the definition of "prospectus" in the Act and as interpreted by *Gustafson,* Plaintiffs allege that the REAL brochure (the prospectus herein) was promoted to prospective investors through the U.S. mail, by emailing it as a Portable Document Format (PDF), by reproducing it on the Drive Planning website (www.driveplanning.com), by handing it directly to prospective investors during in-person sales presentations, and by making hard copies available to Drive Planning's sales agents. *Id.* Contrary to Defendants' suggestion, the fact that some of the brochures were handed to prospective

---

[2] In their brief, Defendants acknowledge that Plaintiff alleged the private offerings did not qualify as exempt offerings, but assert, without any basis for doing so, that Plaintiffs are attempting to thread the needle between having to concede that *Gustafson*'s holding bars their Section 12(a)(2) claim, on the one hand, or having to meet all of the heightened pleading requirements of Rule 9(b). Defs. Brief at 11. As Plaintiff has explained herein, this matter is materially distinguishable from *Gustafson,* and it's holding regarding the validity of a claim pursuant to Section 12(a)(2) does not apply.

investors in person does not convert it into a private offering. It was, as required by the Act and by *Gustafson,* a document "soliciting the public" and relating to a "public offering." *See Gustafson*, 513 U.S. at 569, 574, 576. As such, because the Complaint alleges facts related to a "public offering," and does not allege facts in connection with a "private offering," Defendants Motion to Dismiss is unavailing.

  **C. Defendants' suggestion that Plaintiffs' claim is subject to heightened pleading requirements pursuant to FRCP 9(b) is without merit.**

  First, Defendants' assertion regarding heightened pleading requirements (*see* Defs. Brief at 11) is without merit, as Plaintiffs have not made any claim pursuant to the Securities Exchange Act of 1934 (Exchange Act). Defendants correctly note that claims made pursuant to Section 10b-5 of the Exchange Act have a scienter requirement, as such claims involve liability for fraud in connection with securities transactions. *See* Defs. Brief at 11. As Plaintiffs have specifically alleged: "For purposes of [the Count pursuant to the Securities Act of 1933], Plaintiffs expressly exclude and disclaim any allegation that could be construed as fraud or intentional or reckless misconduct, as this Count is based solely on claims of strict liability and/or negligence under the Securities Act." Complaint ¶62. As such, the heightened pleading requirements for fraud pursuant to FRCP 9(b) do not apply.

  Defendants suggest that Plaintiffs' 12(a)(2) claim "sounds in fraud" and is therefore subject to heightened pleading standards. Defs. Brief at 12. In 1995, Congress enacted the Private Securities Litigation Reform Act (PSLRA) to impose heightened pleading requirements on Rule 10b-5 actions. 15 U.S.C. §78u-4; *see Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 127 S. Ct. 2499, 2502 (2007)**.** The PSLRA does not impose that requirement on claims brought under the Securities Act of 1933, though the circuits have split as to whether claims – even if they do

6

not plead fraud – are subject to Rule 9(b)'s heightened pleading standards.  The Seventh Circuit has held that Rule 9(b) applies to "averments of fraud," not claims of fraud, so whether the rule applies will depend on the plaintiffs' factual allegations. *Borsellino v. Goldman Sachs Group, Inc.*, 477 F. 3d 502, 507 (7th Cir. 2007). A claim that "sounds in fraud" - in other words, one that is premised upon a course of fraudulent conduct — can implicate Rule 9(b)'s heightened pleading requirements. *Id.* In *Borsellino,* the complaint had begun by alleging a pattern of fraud, and was "riddled with references to fraud, showing that this theory pervades their entire case." *Id.* By contrast, Plaintiffs' complaint barely mentions fraud, or the element of scienter upon which an "averment" of fraud must be predicated. As already discussed, Count I is premised upon Section 12(a)(2) of the Securities Act of 1933, which imposes liability for false claims without any requirement that the Defendants had or should have had knowledge of the falsity of their statements.

