UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| RACHEL LYNN WILLIAMSON and CONSTANCE NOCOA, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>GERARDO LORENZO LINARDUCCI, an Indiana individual, and INTEGRITY WEALTH PARTNERS, LLC, an Indiana limited liability Corporation, and DUCCI ENTERPRISES, LLC, an Indiana limited liability corporation,<br><br>Defendants. | CASE NO.: 1:24-CV-01526-TWP-MJD |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**

Gerardo Lorenzo Linarducci, *et al.*, ("Defendants") by counsel, files this *Reply in Support of Motion to Dismiss*.

Plaintiffs' Response Brief ("Resp.") (Dkt. No. 28), essentially confirms that this lawsuit is an attempt to ride the coattails of a Securities and Exchange Commission ("SEC") investigation into Defendant Gerry Linarducci's alleged former employer Drive Planning, LLC (the "Drive Planning lawsuit"). The Response expressly states "Plaintiffs allegations track those made in the complaint filed on August 13, 2024" in the Northern District of Georgia. (Resp. at 2 (citing *SEC v. Drive Planning, LLC, et al.*, No. 1:24-cv-03583 (N.D. Ga.)).

However, the Drive Planning lawsuit does not include claims that require alleging what Plaintiffs must allege here under Section 12(a)(2) of the Securities Act: (1) a misstatement or omission of material fact or omission of a material fact (2) "by means of a prospectus" (3) in a public offering. *See* No. 1:24-cv-03583, ECF. No. 1 at 4 (N.D. Ga.) (alleging violations of Section 17(a) of the Securities Act of 1933 and Sections 10(b) and 20(a) of the Securities and Exchange Act of 1934).[1] And that's precisely what Plaintiffs have failed to allege here.

Moreover, and conversely, the Drive Planning lawsuit alleges what Plaintiffs fail to allege here—fraud with particularity that satisfies the heightened pleading standards of Rule 9(b). Plaintiffs' complaint is replete with references to the promotional materials that Defendants purportedly used to solicit Drive Planning investors. This satisfies the "who" and *some* of the "what" of the particularity requirement but *none* the "when," "where," or "how." Defendants and the Court are left to guess at those details. That does not satisfy Rule 9(b) particularity.

Finally, Plaintiffs, for the first time in this lawsuit, allege that they have minimal diversity jurisdiction under the Class Action Fairness Act ("CAFA"). This basis for jurisdiction was not alleged in the Complaint. The Court should not reward Plaintiffs' sandbagging. Regardless, Plaintiffs have failed to allege in their

---

[1] 15 U.S.C. § 77q(a) (Section 17(a)) (prohibiting unlawful "sale of any securities" or misrepresentations regarding a security "by the use of any means … or communication in interstate commerce" with no requirement for alleging a "prospectus"); 15 U.S.C. § 78j(b)(5) (Section 10(b)) (prohibiting "any manipulative or deceptive device or contrivance" "by use of any means or instrumentality of interstate commerce" with no requirement for alleging a "prospectus"); 15 U.S.C. § 78t(a) (Section 20(a)) (same).

Complaint that there are at least 100 total class members. This eliminates CAFA jurisdiction under 28 U.S.C. § 1332(d)(5)(B).

At bottom, the Court should dismiss this guilt-by-association lawsuit.

## ARGUMENT

**A.      No Prospectus**

Plaintiffs agree that a well-pled Section 12(a)(2) claim requires alleging a misstatement of material fact or omission of a material fact "by means of a prospectus." 15 U.S.C. § 77l(a)(2). They argue that the Complaint "allege[s] the existence of a prospectus within the meaning of the [Securities] Act by describing promotional materials … that set forth a description of the particulars of the investments[.]" (Resp. at 3 (citing Compl. ¶ 32 and Exhibit A)).

Promotional materials are not a prospectus. *In re Edward D. Jones & Co., L.P. Sec. Litig.*, No. 2:18-CV-00714-JAM-AC, 2019 WL 2994486, at *8 (E.D. Cal. July 9, 2019) (dismissing Section 12(a)(2) claim because "[t]he Amended Complaint cites no formal prospectus, and the marketing materials in this case are not a substitute for the required prospectus."). Plaintiffs' Response makes no attempt to engage with this case law that says so.

Moreover, Plaintiffs have plainly alleged that "[n]either Plaintiffs nor Linarducci had access to the type of information normally provided in a prospectus of a SEC registration statement such as Form S-1." (Compl. ¶ 67). This allegation effectively admits that the Defendants' promotional materials do not contain the necessary information for those promotional materials to be deemed a prospectus.

