UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| RACHEL LYNN WILLIAMSON,<br>CONSTANCE NOVOA,<br><br>    Plaintiffs,<br><br>    v.<br><br>GERARDO LORENZO LINARDUCCI an Indiana individual,<br>INTEGRITY WEALTH PARTNERS, LLC an Indiana limited liability corporation,<br>DUCCI ENTERPRISES, LLC an Indiana limited liability corporation,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>) Case No. 1:24-cv-01526-TWP-MJD<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

This matter is before the Court on a Motion to Dismiss filed on November 15, 2024, by Defendants Gerardo Lorenzo Linarducci ("Linarducci"), Integrity Wealth Partners, LLC ("IWP"), and Ducci Enterprises, LLC ("Ducci") (collectively, "Defendants") (Filing No. 24). Plaintiff Rachel Williamson ("Williamson") and Plaintiff Constance Novoa ("Novoa") (collectively, "Plaintiffs") initiated this putative class action, alleging that the Defendants misled them and other investors who were solicited to invest in Real Estate Acceleration Loans ("REAL") at non-party Drive Planning, LLC ("Drive Planning"). Plaintiffs assert a claim for violation of Section 12(a)(2) of the Securities Act of 1933 and various state law claims. On June 30, 2025, Linarducci filed a Notice of Bankruptcy and the proceedings against him, individually, are stayed (Filing No. 30, Filing No. 31). For the reasons explained in this Order, the Motion to Dismiss is **granted** as to Defendants IWP and Ducci; and the Plaintiffs' request for leave to amend their Complaint is **granted**.

## I.     BACKGROUND

The following facts are not necessarily objectively true, but as required when reviewing a motion to dismiss, the Court accepts as true all factual allegations in the complaint and draws all inferences in favor of Plaintiffs as the non-moving parties. *See Bielanski v. Cnty. of Kane*, 550 F.3d 632, 633 (7th Cir. 2008).

The Complaint alleges that more than 2,000 investors from Indiana and elsewhere were victimized by a Ponzi scheme under which they were induced and encouraged to invest large sums of money with a promised return of ten percent interest every three months. Investors were urged to use whatever money they had, including their savings, IRAs, pension plans, retirement accounts, mortgages and/or open lines of credit to participate in what, unbeknownst to them, was a fraudulent scheme. (Filing No. 1 at ¶ 1). The Ponzi scheme was orchestrated and carried out by Drive Planning and its founder, Russell Todd Burkhalter ("Burkhalter"), both of whom have been charged by the Securities and Exchange Commission ("SEC") with originating and engaging in a $300 million Ponzi scheme that defrauded over 2,000 investors. [1] *Id*. ¶ 2. Drive Planning and Burkhalter were charged with originating a scheme to defraud investors by selling unregistered securities in the form of Real Estate Acceleration Loans ("REAL"). See *SEC v. Drive Planning, LLC and Russell Todd Burkhalter*, No. 1-24-03583 (N.D. GA, filed August 2024) (aka "SEC Action".) *Id*.

Defendant Linarducci is an Indiana-based broker who was employed by Drive Planning, and he is a principal at both IWP and Ducci, where he advised Plaintiffs and other putative class members to invest in Drive Planning. (Filing No. 1 at ¶ 3). Plaintiffs bring this putative class action

---

[1] Plaintiffs state that their allegations track those made in the complaint filed in a Securities and Exchange Commission ("SEC") action against Drive Planning and its founder Russell Todd Burkhalter ("Burkhalter") (Filing No. 1 at 2); *see SEC v. Drive Planning, LLC and Russell Todd Burkhalter*, No. 1-24-03583, 2024 U.S. Dist. LEXIS 147092, (N.D. Ga. August 13, 2024) ("SEC Action").

to "recover funds misused, commingled, and stolen" by Burkhalter and Drive Planning on the Defendants' recommendation. *Id.* at ¶ 4.