Contrary to Defendants' suggestion, Plaintiffs have not attempted to "plead around" fraud in asserting their claims under the Securities Act of 1933. *Contra W. Palm Beach Firefighters' Pension Fund v. Conagra Brands, Inc.*, 495 F. Supp. 3d 622, 636 (N.D. Ill. 2020), *aff'd sub nom. Nat'l Elevator Indus. Pension Fund v. Conagra Brands, Inc.*, 2022 U.S. App. LEXIS 12445, at *2 (7th Cir. May 9, 2022). In *Conagra,* the Court held that, at least with respect to certain Defendants, Plaintiffs had alleged a "unified course of fraudulent conduct" that formed the basis of claims under both the Securities Act of 1933 and the Exchange Act. *Conagra,* 495 F. Supp. At 637.  In contrast to *Conagra,* Plaintiffs' complaint under Section 12(a)(2) does not sound in fraud. More significantly, Plaintiffs' claim does not and cannot possibly rely upon the same sort of misrepresentations that are central to a 10(b)(5) fraud

7

claim, and in fact, unlike *Conagra,* does not include a claim under 10(b)(5). Without a 10(b)(5) claim, there cannot possibly be the overlap described in *Conagra.*

Nowhere in the facts alleged to support their 12(a)(2) claim do Defendants suggest that Defendants made their misrepresentations or omitted material facts with knowledge or intent that statements were false or misleading. Nevertheless, Defendants go on to suggest that Rule 9(b)'s heightened pleading standards should apply based upon the "unified course of fraudulent conduct" test because Plaintiffs alleged common law fraud in Count III of the complaint. In support of this theory, Defendants cite to the common facts in Plaintiffs' complaint alleging false statements, false promises, omissions, and inducements based upon those false statements and omissions. Defs. Brief at 14. Nowhere in those common facts do Plaintiffs allege anything remotely related to the sort of scienter required for a fraud claim. Scienter is neither relevant nor necessary to the cause of action alleged in Count I, and it is the Defendants who seek to impose pleading requirements for facts that are not required.

Though the Seventh Circuit has not found that the heightened pleading requirements of Fed. R. Civ. Proc. 9(b) apply to claims brought under the Securities Act of 1933, Plaintiffs here have, nevertheless, more than satisfied those heightened requirements regarding their allegations of false or misleading statements. The Supreme Court has held that, to adequately plead false or misleading statements, Plaintiffs must (1) "specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading," 15 U.S.C. § 78u-4(b)(1); and (2) "state with particularity facts giving rise to a *strong inference* that the defendant acted with the required state of mind." § 78u-4(b)(2); *See Tellabs*, 127 S. Ct. at 2508 (*emphasis supplied*). Putting aside the issue of "state of mind," the Supreme Court has held that courts determine whether there is a strong inference based upon all of the facts, considered collectively.

8

*Id.* at 2509. As such, courts must take into account plausible opposing inferences, an examination that is inherently comparative. *Id.* at 2509-2510. The inference drawn from the facts as to the elements of the claim must be cogent and compelling – not merely reasonable or permissible. *Id.* As the Court held in *Conagra*, the relevant question at the pleading stage regarding whether statements were false or misleading – the relevant issue for purposes of Count I -- is "whether the facts alleged are sufficient to support a reasonable belief as to the misleading nature of the statement or omission." *Conagra,* 495 F. Supp. at 638. Defendants' suggestion notwithstanding, Plaintiffs have indeed pleaded, quite cogently, the facts  -- i.e. the "who, what, when, where, and how" -- regarding Defendants' misleading statements and omissions. They have identified numerous false statements and omissions attributable to Defendants, and they have specified the manner in which those false statements and omissions were made, when they were made, by whom, and to whom. Complaint ¶ 32, 34-35, 38-42.   There is no mystery as to the basis for the Count I claim.