3

The Supreme Court in *Gustafson* was clear: "whatever else 'prospectus' may mean, the term is confined to a document that, absent an overriding exemption [which Plaintiffs' have not alleged or argued here], must include *the 'information contained in the registration statement.'" Gustafson v. Alloyd Co., Inc.*, 513 U.S. 561, 569 (1995) (emphasis added) (quoting 15 U.S.C. § 77j(a) (Section 10(a) of the Securities Act)). This definition tracked the definition of "prospectus" in Section 10 of the Securities Act, which the Court held was identical to the definition of "prospectus" in Section 12. *Id.* at 570 ("prospectus has the same meaning … in both §§ 10 and 12"). Plaintiffs concede Section 10's narrow definition of "prospectus" when they state "[p]ursuant to Section 10 … a prospectus is a document that must generally include the information contained in the registration statement that a company must file with the SEC prior to an initial public offering." (Resp. at 3 (citing *Gustafson*, 513 U.S. at 569.

Plaintiffs' concession about *Gustafson* is fundamentally incompatible with Plaintiffs' allegation in the Complaint that Plaintiffs do not have access to the "information normally provided in a prospectus of a SEC registration statement." (Compl. ¶ 67). In other words, Plaintiffs have pled themselves out of Court by alleging in the Complaint that the promotional materials do not include "the information contained in the registration statement." *Gustafson*, 513 U.S. at 569. According to *Gustafson*, that is the very definition of a "prospectus."

4

Therefore, as a matter of law, the promotional materials cannot constitute a prospectus as alleged by Plaintiffs. And without a prospectus, Plaintiffs have no Section 12(a)(2) claim.

**B.     No Public Offering**

Plaintiffs Complaint said "the REAL agreements, aka promissory notes, were sold in a private offering[.]" (Compl. ¶ 45). Plaintiffs now attempt to re-write their Complaint by arguing that the REALs were sold through public offerings. (Resp. at 4–6). Plaintiffs say that the promotional materials were "promoted to prospective investors" through various public means. (Resp. at 5). While Defendants do not dispute that these allegations regarding how Defendants promoted the REALs are clear enough, the Complaint also says that the REALs were "sold in a private offering." (Compl. ¶ 45). Plaintiffs cannot have it both ways.

Further, Plaintiffs do not cite to a single case in support of their argument other than *Gustafson*. With respect to that case, Plaintiffs note that REALs "were not, by contrast, offered or issued to a closed, pre-identified group of investors as they were in *Gustafson*" (Resp. [ECF No. 28] at 4), and vaguely note that their Complaint alleges public offering of the REALs "[c]onsistent with the definition of 'prospectus' in the [Securities] Act and as interpreted by *Gustafson*." (*Id.* at 5). Respectfully, it is unclear precisely what Plaintiffs are arguing by distinguishing their case from *Gustafson*. Accordingly, their argument lacks cogency and has been waived. *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument [in a motion to dismiss]–as the [plaintiffs] have done here– results in waiver."); *United States v. Lanzotti*, 205 F.3d 951, 957 (7th Cir. 2000)

5

("perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived"); *see, e.g.*, *Whalen v. Navient Sols., LLC*, No. 4:17-CV-00056-TWP-DML, 2018 WL 1242020, at *3 n.1 (S.D. Ind. Mar. 9, 2018) (same).

Waiver notwithstanding, one might speculate that Plaintiffs are arguing—without citations—that Defendants' solicitation of REALs are necessarily public offerings because they are not strictly speaking "private placements" that comply with SEC regulations. It's hard to tell because, again, Plaintiffs do not say what "SEC regulations" they have in mind. Defendants speculated in their opening brief that they referred to Section 506 regulations. (Opening Br. [ECF No. 25] at 9–10). *See Faye L. Roth Revocable Tr. v. UBS Painewebber, Inc.*, 323 F. Supp. 2d 1279, 1289 (S.D. Fla. 2004) ("The majority of courts addressing the issue have interpreted *Gustafson* to mean that an offering that is a private placement within the meaning of Section 4(2), which exempts from registration offerings that are not made to the public (15 U.S.C. § 77d(2)), is not a prospectus and is therefore not subject to Section 12(a)(2) liability." (citing cases)). But Plaintiffs have not confirmed one way or the other.