As a sales representative employed by Drive Planning, Linarducci promoted REAL investments which were described as a "bridge loan opportunity promising ten percent in three months." *Id.* at ¶ 12. Linarducci was paid a four percent commission on each REAL investment he sold including an additional commission on amounts that investors chose to rollover into a new investment. *Id.* at ¶ 15. To promote these investments, Linarducci provided potential investors with promotional materials produced by Burkhalter and Drive Planning which included the REAL brochure that described REAL investments in four bullet points: three-month term, ten-percent return, quitclaim deed collateral, and $20,000.00 minimum. *Id.* at ¶ 32; *see* Filing No. 1-1. Defendants put their logos on Drive Planning's marketing materials without confirming the information on the materials. *Id.* at ¶ 39.

Plaintiffs allege that the REAL investments are securities as defined by federal securities law. Filing No. 1 at ¶ 33. Linarducci offered the REAL investments for sale nationwide and accepted investments from international investors. *Id.* at ¶ 34. The REAL brochure promoting the investment opportunity was sent to prospective investors through the U.S. mail, emailed, and handed directly to prospective investors during in-person sales presentations. *Id.* at ¶ 34. Linarducci was trained by and operated on behalf of Drive Planning while falsely promising investors a guaranteed ten percent on their money without informing them that the returns would come from new investors' money. *Id.* at ¶ 38.

The REAL agreements signed are promissory notes with assurances that the notes were secured by real property therefore they are "securities" under Indiana and federal securities laws. *Id.* at ¶¶ 40, 43. Neither Linarducci, nor any of the agents who worked under or with him at IWP

3

and Ducci Enterprises, were registered to sell securities or possessed the required licenses needed to sell securities. *Id.* at ¶ 44. The Complaint alleges that "[t]he REAL agreements, aka promissory notes, were sold in a private offering which did not qualify as an exempt offering under SEC regulations and were not sold on any national securities exchange. *Id.* at ¶¶ 45–46.

On September 17, 2022, Linarducci induced Williamson to sign a REAL agreement in which she loaned a principle sum of $22,000.00 to Drive Planning. *Id.* at ¶ 40. The agreement guarantees an interest rate of ten percent to be payable in three months and contains an option to roll over all or part of that amount at the same of current rate for another three-month period. *Id.* The agreement also contains an assurance that the note is to be secured by real property located in "Drive-Embry Portfolio Properties" until the loan is paid back in full. *Id.*

On December 14, 2022, with Linarducci as the agent, Williamson signed another REAL agreement loaning a principal sum of $90,000.00 to Drive Planning with the same terms. *Id.* at ¶ 41. At Linarducci's suggestion, Novoa invested a total of $50,351.04 in REAL investments from August 2022 through July 2024. *Id.* at ¶ 42. In addition to her initial $25,000.00 investment, Novoa made periodic additional investments and rolled over her entire investment for three months at a time with guarantees of a ten percent return pursuant to instructions by Linarducci. *Id.* All agreements were signed by Burkhalter as CEO of Drive Planning. *Id.* at ¶¶ 40–42.

Plaintiffs began experiencing issues contacting Linarducci and his staff in June 2024. *Id.* at ¶¶ 48–51. Williamson requested a withdrawal and did not receive her funds. *Id.* ¶ 49. After multiple attempts to reach Linarducci about the status of her withdrawal, she finally got a response on June 25, 2024, in which Linarducci informed her that he was not allowed to speak on any Drive Planning terms or contracts. *Id.* at ¶ 51. Linarducci then forwarded Williamson a text message from Burkhalter about Drive Planning being "under scrutiny" by the government. *Id.* at ¶¶ 51–52.

The SEC Action was filed on August 13, 2024. Burkhalter and Drive Planning are not named in this lawsuit because of a pending injunction that prohibits actions against them by investors. *Id.* at ¶ 4. In this action, Plaintiffs bring their claims on behalf of themselves and all individuals who invested in Drive Planning through any company owned or controlled by Defendants. *Id.* at ¶ 54. Plaintiffs allege this Court has subject matter jurisdiction pursuant to 15 U.S.C. § 78a, 28 U.S.C. § 1331, and 28 U.S.C. § 1367(a).