It is worth noting that even if Plaintiffs are subject to the heightened pleading requirements of FRCP 9(b), Defendants appear to be extending those requirements to unattainable new heights, suggesting that there might – hypothetically -- be facts outside those alleged in the complaint relevant to Plaintiffs' claims. Taking Defendants' theory to its logical conclusion, the heightened pleading requirements could never be satisfied, as there may always be yet undiscovered facts to allege.

If the Court determines that Plaintiffs have somehow not satisfied the pleading requirements as to their Count III fraud claim, they readily agree to amend the complaint to comply with those requirements. Again, any failure to plead the facts related to scienter is irrelevant to the adequacy of Count I.

**D. This Court has jurisdiction over this matter pursuant to both 28 U.S.C. § 1331 and 28 U.S.C. § 1332.**

Defendants' suggestion that supplemental claims should be removed to state court if Count I is dismissed is inapt, as Defendants fail to recognize there are different considerations and standards for class action lawsuits. As Plaintiffs allege in their Complaint, this Court has subject matter jurisdiction pursuant to 15 U.S.C. § 78a, 28 U.S.C. § 1331, and supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a). Complaint ¶10. Even if Count I is dismissed, this Court still has jurisdiction pursuant to 28 U.S.C. § 1332, as not all Plaintiffs are members of the same state. Pursuant to the Class Action Fairness Act (CAFA), class actions require only minimal diversity, meaning only one plaintiff needs to be diverse from one defendant. 28 U.S.C. §§ 1332(d), 1453, 1711-15. The purpose of CAFA was to reduce "forum shopping" by plaintiffs in state courts, and it allows for greater federal scrutiny procedures for reviewing class action settlements. Pursuant to CAFA, and for the benefit of Defendants in particular, this Court retains jurisdiction because at least one party is a citizen of a different state (New Jersey) from Defendants (Indiana).

WHEREFORE, Plaintiffs, Rachel Lynn Williamson and Constance Novoa, respectfully ask that the Court deny Defendants Motion to Dismiss or, in the alternative, to allow Plaintiffs leave to file an Amended Complaint, and grant any other and further relief it deems appropriate.

Respectfully Submitted,

/s/ Ross M. Good
Ross M. Good, Esq. (IL Bar No. 6312917; FL Bar No. 0116405)
Shawn M. Good Esq. (IL Bar No. 632932)
The Good Law Group
800 E. Northwest Hwy, Ste 814 Palatine, IL 60074

Ph: (847) 577-4476
Fax: (800) 709-1179
Ross@thegoodlawgroup.com
Shawn@thegoodlawgroup.com

Jeffrey Sonn, Esq. (*Pro Hac Vice*)
Sonn Law Group PA
19495 Biscayne Blvd, Suite 607 Aventura, Fl 33180
Tel 305-912-3000
Fax 786-485-1501
FL Bar No. 773514 Jsonn@Sonnlaw.com

Brian B. Pastor, Esq. (*Pro Hac Vice*)
Sonn Law Group PA
3455 Peachtree Rd NE,
Ste. 500
Atlanta, GA 30326
Tel: 305-912-3000 Ext. 538
Fax: 404-607-7121
GA Bar No. 565860
E-Mail: BPastor@SonnLaw.com

Mark E. Maddox Esq.
Maddox Hargett & Caruso PC
10150 Lantern Rd, Ste 175
Fishers, IN 46037
Tel: (317) 598-2043
Fax: (317) 598-2050
IN Attorney No. 11252-49
mmaddox@mhclaw.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 6, 2024, I filed the foregoing *Plaintiffs' Brief in Response to Defendants' Motion to Dismiss* electronically with the Clerk of the Court. Notice of this filing will be sent to the following by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/Ross M. Good
Ross M. Good

Shawn M. Good
Ross M. Good
The Good Law Group
800 E. Northwest Hwy
Suite 814
Palatine, IL 60074