Even if Plaintiffs' public offering argument were cogently articulated (it is not), it is flawed because it hinges upon a false dichotomy. The solicitation of unregistered securities do not fall within the binary categories of "private placements" that comply with SEC regulations, on the one hand, and public offerings, on the other. In other words, just because Plaintiffs allege that Defendants have not complied with SEC regulations that exempt securities from

6

the registration requirement (i.e., private placements) does not mean that they have necessary alleged a public offering. If, as Plaintiffs argued in their opening brief, Plaintiffs contend that the REALs did not comply with SEC regulations, then Plaintiffs should not have tried to circumvent the public offering pleading requirement of Section 12(a)(2) but instead brought a claim under Section 12(a)(1). *Faye L. Roth Revocable Tr.*, 323 F. Supp. 2d at 1288 ("I conclude that this claim does not lie under Section 12(a)(2), but under Section 12(a)(1), which allows a party to bring an action against an offeror or seller for noncompliance with regulation requirements.").

The Complaint plainly alleges a private offering, not a public one required by Section 12(a)(2), as interpreted by *Gustafson*. Plaintiffs' arguments to the contrary are not cogent or, at best, simply unfounded.

**C.     No Particularity**

**C.1.    Rule 9(b) Applies to the Section 12(a)(2) Claim**

Plaintiffs concede that "[t]he Seventh Circuit has held that Rule 9(b) applies to 'averments of fraud,' not claims of fraud, so whether the rule applies will depend on the plaintiffs' actual allegations." (Resp. at 7 (citing *Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 507 (7th Cir. 2007)). They also concede that the Rule 9(b) requirements apply when the claim "is premised upon a course of fraudulent conduct." (*Id.*).

Nonetheless, Plaintiffs argue that their Section 12(a)(2) claim is not premised on fraudulent conduct by arguing in circular fashion that "Section 12(a)(2) does not sound in fraud" (Resp. [ECF No. 28] at 7), and "[n]owhere in the facts alleged to

7

support their 12(a)(2) claim do Defendants suggest that Defendants made their misrepresentations or omitted material facts with knowledge or intent that statements were false or misleading." (*Id.* at 8). This fundamentally ignores that Plaintiffs rely upon the same set of predicate facts to argue both a Section 12(a)(2) claim and the common law fraud claim under Count III. (Opening Brief [ECF No. 25] at 14–16 (citing Compl. p. 4, ¶¶ 34, 38, 40–42, 57, 59, 61, 80)).

Plaintiffs attempt to distinguish *W. Palm Beach Firefighters' Pension Fund v. Conagra Brands, Inc.,* 495 F. Supp. 3d 622, 636 (N.D. Ill. 2020), *aff'd sub nom. Nat'l Elevator Indus. Pension Fund v. Conagra Brands, Inc.*, No. 21-1155, 2022 WL 1449184 (7th Cir. May 9, 2022), which held that a Complaint's "no-fraud-to-see-here" disclaimer is not dispositive of whether a Section 12(a)(2) claim sounds in fraud. Plaintiffs argue that, unlike their Complaint, *Conagra Brands, Inc.* involved a Section 12(a)(2) claim that shared a unified scheme with a claim under Section 10(b) of the Exchange Act of 1934, which does carry a heightened pleading standard and does require scienter. (Resp. [ECF No. 28] at 7–8). Plaintiffs argue the absence of a Section 10(b)(5) claim in their lawsuit distinguishes their case from *Conagra.* (*Id.*) But that distinction is immaterial because Plaintiffs' Section 12(a)(2) claim shares a unified scheme and common set of underlying facts with their common law fraud claim.

At this point, Plaintiffs argue that "[n]owhere in those common facts do Plaintiffs allege anything remotely related to the sort of scienter required for a fraud claim." (*Id.* at 8). This is simply incorrect. Count III alleges that Linarducci

8

made his (unspecified) statements and omissions to Plaintiffs "intentionally" and did so "malicious[ly], reckless[ly], [and] willful[ly]." (Compl. ¶¶ 82, 86.) It is also black letter law that establishing a common law fraud claim under Indiana law requires proving scienter, or knowledge or reckless ignorance of falsity, which is why Plaintiffs pled it in the first place. *Wright v. Pennamped*, 657 N.E.2d 1223, 1230 (Ind. Ct. App. 1995), *decision clarified on denial of reh'g,* 664 N.E.2d 394 (Ind. Ct. App. 1996) ("An intent to deceive, or 'scienter,' is an element of actual fraud, whether classified as a knowing or reckless misrepresentation or as an additional element to a knowing or reckless misrepresentation."). If Plaintiffs' allegations are to be believed, the same set of common facts that establish their Section 12(a)(2) claim also establish the scienter requirement of their common law fraud claim. The Complaint makes no distinction.

Accordingly, Plaintiffs Section 12(a)(2) claim sounds in fraud, and the Rule 9(b) particularity standard applies.