Williamson is a citizen of Indiana and domiciled in Indiana, Novoa is a citizen of and domiciled in New Jersey. *Id.* at ¶¶ 5–6. Defendants IWP and Ducci Enterprise, LLC, are both Indiana limited liability companies with primary places of business in Indiana. *Id.* at ¶¶ 8–9. Linarducci is an Indiana-based broker employed by Drive Planning. *Id.* at ¶ 7.

## II.     LEGAL STANDARD

### A.     Rule 12(b)(1)

A motion to dismiss under Rule 12(b)(1) challenges the court's subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The burden of proof is on the plaintiff, the party asserting jurisdiction. *United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003), *overruled on other grounds by Minn-Chem, Inc. v. Agrium, Inc.*, 683 F.3d 845 (7th Cir. 2012) (en banc). "The plaintiff has the burden of supporting the jurisdictional allegations of the complaint by competent proof." *Int'l Harvester Co. v. Deere & Co.*, 623 F.2d 1207, 1210 (7th Cir. 1980). "In deciding whether the plaintiff has carried this burden, the court must look to the state of affairs as of the filing of the complaint; a justiciable controversy must have existed at that time." *Id.*

"When ruling on a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), the district court must accept as true all well-pleaded factual allegations, and draw reasonable inferences in favor of the plaintiff." *Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995) (citation omitted). Further, "[t]he district court may properly look beyond

the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Id.* (citation and quotation marks omitted).

### B.     Dismissal under Rule 12(b)(6)

Similarly, Rule 12(b)(6) allows a defendant to move to dismiss a complaint that has failed to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When deciding a motion to dismiss under Rule 12(b)(6), the Court accepts as true all factual allegations in the complaint and draws all inferences in favor of the plaintiff. *Bielanski*, 550 F.3d at 633. However, courts "are not obliged to accept as true legal conclusions or unsupported conclusions of fact." *Hickey v. O'Bannon*, 287 F.3d 656, 658 (7th Cir. 2002).

The complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In *Bell Atlantic Corp. v. Twombly*, the Supreme Court explained that the complaint must allege facts that are "enough to raise a right to relief above the speculative level." 550 U.S. 544, 555 (2007). Although "detailed factual allegations" are not required, mere "labels," "conclusions," or "formulaic recitation[s] of the elements of a cause of action" are insufficient. *Id.*; *see also Bissessur v. Indiana Univ. Bd. of Trs.*, 581 F.3d 599, 603 (7th Cir. 2009) ("[I]t is not enough to give a threadbare recitation of the elements of a claim without factual support"). The allegations must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. Stated differently, the complaint must include "enough facts to state a claim to relief that is plausible on its face." *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009) (citation and quotation marks omitted). To be facially plausible, the complaint must allow "the court to draw the reasonable inference that the defendant is liable

6

for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

### III.  DISCUSSION

Plaintiffs assert seven claims in their Complaint: a federal claim in (Count I) violation of Section 12(a)(2) of the Securities Act of 1933; and state law claims in (Count II) negligent misrepresentation; (Count III) common law fraud; (Count IV) breach of fiduciary duty; (Count V) professional negligence against Linarducci only; (Count VI) violation of the Indiana Securities Act; and (Count VII) unjust enrichment. Plaintiffs seek compensatory and punitive damages. Defendants seek dismissal pursuant to the Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 9(b). The Court will first address Linarducci's bankruptcy status and severance of the claims against him, before turning to whether dismissal is warranted as to IWP and Ducci.

**A.   Severing Claims Against Linarducci**

As the Court previously noted, Linarducci filed for Chapter 13 bankruptcy and all claims against Linarducci alone have been stayed (Filing No. 30, Filing No. 31). Accordingly, the Court must determine whether the claims against Linarducci may be severed allowing the claims against IWP and Ducci Enterprises, LLC to proceed. The Court finds that they may.