**C.2.   Plaintiffs Fail to Plead Fraud with Particularity**

Plaintiffs argue that even if their Section 12(a)(2) claim sounds in fraud, they have "more than satisfied th[e] heightened [pleadings] requirements regarding their allegations of false or misleading statements." (Resp. [ECF No. 28] at 8). They say they have "identified numerous false statements and omissions attributable to Defendants, and they have specified the manner in which those false statements and omissions were made, when they were made, by whom, and to whom." (*Id.* at 9 (citing Compl. ¶¶ 32, 34–35, 38–42)). They have not.

9

Defendants agree that Plaintiffs have disclosed the "who" and *part* of the "what" of the statements and omissions of Defendants—it's the promotional materials presented to the Plaintiffs. But Plaintiffs still fail to identify any statement or omission *by the Defendants* beyond the printed language of the promotional materials, or confirm that no other statement or omission besides the promotional materials was made by the Defendants. This leaves Defendants and the Court to guess whether Plaintiffs intend to prove only that Defendants rehashed the contents of the promotional materials or are on the hook for other statements and omissions as well.

Moreover, even if Plaintiffs had identified the universe of statements and omissions at issue with particularity (they did not), the Complaint omits any discussion of the "when," "where," and "how" of *any* purported statements and omissions. See, e.g., *Kruse v. GS Pep Tech. Fund 2000 LP*, 897 F. Supp. 2d 769, 780 (N.D. Ind. 2012) ("Plaintiffs further fail to sufficiently plead the *when, where,* and *how.*"). All the Complaint alleges are vague references to "in-person sales presentations" (Compl. ¶ 34), meetings where Defendants "solicite[d] Plaintiffs in person, over the telephone, through the mail, and through email" (Compl. ¶ 65), and "induced" Plaintiffs to sign REAL agreements at Linarducci's "behest." (Compl. ¶¶ 40–42). These allegations are with respect to the various ways that the REALs were promoted to the class in general. What's missing is the necessary detail of how the REALs were solicited to the class representatives *in particular*. *Kruse*, 897 F. Supp. 2d at 780 ("Realizing that Plaintiffs may not personally know the specifics of the

10

alleged misrepresentations that occurred to other potential class members, if Defendants lied to Plaintiffs as contended, then Plaintiffs should easily be able to recant the particulars of the misrepresentations made to them.").

Without further details, Plaintiffs do nothing more than rehash the allegations of the Drive Planning lawsuit and attach the REALs signed by the Plaintiffs. As the Seventh Circuit said, under Rule 9(b) Plaintiffs must "plead enough about *what transpired* with the [Plaintiffs] for [the Court] to know what any defendant represented, misrepresented, or omitted … [and] allege at least *some particulars* about *the precise communications with each investor*." *Menzies v. Seyfarth Shaw LLP*, 943 F.3d 328, 341 (7th Cir. 2019) (emphasis added). Rule 9(b) prohibits pleading the essential details of a fraud by inference alone. As Plaintiffs said in their Response, "[T]he inference drawn from the facts as to the elements of the claim must be cogent and compelling – not merely reasonable or permissible." (Resp. at 9 (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324, 127 S. Ct. 2509–2510 (2007)).

Plaintiffs argue that Defendants "appear to be extending [the heightened pleading] requirements to unattainable new heights" by arguing that "there may always be yet undiscovered facts to allege." (Resp. [ECF No. 28] at 9). Not so. Defendants simply argued that Plaintiffs have failed to identify a closed universe of statements and omissions at issue with particularity and failed to allege precisely when, where, and how Defendants made those statements and omissions. This is

11

not stretching Rule 9(b) beyond its bounds, but simply applying its plain requirements to this Complaint.

Even as to the written promotional materials themselves, the Complaint is devoid of any detail regarding when, where, or how *the lead Plaintiffs*, in particular, received any of those materials, or even if they saw them at all. (Opening Br. [ECF No. 25] at 16). Plaintiffs provide no response to this argument.

In the end, Plaintiffs' allegations simply piggyback off the Drive Planning lawsuit while trying to implicate Defendants by association. Their Complaint does not reflect what Rule 9(b) requires: "more than the usual investigation before filing [their] complaint." *Kahn v. Walmart Inc.*, 107 F.4th 585, 594 (7th Cir. 2024) (citation omitted).

**D.     No Jurisdiction**

Plaintiffs make no attempt to argue that supplemental jurisdiction over their state law claims would remain if their only federal claim is dismissed. (Resp. [ECF No. 28] at 10). Accordingly, they appear to concede Defendants' argument on this point.