The Seventh Circuit has explained:

> The automatic stay is indeed a powerful tool of the bankruptcy courts. On the filing of a bankruptcy petition, the stay automatically stops any other proceedings against the debtor. "The purpose of this section . . . is to protect the debtor from an uncontrollable scramble for its assets in a number of uncoordinated proceedings in different courts, to preclude one creditor from pursuing a remedy to the disadvantage of other creditors. . . ." *A.H. Robins Co. v. Piccinin (In re A.H. Robins Co.)*, 788 F.2d 994, 998 (4th Cir. 1986). The stay, however, protects only the debtor, unless the debtor and some third party have such a similarity of interests that failure to protect the third party will mean that the assets of the debtor itself will fall into jeopardy. *See id*. at 999, 1001.

*Fox Valley Constr. Workers Fringe Benefit Funds v. Pride of the Fox Masonry & Expert Restorations*, 140 F.3d 661, 666 (7th Cir. 1998) (footnote omitted). Thus, the United States District Court for the Southern District of Illinois has noted:

> The Seventh Circuit recognizes two exceptions to this general rule. The first exception, known as the "identity of interest" exception, occurs where "there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor." *Matter of Fernstrom Storage & Van Co.*, 938 F.2d 731, 736 (7th Cir. 1991) (quoting *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986)). For example, courts have stayed proceedings against non-debtor defendants where the debtor has an absolute duty to indemnify the non-debtor. *Hamilton v. Am. Corrective Counseling Servs. Inc.*, No. 3:05-CV-434-RM, 2009 U.S. Dist. LEXIS 30753, 2009 WL 973447, at *2 (N.D. Ind. Apr. 8, 2009). The second exception "operates where the pending litigation, though not brought against the debtor, would cause the debtor, the bankruptcy estate, or the reorganization plan irreparable harm." *Id.*

*B&B Golf Carts, Inc. v. GRC Golf Prods., LLC*, No. 3:16-CV-1051-NJR-RJD, 2017 U.S. Dist. LEXIS 78201, at *3 (S.D. Ill. May 23, 2017).

Further, a district court may "sever any claims that are 'discrete and separate' in the interest of judicial economy and to avoid prejudice." *Vermillion v. Levenhagen*, 604 F. App's 508, 513 (7th Cir. 2015) (citing cases). To be "discrete and separate . . ., one claim must be capable of resolution despite the outcome of the other claim." *Gaffney v. Riverboat Services of Ind. Inc.*, 451 F.3d 424, 442 (7th Cir. 2006) (internal quotation marks omitted).

Stated differently, this Court can sever the claims against Linarducci, at which point the automatic stay would not apply to IWP and Ducci Enterprises, LLC. Here, the claims against IWP and Ducci Enterprises, LLC, are capable of resolution despite the outcome of the claims against Linarducci. As such, the claims against Linarducci are discrete and separate. In the interest of judicial economy and to avoid prejudice to the Plaintiffs, all claims against Linarducci will be

severed. Consistent with the automatic stay, all claims against Linarducci will be stayed until the conclusion of bankruptcy proceedings.

**B.    The Motion to Dismiss**

In their Motion to Dismiss, IWP and Ducci argue the Plaintiffs fail to state a Securities Act 12(a)(2) claim because they have not alleged that there is a prospectus in this case and the alleged securities were not sold in public offerings (Filing No. 25 at 5). Further, they assert that Plaintiffs' Securities Act 12(a)(2) claim (Count I) and common law fraud claim (Count III) do not meet the heightened pleading standards under Rule 9(b) (Filing No. 25 at 12). IWP and Ducci also argue that if Plaintiffs' sole federal claim is dismissed, the Court should decline to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c)(3) over the remaining state law claims (Filing No. 25 at 17).

Plaintiffs respond that they have properly alleged a prospectus, that the REAL investments were sold in a public offering, that they are not subject to heightened Rule 9(b) pleading requirements, and that this Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1332 (Filing No. 28). The Court will address IWP and Ducci' arguments in turn.