Instead, Plaintiffs argue that they have minimal diversity jurisdiction under the Class Action Fairness Act ("CAFA"). (*Id.*) They cite to 28 U.S.C. § 1332(d)(2)(A), which permits original jurisdiction where "any member of a class of plaintiffs is a citizen of a State different from any defendant."

CAFA jurisdiction under Section 1332(d)(2) should not apply here for at least two reasons. First, Plaintiffs did not cite to CAFA or 28 U.S.C. § 1332 in their Complaint. (*See* Compl. ¶¶ 10 & 11). This argument in their Response appears to

12

have been an afterthought. Plaintiff's failure to plead 28 U.S.C. § 1332 prevented Defendants from being on notice that they could raise all the defenses to CAFA jurisdiction in a Rule 12(b)(1) motion by presenting the necessary jurisdictional evidence or seeking discovery to that effect.

Defendants would have had arguments to make in a Rule 12(b)(1) motion. There appears to be a substantial likelihood that, when all is said and done (and assuming this case survives dismissal) at least two-thirds of all class members will be from Indiana, the same state as Defendants. This would eliminate CAFA jurisdiction under the "home-state exception" under 28 U.S.C. § 1332(d)(4)(B). *See, e.g.*, *In re Sprint Nextel Corp.*, 593 F.3d 669, 673 (7th Cir. 2010) (holding that party opposing CAFA jurisdiction "had to establish by a preponderance of the evidence that two-thirds of their proposed class members are Kansas citizens" under the "home-state exception" of 1332(d)(4)(B)). But Defendants were not on notice that they could raise this issue at this stage because Plaintiffs never pled CAFA jurisdiction in their Complaint. The Court should not permit this kind of sandbagging.

Second, Plaintiffs have effectively conceded that the exception to CAFA jurisdiction in section 1332(d)(5)(B) applies. That exception states that minimal diversity jurisdiction "shall not apply to any class action in which -- (B) the number of members of all proposed plaintiff classes in the aggregate is *less than 100*." 28 U.S.C. § 1332(d)(5)(B). Here, Plaintiffs allege only that "[t]here are at least 50 or more clients of the Defendants who were solicited to invest in the REAL program at

13

Drive Planning" and that "the number of Class members and their names are presently unknown." (Compl. ¶ 57). Accordingly, Plaintiffs have not satisfied CAFA jurisdiction because they have not alleged that at least 100 class members are at issue.

If the Court has any doubt on this point, it should issue an order to Plaintiffs to show cause why the Court should not dismiss the Complaint for failure to allege at least 100 class members. *E.g.*, *Edelson PC v. Bandas L. Firm PC,* No. 16 C 11057, 2018 WL 723287, at *13 (N.D. Ill. Feb. 6, 2018) (issuing order to show cause where Plaintiff alleged CAFA jurisdiction but also alleged "'the exact number of members of the Class is unknown" but "likely consists of at least 40 persons[.]'").

## CONCLUSION

THEREFORE, Defendants Gerardo Lorenzo Linarducci, *et al.*, request the Court for an order dismissing Counts I and III, with prejudice, and to dismiss the remaining state-law claims without prejudice, and for all other just and proper relief.

Respectfully submitted,

/s/ *Kevin D. Koons*
Kevin D. Koons, Atty. No. 27915-49
Justin R. Olson, Atty. No. 31450-49
KROGER, GARDIS & REGAS, LLP
111 Monument Circle, Suite 900
Indianapolis, IN 46204
Phone: (317) 692-9000
kkoons@kgrlaw.com
jolson@kgrlaw.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on December 13, 2024, I filed the foregoing *Defendants' Reply in Support of Motion to Dismiss* electronically with the Clerk of the Court. Notice of this filing will be sent to the following by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

Mark E. Maddox
Maddox Hargett & Caruso, P.C.
10150 Lantern Road
Suite 175
Fishers, IN 46037
mmaddox@mhclaw.com

Brian Pastor
Sonn Law Group PA
3455 Peachtree Rd Rd NE
Ste 500
Atlanta, GA 30326
bpastor@sonnlaw.com

Shawn M. Good
Ross M. Good
The Good Law Group
800 E. Northwest Hwy
Suite 814
Palatine, IL 60074
Shawn@thegoodlawgroup.com
ross@thegoodlawgroup.com

Jeffrey R. Sonn
Sonn Law Group PA
19495 Biscayne Blvd.
Suite 607
Aventura, FL 33180
jsonn@sonnlaw.com

/s/ *Kevin D. Koons*
Kevin D. Koons

KROGER, GARDIS & REGAS, LLP
111 Monument Circle, Suite 900
Indianapolis, IN 46204
Phone: (317) 692-9000