1. **Securities Act 12(a)(2) Claim**

Count I of the Complaint alleges the IWP and Ducci violated Section 12(a)(2) of the Securities Act of 1933 (the "1933 Act") by offering, selling, or soliciting a security, specifically the REAL agreements, to Plaintiffs by and through making untrue or misleading statements of material fact that they should have known were false with the exercise of reasonable care (Filing No. 1 at 16–17). The 1933 Act requires that certain information be disclosed to investors about securities when offered for public sale and prohibits misrepresentations in the sale of securities. Section 12(a)(2) prohibits the offer or sale of a security by means of a prospectus or oral statement

9

that includes an untrue statement of material fact or that omits a material fact necessary to make the statements not misleading. 15 U.S.C. § 77l(a)(2); *see Gustafson v. Alloyd Co.*, 513 U.S. 561, 583 (1995).

IWP and Ducci argue that Plaintiffs fail to state a claim under Section 12(a)(2) because they have not alleged that there is a prospectus in this case, and they allege the investments were sold in a "private offering" (Filing No. 25 at 5). Plaintiffs dispute both arguments. Specifically, they assert that they have properly alleged the existence of a prospectus within the meaning of the 1933 Act by describing promotional materials including the REAL brochure that set forth a description of the particulars of the investments including the term of the offering, the guaranteed return, the collateral, and the minimum sum to be invested (Filing No. 28 at 3; Filing No. 1-1). They further argue that the investments were offered and sold with a public offering contained in the brochures and the "private offering" quotes were taken out of context (Filing No. 28 4–5). The Court will first address argument concerning the existence of a prospectus within the 1933 Act and then the issue of a public or private offering.

A. **No Prospectus Alleged**

Section 10 of the Securities Act, 15 U.S.C. § 77j(a), details the information that a prospectus must contain:

> **§ 77j. Information required in prospectus**
> (a) Information required in registration statement; documents not required. Except to the extent otherwise permitted or required pursuant to this subsection or subsections (c), (d), or (e)—
>> (1) a prospectus relating to a security other than a security issued by a foreign government or political subdivision thereof, *shall contain the information contained in the registration statement*, but it need not include the documents referred to in paragraphs (28) to (32), inclusive, of schedule A [15 USCS § 77aa];

15 U.S.C. § 77j(a)(1) (emphasis added). *Gustafson* held that a "prospectus" is a document that must generally "include the 'information contained in the registration statement'" that a company must file with the SEC prior to an initial public offering. 513 U.S. at 569. As used in Section 12(2), "prospectus" is "a term of art referring to a document that describes a public offering of securities by an issuer or controlling shareholder" and "must include a substantial portion of the information required in the 'registration statement.'" *Id.* at 583–84.

In general, registration forms call for a description of the company's properties and business; a description of the security to be offered for sale; information about the management of the company; and financial statements certified by independent accountants. U.S. Sec. and Exch. Comm'n, https://www.sec.gov/rules-regulations/statutes-regulations (last visited June 2, 2025). The SEC Form S-1 is the form for an initial registration statement under the 1933 Act and it contains twenty-five pages of required information. *Registration Statement Under the Securities Act of 1933 (Form S-1)*, U.S. Sec. and Exch. Comm'n, (OMB Number 3235-0065), https://www.sec.gov/files/forms-1.pdf. Part One of Form S-1 provides a list of twelve items with numerous subparts detailing information required in a prospectus. *Id.* at 7. This comprehensive list includes furnishing information on risk factors, ratio of earnings to fixed charges, the use of proceeds, determination of offering price, dilution, the selling security holders, the plan of distribution, a description of securities to be registered, and other information with respect to the registrant. *Id.* at 7–10.

Notably, Plaintiffs only use the word prospectus once in their Complaint. The sole reference concedes that "[n]either Plaintiffs nor Linarducci had access to the type of information normally provided in a prospectus of a SEC registration statement such as Form S-1."[2] (Filing No.

---

[2] Parties likely did not have access to the information because there was no registration statement or prospectus filed with the SEC by Drive Planning, Mr. Burkhalter, or Defendants. Registration statements and prospectuses become

1 at ¶ 67). On its face, this concession might renders the Securities Act 12(a)(2) claim facially implausible, but considering Plaintiffs' argument in their Response, that "a prospectus need not be titled a prospectus to be one", the Court will analyze the brochures that Plaintiffs argue satisfy the definition of prospectus (Filing No. 29 at 4).

Plaintiffs assert that the promotional materials, including the REAL brochure, satisfy the definition of a prospectus. They argue that the bullet points in the materials setting forth the term of the offering, the guaranteed return, the collateral, and the minimum sum to be invested, along with details about how to participate meet the definition of prospectus within the 1933 Act. But "marketing materials . . . are not a substitute for the required prospectus." *In re Edward D. Jones & Co., L.P. Sec. Litig.*, 2019 WL 2994486, at *8 (E.D. Cal. July 9, 2019). Here, the REAL brochure falls short of the requirements for a prospectus set forth in Part One of Form S-1 and does not contain a "substantial portion" of the information required in a registration statement.

The Complaint does not properly allege that the misrepresentations and omissions were made by means of a prospectus. Accordingly, Section 12(2) of the 1933 Act does not apply, and Count I is subject to **dismissal** on this basis. *Abbell Credit Corp. v. Banc of Am. Sec., L.L.C.*, 01 C 2227, 2001 U.S. Dist. LEXIS 14643, at *9 (N.D. Ill. Sep. 13, 2001).

### B. Public or Private Offering

If the securities were sold in a private offering, Section 12(a)(2) is inapplicable. The Supreme Court held in *Gustafson* that the term prospectus "refers to a document soliciting the public to acquire securities." 513 U.S. at 574; *see also Willer v. Civil Contrs. & Eng'rs Inc.*, No. 07 CV 3395, 2007 U.S. Dist. LEXIS 80934, at *7 (N.D. Ill. Oct. 30, 2007). This is consistent with the legislative history of the 1933 Act which is discussed in detail by the Supreme Court in

---

public shortly after filing with the SEC and, if filed by U.S. domestic companies, the statements are available on the SEC's Electronic Data Gathering, Analysis, and Retrieval (EDGAR) system accessible at https://www.sec.gov.

reaching its holding in the *Gustafson* case. "Sections 11 and 12 create and define the civil liabilities imposed by the act . . . . Fundamentally, these sections entitle the buyer of securities *sold upon a registration statement* . . . to sue for recovery of his purchase price." *Gustafson v. Alloyd Co.*, 513 U.S. 561, 581 (1995) (citing H. R. Rep. No. 85, 73d Cong., 1st Sess., 5 (1933)) (emphasis added). "[A]s to private transactions . . . there will never have been a registration statement" and if "§ 12(2) liability were imposed [], it would cover transactions not within the contemplated reach of the statute." *Id.*

Because the Court determined there was no prospectus alleged, the issue of whether the securities were sold in a public or private offering is not dispositive. The Complaint alleges that the REAL agreements were sold in a "private offering" (Filing No. 1, ¶ 45), but Plaintiffs' Response asserts that the securities were sold in a private offering only "for purposes of qualifying as exempt pursuant to SEC regulations"—without citing to a particular regulation—but in connection with a public offering as it relates to the brochures (Filing No. 1 at 5). Nothing in the Complaint indicates that the REAL Agreements were executed in connection with an initial public offering and the phrase "public offering" is not used in the Complaint.

Without citing to the regulation, Plaintiffs argues that for the purposes of exemption under Rule 144A, the offerings were non-public, but for purposes of 12(a)(2) the offerings were public. Rule 144A specifically provides that securities sold in compliance with its provisions shall be deemed not to have been offered to the public. 17 C.F.R. § 230.144A. But that does not mean that an offering that is "private by its terms, and by federal regulation for purposes of one provision of the act, should be considered public for purposes of another provision." *In re Refco, Inc. Sec. Litig.*, 503 F. Supp. 2d 611, 625 n.9 (S.D.N.Y. 2007). *Gustafson* made clear that the Securities Act "is to be interpreted as a symmetrical and coherent regulatory scheme, one in which the operative words

13

have a consistent meaning throughout." 513 U.S. at 569. Because there is no prospectus alleged, which is required for a 12(a)(2) claim, Count I fails to state a claim upon which relief may be granted and is subject to **dismissal** on this basis.

### 2. State Law Claims

IWP and Ducci also move for dismissal of Plaintiffs' state law claims. IWP and Ducci argue that if Count I is dismissed, the Court should decline to exercise its discretionary supplemental jurisdiction and dismiss without prejudice all supplemental claims (Filing No. 25 at 16–17). Plaintiffs respond that even if Count I is dismissed, this Court has jurisdiction pursuant to 28 U.S.C. § 1332 under the Class Action Fairness Act ("CAFA") because class actions only require minimal diversity (Filing No. 28 at 10). Plaintiffs argue that this Court retains jurisdiction pursuant to CAFA because at least one party is a citizen of New Jersey which is a different state from Defendants. *Id.*

### A. Diversity Jurisdiction

Plaintiffs' Complaint alleges only federal question jurisdiction and supplemental jurisdiction—not diversity jurisdiction (Filing No. 1 at 3). So, Plaintiffs cannot allege an alternative basis of jurisdiction in its response to a motion to dismiss. *Zebra Techs. v. Titanium Asset Mgmt.*, No. 10CV940, 2010 U.S. Dist. LEXIS 123285, *9-10 (citing *Thomason v. Nachtrieb*, 888 F.2d 1202, 1205 (7th Cir. 1989) (a party may not amend its complaint through arguments made in opposition to a motion to dismiss)).

Further, even if Plaintiffs had alleged diversity jurisdiction, their argument still fails because their Complaint only alleges "at least fifty" class members (Filing No. 1 ¶ 57). As IWP and Ducci point out, the exception to CAFA jurisdiction states that minimal diversity shall not apply to any class action in which the number of members of all proposed plaintiff classes in the

aggregate is less than 100. 28 U.S.C. § 1332 (d)(5)(B). The Plaintiffs allegations in the Complaint do not meet the requirements for minimal diversity under CAFA.

The Complaint also fails to sufficiently allege the citizenship of the IWP and Ducci. Citizenship is the operative consideration for jurisdictional purposes. *See Meyerson v. Harrah's East Chicago Casino*, 299 F.3d 616, 617 (7th Cir. 2002) ("residence and citizenship are not synonyms and it is the latter that matters for purposes of the diversity jurisdiction"). "For diversity jurisdiction purposes, the citizenship of an LLC is the citizenship of each of its members." *Thomas v. Guardsmark, LLC*, 487 F.3d 531, 534 (7th Cir. 2007). "Consequently, an LLC's jurisdictional statement must identify the citizenship of each of its members as of the date the complaint or notice of removal was filed, and, if those members have members, the citizenship of those members as well." *Id.*

The Complaint alleges,

7. Defendant GERARDO LORENZO LINARDUCCI ("Linarducci"), is an Indiana-based broker who had been employed by Drive Planning during all times relevant herein.

8. Defendant INTEGRITY WEALTH MANAGEMENT, LLC ("IWM") is an Indiana limited liability company whose primary place of business is 12931 Girvan Way, Crown Point, IN, 46307.

9. Defendant DUCCI ENTERPRISE, LLC ("DE"), is an Indiana limited liability company whose primary place of business is 12162 Pearl Bay Ridge, Indianapolis, IN, 46236.

(Filing No. 1 at 3). These allegations are insufficient to allege the citizenship of IWP and Ducci and the Court cannot properly determine whether diversity jurisdiction exists. The allegations fail to state the members of IWP and Ducci, and their citizenship. *See* Entry on Jurisdiction, *Am. Com. Barge Line LLC v. IWC Oil & Refinery, LLC*, No. 4:22-cv-136-TWP-DML (S.D. Ind. Oct. 25, 2022) (identifying the same pleading deficiency). The allegation that Linarducci is "Indiana-based" is also insufficient to determine his citizenship for diversity jurisdiction.

As the party asking this Court to invoke its jurisdiction, Plaintiffs must properly allege the citizenship of each of the parties to establish subject matter jurisdiction. *See Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 758 (7th Cir. 2009); *Doe v. Allied-Signal, Inc.*, 985 F.2d 908, 911 (7th Cir. 1993).

### B. Supplemental Jurisdiction

Because the Court has dismissed the only federal claim, the Court should decline to exercise its discretion to retain the state law claims under its supplemental jurisdiction. *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction . . . ."). "It is the well-established law of [the Seventh] circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial." *Groce v. Eli Lilly*, 193 F.3d 496, 501 (7th Cir. 1999). Therefore, the state law claims are subject to **dismissal without prejudice**.

### 3. Fraud Claims

Finally, IWP and Ducci argue that Plaintiffs' fraud-based claims (Counts I and III) should be dismissed because they fail to meet the heightened pleading requirement under Federal Rule of Civil Procedure 9(b) (Filing No. 24). Because the Court has dismissed the 12(a)(2) claim (Count I) for the reasons stated above and because the Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims, it **denies as moot** IWP and Ducci' motion to dismiss for failure to plead with particularity. If Plaintiffs file an amended complaint that asserts a viable federal claim or properly invokes diversity jurisdiction, then this Court may consider whether Plaintiffs' state law claims should be dismissed.

### 4. Leave to Amend

Plaintiffs have requested that the Court deny the Motion to Dismiss or, in the alternative, allow them leave to amend their Complaint (Filing No. 28 at 10). The Seventh Circuit has instructed that "'[u]nless it is *certain* from the face of the complaint that any amendment would be futile or otherwise unwarranted, the district court should grant leave to amend after granting a motion to dismiss.'" *Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 519–20 (7th Cir. 2015) (emphasis in original) (quoting *Barry Aviation Inc. v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 687 & n.3 (7th Cir. 2004)). As such, Plaintiffs request for leave to file an Amended Complaint is **granted**.

### IV. CONCLUSION

The claims against Linarducci are **severed** and remain stayed, so the Motion to Dismiss does not apply to Linarducci. For the reasons explained above, Defendants Integrity Wealth Partners, LLC, and Ducci Enterprises, LLC's Motion to Dismiss (Filing No. 24) is **GRANTED**. Plaintiffs' Count I 12(a)(2) claims against IWP and Ducci are **dismissed**, and the Court declines to exercise its discretion to retain the state law claims under its supplemental jurisdiction so the remaining claims against IWP and Ducci Enterprises, LLC are **dismissed without prejudice**.

Plaintiffs are granted leave to file an amended complaint within **fourteen (14) days** of the date of this Order. If an amended complaint is an exercise in futility or if nothing is filed, then final judgment will issue as to Defendants Integrity Wealth Partners, LLC, and Ducci Enterprises.

**SO ORDERED.**

Date: 8/15/2025

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

Distribution:

Shawn M. Good
THE GOOD LAW GROUP
info@thegoodlawgroup.com

Ross M Good
The Good Law Group
ross@thegoodlawgroup.com

Kevin Dale Koons
KROGER GARDIS & REGAS LLP
kdk@kgrlaw.com

Mark E. Maddox
MADDOX HARGETT & CARUSO, P.C.
mmaddox@mhclaw.com

Justin Olson
Kroger Gardis & Regas, LLP
jolson@kgrlaw.com

Brian Pastor
Sonn Law Group PA
bpastor@sonnlaw.com

Jeffrey R. Sonn
Sonn Law Group PA
jsonn@sonnlaw.com