**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| RACHEL LYNN WILLIAMSON and CONSTANCE NOCOA, individually and on behalf of all others similarly situated | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | CASE NO.: 1:24-CV-01526-TWP-MJD |
| GERARDO LORENZO LINARDUCCI, an Indiana individual, and INTEGRITY WEALTH PARTNERS, LLC, an Indiana limited liability Corporation, and DUCCI ENTERPRISES, LLC, an Indiana limited liability corporation, | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**DEFENDANTS INTEGRITY WEALTH PARTNERS, LLC AND DUCCI ENTERPRISES, LLC'S BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**

Integrity Wealth Partners, LLC ("IWP") and Ducci Enterprises, LLC ("Ducci") (collectively "Defendants"),[1] by counsel, files this *Brief in Support of Motion to Dismiss Plaintiffs' Second Amended Complaint.* (Dkt. No. 37).

The Second Amended Complaint is Plaintiffs' second attempt to ride the coattails of a Securities and Exchange Commission ("SEC") investigation into

---

[1] The Court severed all claims against Defendant Gerardo Lorenzo Linarducci because he has filed Chapter 13 bankruptcy. Accordingly, all proceedings are stayed as to him. (Dkt. 32 at 8–9 (severing claims); Dkt. No. 31 (staying proceedings "as to Defendant Gerardo Lornzo Linarducci only")).

Defendant Gerardo Lorenzo Linarducci's alleged former employer Drive Planning, LLC (the "Drive Planning lawsuit"). The Second Amended Complaint is expressly based on "[d]ocuments filed in *SEC v. DRIVE PLANNING et Al.*, Northern District of Georgia 1:24-cv-03583-VMC." (*Id.* at p. 2).

However, the Drive Planning lawsuit does not include claims that require alleging what Plaintiffs must allege here under Section 12(a)(2) of the Securities Act: a misstatement or omission of material fact or omission of a material fact "by means of a prospectus" in a public offering. *See* No. 1:24-cv-03583, ECF. No. 1 at 4 (N.D. Ga.) (alleging violations of Section 17(a) of the Securities Act of 1933 and Sections 10(b) and 20(a) of the Securities and Exchange Act of 1934).[2] Here, the Second Amended Complaint fails to allege the existence of a prospectus.

Moreover, and conversely, the Drive Planning lawsuit alleges what Plaintiffs fail to allege here—fraud with particularity that satisfies the heightened pleading standards of Rule 9(b). Plaintiffs' Second Amended Complaint is replete with references to the promotional materials that Defendants purportedly used to solicit Drive Planning investors. This satisfies the "who" and *some* of the "what" of the particularity requirement but *none* the "when," "where," or "how." Defendants and

---

[2] 15 U.S.C. § 77q(a) (Section 17(a)) (prohibiting unlawful "sale of any securities" or misrepresentations regarding a security "by the use of any means … or communication in interstate commerce" with no requirement for alleging a "prospectus"); 15 U.S.C. § 78j(b)(5) (Section 10(b)) (prohibiting "any manipulative or deceptive device or contrivance" "by use of any means or instrumentality of interstate commerce" with no requirement for alleging a "prospectus"); 15 U.S.C. § 78t(a) (Section 20(a)) (same).

the Court are left to guess at those details. That does not satisfy Rule 9(b) particularity.

Finally, Plaintiffs, allege that they have minimal diversity jurisdiction under the Class Action Fairness Act ("CAFA"). While Plaintiffs alleged in their original Complaint that there were only 50 total class members – far short of the minimum under the CAFA, 28 U.S.C. § 1332(d)(5)(B) – they now allege there are at least 100. But the jurisdictional facts offered in support of the Motion to Dismiss show there are only 65. Moreover, over two thirds of these class members are Indiana citizens, which eliminates CAFA jurisdiction under the home-state exception.

Without any federal claims or any basis for federal jurisdiction, the Court should dismiss Counts I and III with prejudice, and dismiss the remaining state-law claims without prejudice.

## PROCEDURAL HISTORY

### *Original Complaint and Motions to Dismiss and Stay Discovery*

On September 6, 2024, Rachel Lynn Williamson and Constance Nocoa, ("Plaintiffs") filed a *Class Action Complaint and Demand for Jury Trial* (the "Complaint") (Dkt. No. 1). The Complaint alleged a violation of Section 12(a)(2) of the Securities Act and several state law claims.

On November 15, 2024, Defendants and Defendant Gerardo Lorenzo Linarducci, moved to dismiss the Complaint, (Dkt. No. 24), and moved to stay discovery in this action, pursuant to the Private Securities Litigation Reform Act. 15 U.S.C. § 77z-1(b)(1). (Dkt. No. 26).

On November 19, 2024, the Court granted the Motion to Stay Discovery. (Dkt. No. 27).

### Defendant Linarducci's Bankruptcy and Stay

Defendant Linarducci filed for Chapter 13 bankruptcy on June 27, 2025. (Dkt. Nos. 30 & 30-1). Accordingly, all claims against Linarducci alone were automatically stayed by this Court. (Dkt. No. 31).

### The Court's Order Dismissing the Original Complaint

On August 15, 2025, the Court granted Defendants' Motion to Dismiss, without prejudice, as to IWP and Ducci, but not Linarducci. (Dkt. No. 32). As to Linarducci, the Court severed the claims against him until the conclusion of his bankruptcy proceedings, resolving the Motion to Dismiss only as to the Defendants. (*Id.* at 7–9). Accordingly, the Motion to Dismiss the Original Complaint remains stayed as to Linarducci.

As to Defendants, the Court concluded that Plaintiffs failed to state a claim under the Section 12(a)(2) of the Securities Act because Plaintiffs failed to "allege that the misrepresentations and omissions were made by means of a prospectus." (*Id.* at 10–12). The Plaintiffs "only use[d] the word prospectus once in their Complaint" and the marketing materials they attached to their Complaint did "not contain a 'substantial portion' of the information required in a registration statement." (*Id.* at 11–12).

As for Plaintiffs' state law claims, the Court concluded that it lacked jurisdiction. Defendants argued that the Court had diversity jurisdiction under the

Class Action Fairness Act, 28 U.S.C. § 1332, or diversity statute. The Court rejected this argument because the Complaint did not allege diversity jurisdiction, and even if it had, Plaintiffs failed to allege the threshold class size of 100 class members pursuant to CAFA and failed to allege the citizenship of Defendants IWP and Ducci. (*Id.* at 14–16). The Court also declined to exercise supplemental jurisdiction over the state law claims because the only federal claim had been dismissed. (*Id.* at 16).

### Plaintiffs' Amended Complaints

On August 29, 2025, Plaintiffs filed their first *Amended Class Action Complaint and Demand for Jury Trial* ("FAC" or "First Amended Complaint"). (Dkt. No. 33). The First Amended Complaint, however, reasserted claims against Linarducci and provided additional factual support for those claims, in violation of the Court's stay order. (*See id.* at 1). Accordingly, Plaintiffs moved for leave to file a second amended pleading to resolve Defendants' objection to continuing to assert supplemental claims against Linarducci. (Dkt. No. 34 at 2).

On September 18, 2025, Plaintiffs filed a second *Amended Class Action Complaint and Demand for Jury Trial* ("SAC" or "Second Amended Complaint"), after receiving leave to do so by the Court. (Dkt. No. 37). The Second Amended Complaint acknowledges the Court's prior ruling that "the claims against defendant Linarducci in Plaintiffs' [Original] Complaint (Doc. 1), which remains operative only against Linarducci, are subject to the automatic bankruptcy stay [and] can be severed from the claims against the entity defendants" IWP and Ducci. (*Id.* at 2 n.2).

## FACTUAL ALLEGATIONS

The Second Amended Complaint re-alleges the same basic facts the Court addressed and summarized in its dismissal order, with a few differences.

Plaintiffs allege that Gerardo Lorenzo Linarducci ("Linarducci") was in the business of selling investments through his "financial advisor/wealth management firm" Integrity Wealth Partners, LLC and Ducci Enterprise, LLC (collectively "Defendants"). (SAC ¶ 3). Plaintiffs also allege that Linarducci was an employee of Drive Planning, LLC ("Drive Planning, LLC"). (*Id.*)

### *The Alleged Ponzi Scheme*

Plaintiffs allege that they are the victims of a Ponzi scheme orchestrated by non-parties Drive Planning, LLC, and its founder, Russell Todd Burkhalter. Plaintiffs admit that their allegations about the alleged Ponzi scheme are largely made on information and belief rather than personal knowledge, based on the SEC's investigation and publicly filed materials in the SEC receivership venued in the Northern District of Georgia. (*Id.* p. 1–2) ("Plaintiffs allege the following upon information and belief, except as to those allegations concerning Plaintiffs, which are alleged upon personal knowledge." (citing *SEC v. Drive Planning et al.*, 1:24-cv-03583-VMC (N.D. Ga.)).

The alleged Ponzi scheme centered around Real Estate Acceleration Loans ("REALs") (*Id.* ¶¶ 13, 26, 46, 48–50). REALs are promissory notes by which Plaintiffs loaned a principal sum to Drive Planning at a fixed interest rate to be payable in three months, with an option to rollover all or part of that amount at the same current rate or for another three-month period. (*Id.* ¶¶ 26, 48–51; SAC Exs. B

6

& C (Dkt. Nos. 37-2 and 37-3)). The promissory note was purportedly "secured by real property located in" a portfolio owned by Drive Planning. (*Id.* ¶¶ 48–49). Drive Planning would purportedly invest the money loaned by Plaintiffs in the real estate and pay the rate of return to Plaintiffs. (*Id.* ¶¶ 13, 26, 46, 48–49).

Plaintiffs allege that the REAL agreements were actually unregistered securities and were sold to Plaintiffs by Drive Planning to further the Ponzi scheme. (*Id.* ¶¶ 2, 51). Plaintiffs allege that none of the loans they and other lenders made to Drive Planning were actually invested and that the interest would not be paid from returns on investment but were instead paid out of other loans made to Drive Planning by other persons similarly situated to Plaintiffs. (*Id.* ¶¶ 3, 25, 29–34, 45).

### *Defendants' Alleged Actions*

Plaintiffs allege that Linarducci acted as "a sales representative trained and employed by Drive Planning" to sell REALs to purported investors, including Plaintiffs. (*Id.* ¶ 36). They allege he did so through promotional materials that advertised the REALs (*id.*; SAC Ex. A (Dkt. No. 37-1)), and by making various representations about the REALs "in person, over the telephone, through the mail, and through email." (*Id.* ¶¶ 46, 65). Specifically, Plaintiffs allege that

> Linarducci told potential investors that he was a "managing director" at Drive Planning. As a sales agent trained by and operating on behalf of Drive Planning, Linarducci falsely told REAL investors that Drive Planning pooled REAL investments and loaned that money out. He promised these investors a guaranteed ten percent return on their money. He did not, however, tell them that the returns would come from new investors' money.

(*Id.* ¶ 46). Plaintiffs also allege that

7

> Defendants put their logos on Drive Planning marketing materials without conducting adequate due diligence to confirm that returns promised to investors were actually being paid from proceeds identified on the marketing materials.

(*Id.* ¶ 47 (citing SAC Ex. A (Dkt. No. 37-1)). The Complaint goes on to allege that during those in-person, telephonic, or email solicitations, Linarducci "ma[de] untrue and/or misleading statements of material fact" (*Id.* ¶¶ 73–76, 92). Plaintiffs attach an email to the SAC which they say reveals that "Defendants were fully aware that each property purportedly being used as collateral to secure the REAL investments on the prospectus (Exhibit A) was valued substantially over the amount for which they had just been purchased" and that Defendants knew the representations made in the prospectus (Exhibit A) were demonstrably false." (*Id.* ¶¶ 93–95 (citing SAC Ex. G (Dkt. No. 37-7)). Count III goes further by alleging that Linarducci made these unspecified statements "intentionally" and did so "malicious[ly], reckless[ly], [and] willful[ly]." (*Id.* ¶¶ 95, 99.) They allege that by these means, Linarducci "induced" Plaintiffs "to sign a REAL agreement." (*Id.* ¶¶ 48–49.)

### *Public Offering and Prospectus Allegations*

Plaintiffs allege the REALs were "sold in a public offering through the marketing materials disseminated by Defendants (Exhibit A) which constitute a prospectus." (*Id.* ¶ 53). The SAC admits that there was no "SEC registration statement such as Form S-1, as this was an unregistered non-exempt offering." (*Id.* ¶ 78). It also tacitly admits there was no actual "prospectus." The first time the term prospectus appears in the SAC, it is in scare quotes:

> 36. As a sales representative trained and employed by Drive Planning, Linarducci provided potential investors with a ***"prospectus"*** consisting of promotional materials produced by Drive Planning which contain a substantial portion of the information required to be included in a Form S-1 SEC registration statement.

(*Id.* ¶ 36 (emphasis added)). Nonetheless, the SAC alleges that the Drive Planning marketing materials disseminated by Defendants constitute a "prospectus":

> 77. The materials disseminated by Defendants (see Exhibit A) constitute a prospectus within the meaning of the 1933 Act because they contain a substantial portion of the information. [sic] that would be required in an SEC registration statement (Form S-1), including:
>   - summary information about the investments;
>   - risk factors;
>   - the ratio of earnings to fixed charges;
>   - use of the proceeds;
>   - plan of description;
>   - description of securities to be registered;
>   - description of the business;
>   - information about the seller, including quantitative and qualitative disclosures about market risk.

(*Id.* ¶ 77; *see also id.* ¶ 93–94).

## ARGUMENT

**A.    The Court should dismiss Counts I for failure to state a claim under Rule 12(b)(6).**

**A.1.    Standard for motions to dismiss under Fed. R. Civ. Proc. 12(b)(6).**

To survive dismissal under Rule 12(b)(6), Plaintiffs must state a claim for relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility requires "more than a sheer possibility" of unlawful conduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The well-pleaded facts of a complaint must "allow[] the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged." *Id.* While the Court must accept all facts pled in the complaint as true, it may disregard "labels and conclusions" and "naked assertion[s] devoid of further factual enhancement." *Id.* (citing *Twombly*, 550 U.S. at 555, 557).

Federal Rule of Civil Procedure 9(b) provides that a complaint alleging fraud must state the "circumstances constituting fraud" with "particularity." This includes the "who, what, when, where, and how" of the fraud. *In re HealthCare Compare Corp. Sec. Litig.*, 75 F.3d 276, 281 (7th Cir. 1996) (cleaned up); *see also Menzies v. Seyfarth Shaw LLP*, 943 F.3d 328, 338 (7th Cir. 2019) (Rule 9(b) requires "precision and some measure of substantiation") (cleaned up).

### A.2.  Plaintiffs fail to state a Securities Act Section 12(a)(2) claim.

Plaintiffs' only alleged federal claim is under Section 12(a)(2) of the Securities Act of 1933, which imposes civil liability in connection with a prospectus containing material misstatements or omissions. Despite attempting to cure the fundamental defects in their original pleading in the SAC, Plaintiffs still fail to state a claim under Section 12(a)(2) because they have not alleged that there is a prospectus in this case. Because this is Plaintiffs' second bite of the apple, the Section 12(a)(2) claim should be dismissed with prejudice.

### A.3.  Section 12(a)(2) claims apply only to public offerings involving a prospectus.

Section 12(a)(2) imposes liability on any person who

> offers or sells a security (whether or not exempted by the provisions of section 77c of this title, other than paragraphs (2) and (14) of subsection (a) of said section), by the use of any means or instruments of transportation or communication in interstate commerce or of the mails, ***by means of a prospectus or oral communication***,

> which includes an untrue statement of a material fact or
> omits to state a material fact necessary in order to make
> the statements, in the light of the circumstances under
> which they were made, not misleading (the purchaser not
> knowing of such untruth or omission), and who shall not
> sustain the burden of proof that he did not know, and in
> the exercise of reasonable care could not have known, of
> such untruth or omission

15 U.S.C. § 77*l*(a)(2) (emphasis added). The broader Securities Act of 1933, of which

Section 12(a)(2) is a part, "protects investors by ensuring that companies issuing

securities (known as 'issuers') make a full and fair disclosure of information

relevant to a public offering." *Omnicare, Inc. v. Laborers Dist. Council Const. Indus.*

*Pension Fund*, 575 U.S. 175, 178 (2015) (cleaned up). "The linchpin of the Act is its

registration requirement." *Id.* "The primary innovation of the 1933 Act was the

creation of federal duties—for the most part, registration and disclosure

obligations—in connection with public offerings." *Gustafson v. Alloyd Co.*, 513 U.S.

561, 571 (1995).

Section 10 of the Securities Act requires issuers to file a registration

statement with the Securities and Exchange Commission and create a prospectus

that will be disclosed to the public that "contains the information in the registration

statement." 15 U.S.C. § 77*j*(a)(1).

The Supreme Court has made clear that "the liability provisions of the 1933

Act are designed for the primary purpose of providing remedies for violations of the

obligations it had created." *Gustafson*, 513 U.S. at 572. Accordingly, Section 11 of

the Securities Act [15 U.S.C. § 77*k*] provides a remedy for untrue statements in

registration statements. Section 12(a)(1) [15 U.S.C. § 77*l*(a)(1)] provides a remedy

11

for the sale of unregistered securities. And Section 12(a)(2) [15 U.S.C. § 77l(a)(2)] provides a remedy for material misrepresentations or omissions in prospectuses.

Plaintiffs allege that the REALs were unregistered securities (SAC ¶¶ 2, 51), and thus, Section 12(a)(1) would provide a remedy for the alleged sale of unregistered securities. However, Plaintiffs did not assert a Section 12(a)(1) claim. Rather, Plaintiffs assert only a Section 12(a)(2) claim, which requires Plaintiffs to allege that a "prospectus" exists regarding a security that was sold through a "public offering."

The Supreme Court has defined "prospectus" narrowly as "a term of art referring to a document that describes a public offering of securities by an issuer or controlling shareholder." *Gustafson*, 513 U.S. at 584. The Court rejected a broader definition of "any written communication offering a security for sale," and also held that "prospectus" does not mean the words "notice, circular, advertisement, [and] letter." *Id.* at 574–575. Instead, the Court said a prospectus is the same document that is described in Section 10, which must "contain the information in the registration statement." *Id.*

The addition of the phrase "or oral communications" in Section 12(a)(2) does not expand the scope of the definition of prospectus. On that point, the Supreme Court was crystal clear and simply applied the consensus among lower courts: "The Courts of Appeals agree that the phrase 'oral communication' is restricted to oral communications *that relate to a prospectus*." *Gustafson*, 513 U.S. at 567–68

(emphasis added). In other words, if there is no prospectus, then there can be no "oral statements" that fall within the ambit of Section 12(a)(2).

Courts that have applied *Gustafson* require that Plaintiffs allege that a security was offered or purchased in connection with a prospectus. *Ong ex rel. Ong IRA v. Sears, Roebuck & Co.,* 388 F. Supp. 2d 871, 890 (N. D. Ill. 2004) ("[s]tanding under § 12(a)(2) similarly requires the purchase of securities offered in the prospectus."); *Abrams v. Van Kampen Funds, Inc.,* 2002 WL 1160171, at *5 (N.D. Ill. May 30, 2002) ("To state a claim under ... section 12(a)(2) of the Securities Act, plaintiffs must allege that defendant is responsible for untrue statements of material fact or omitted material facts in a ... prospectus.").

*Gustafson* defined "prospectus" as a document "soliciting the public" and relating to a "public offering." *Gustafson*, 513 U.S. at 569, 574, 576. Accordingly, since *Gustafson*, federal courts have also routinely confirmed that a claim may not be made under Section 12(a)(2) in connection with a "private offering." *See Yung v. Lee*, 432 F.3d 142, 149 (2d Cir. 2005) (noting that *Gustafson* is routinely cited in multiple circuits for the conclusion that private offerings do not give rise to claims under Section 12(a)(2)); *see also In re Valence Tech. Sec. Litig.*, 1996 WL 37788, at *4 (N.D. Cal. Jan. 23, 1996) ("§ 12(2) applies only to a transaction which requires a prospectus to be delivered"), *aff'd in part and rev'd in part on other grounds in Berry v. Valence Tech., Inc.*, 175 F.3d 699 (9th Cir. 1999).

**A.4.    Plaintiffs did not allege a "prospectus."**

The law is clear: a prospectus specifically means "the information in the registration statement" and does not include just "any written communication

offering a security for sale." *Gustafson*, 513 U.S. at 584. Plaintiffs attempt to pass off the marketing materials attached to the SAC as a prospectus. That's not sufficient. This Court already held that the marketing materials attached to the Complaint do "not contain a 'substantial portion' of the information required in a registration statement." (Dkt. No. 32 at 12). Yet, Plaintiffs attached those same marketing materials to the SAC hoping for a different outcome. (*Compare* Dkt Nos. 1-1 to 1-6 *with* Dkt Nos. 37-1 to 37-6).

The only difference between the original Complaint and the SAC on the issue of the prospectus is that the SAC includes a more explicit description of the contents of the marketing materials and a self-serving legal conclusion that these contents "contain a substantial portion of the information. [sic] that would be required in an SEC registration statement (Form S-1) … ." (SAC ¶ 77). But simply describing the contents of the materials in a more explicit and self-serving manner cannot augment the materials themselves, which this Court has already examined. Plaintiffs' legal conclusion about the same materials attached to the original Complaint is not a factual allegation that the Court is required to accept as true for purposes of a motion to dismiss. *Iqbal*, 556 U.S. at 679. Even if it was, this allegation fails to allege that the marketing materials contain *all* of the information in an SEC registration statement. Moreover, Plaintiffs *expressly* allege that they "did not have access to the type of information normally provided in a SEC registration statement such as Form S-1 … ." (*Id.* ¶ 78). That's fatal under the

14

Supreme Court's definition of a prospectus as "the information in the registration statement." *Gustafson*, 513 U.S. at 584.

Liability under Section 12(a)(2) always requires a prospectus. *In re Edward D. Jones & Co., L.P. Sec. Litig.*, No. 2:18-CV-00714-JAM-AC, 2019 WL 2994486, at *8 (E.D. Cal. July 9, 2019) (dismissing Section 12(a)(2) claim because "[t]he Amended Complaint cites no formal prospectus, and the marketing materials in this case are not a substitute for the required prospectus."). Plaintiffs have not alleged that a prospectus exists.

Plaintiffs' Section 12(a)(2) claim fails under *Gustafson*. Even if it does not, Plaintiffs claim is still subject to heightened pleading requirements, which it cannot meet.

## B.    Plaintiffs' Securities Act 12(a)(2) claim (Count I) and common law fraud claim (Count III) do not meet the heightened pleading standards under Rule 9(b).

In some cases, Plaintiffs do not need to plead a Section 12(a)(2) claim with particularity because "neither fraud nor scienter are elements of a Section 12(a)(2) claim." *Premier Cap. Mgmt., L.L.C.*, 2003 WL 21960357, at *10. But when a Section 12(a)(2) claim "sounds in fraud" it is subject to those heightened pleading standards. Plaintiffs have attempted to plead around the possibility that Rule 9(b)'s heightened pleading standard applies by "exclud[ing] and disclaim[ing] any allegation that could be construed as fraud or intentional or reckless misconduct, as this Count is based solely on claims of strict liability and/or negligence under the Securities Act." (SAC ¶ 72).

15

But Plaintiffs' disclaimer does not control. In *W. Palm Beach Firefighters' Pension Fund v. Conagra Brands, Inc.*, 495 F. Supp. 3d 622, 636 (N.D. Ill. 2020), *aff'd sub nom. Nat'l Elevator Indus. Pension Fund v. Conagra Brands, Inc.*, No. 21-1155, 2022 WL 1449184 (7th Cir. May 9, 2022), the plaintiffs similarly attempted to "plead around" fraud when asserting their Section 11 and Section 12 claims. Like the Plaintiffs here, the complaint in *Conagra Brands* asserted a Section 12 claim that disclaimed "any allegation of fraud" and asserted that the claim was "based on strict liability and negligence arising out of Defendants' failure to make reasonable investigation into the bases for offering document statements." *Id.* at 636; *c.f.* (SAC ¶ 72 ("Plaintiffs expressly exclude and disclaim any allegation that could be construed as fraud…as this Count is based solely on claims of strict liability and/or negligence.")) The Court held, however, that "courts generally look beyond such disclaimers to determine whether a Securities Act claim sounds in fraud." *Conagra Brands*, 495 F. Supp. 3d at 636.

Similarly here, the scheme alleged in the Complaint sounds in fraud. So, Rule 9(b) applies to Plaintiffs' federal claim as well as its claim for common law fraud. And Plaintiffs cannot meet the heightened pleading standards.

### B.1.    Plaintiffs' Section 12(a)(2) claim sounds in fraud.

"A claim that 'sounds in fraud'—in other words, one that is premised upon a course of fraudulent conduct—can implicate Rule 9(b)'s heightened pleading requirements." *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007) (citations omitted); *Conagra Brands*, 495 F. Supp. 3d at 636. A Complaint alleges a "unified course of fraudulent conduct" when all the purported false or

16

misleading statement or material omissions are "false or misleading for the same reasons." *Conagra Brands*, 495 F. Supp. 3d at 637. "Where a Securities Act claim merely relies on the same alleged misrepresentations that are central to the section 10(b) fraud claim, that claim is likewise grounded in fraud." *Id.* at 636 (cleaned up); *see Melder v. Morris*, 27 F.3d 1097, 1100 n.6 (5th Cir. 1994) (Rule 9(b) applies to Securities Act claim where the complaint adopts "wholesale" the "allegations under the securities fraud claims for purposes of the Securities Act claims").

Here, Plaintiffs allege a unified scheme in their Complaint in which the alleged misrepresentations that support Count I (12(a)(2) claim) are inseparable from those alleged in Count III (common law fraud). Plaintiffs allege that Defendants distributed the REAL brochure (SAC ¶ 39) and that Linarducci "falsely told REAL investors that Drive Planning pooled REAL investments and loaned that money out. He promised these investors a guaranteed ten percent on their money. He did not, however, tell them that the returns would come from new investors' money." (*Id.* ¶ 46.) Plaintiffs allege that Linarducci then "induced" the Plaintiffs "to sign a REAL agreement" at his "behest" and invest their money in the alleged Ponzi scheme. (*Id.* ¶¶ 48–50).

These operative facts underlying the alleged unified scheme are what Plaintiffs describe as "FACTS COMMON TO ALL COUNTS" (*Id.* at p. 4) and facts that are typical of every member of the putative class. (*Id.* ¶¶ 65, 67, 69.) In fact, the same alleged facts that purportedly support a Section 12(a)(2) claim are also used to support a common law fraud claim without distinction. (*Compare id.* ¶ 71

17

("Plaintiffs restate and reallege paragraph 1 through 70 as though fully set forth herein as paragraph 71") *with id.* ¶ 81 ("Plaintiffs restate and reallege paragraph 1 through 70 as though fully set forth herein as paragraph 81")). Plaintiffs do not distinguish between any predicate alleged facts that form the basis for their Count I 12(a)(2) claim and their Count III common law fraud claim—they allege one unified scheme based on the same underlying facts and alleged misrepresentations. Finally, the Complaint does not attempt to distinguish between the various acts of each defendant but attributes the same actions to each. *See Conagra Brands*, 495 F. Supp. 3d at 637 (distinguishing conduct of defendants that sounded in fraud from other defendants whose conduct did not sound in fraud).

**B.2.   Plaintiffs' Section 12(a)(2) claim that sounds in fraud and its common law fraud claim have not been alleged with sufficient particularity under F.R.C.P. 9(b).**

Federal Rule of Civil Procedure 9(b) "ordinarily requires describing the who, what, when, where, and how of the fraud." *Kahn v. Walmart Inc.*, 107 F.4th 585, 594 (7th Cir. 2024). It requires "precision and some measure of substantiation." *Menzies v. Seyfarth Shaw LLP*, 943 F.3d 328, 338 (7th Cir. 2019).

As to the "what" of the fraud allegations, Defendants do not necessarily take issue with the "particularity" of the written brochure attached as Exhibit A to the Complaint. Rather, the deficiency lies in the Complaint's failure to firmly commit that its fraud allegations are limited to those materials. Instead, it includes open-ended allegations that Linarducci held "in-person sales presentations" (SAC ¶ 39) and "solicited Plaintiffs in person, over the telephone, through the mail, and through email" (*id.* ¶ 75) in which he "induced" Plaintiffs to sign REAL agreements

18

at his "behest." (*Id.* ¶¶ 48–50). The Complaint goes on to allege that during those in-person, telephonic, or email solicitations, Linarducci "ma[de] untrue and/or misleading statements of material fact" (*id.* ¶¶ 74, 91) without specifying with any particularity *what* those alleged statements were, or alternatively, that such statements were strictly limited to the written materials attached to the Complaint. Count III goes further by alleging that Linarducci made these unspecified statements "intentionally" and did so "malicious[ly], reckless[ly], [and] willful[ly]" and "negligent[ly] and careless[ly]." (*Id.* ¶¶ 82, 88, 95).

The Second Amended Complaint adds two paragraphs that appear to be an effort to satisfy the Rule 9(b) particularity requirement. But they do not. Paragraphs 93 and 94 refer to Exhibit G, which purports to be an email sent by Linarducci. Plaintiffs characterize this email as "revealing Defendants were fully aware that each property purportedly being used as collateral to secure the REAL investments ... was valued substantially over the amount for which they had just been purchased." (*Id.* ¶ 93). Plaintiffs allege this email "reveal [sic] that Defendants knew the representations made in the prospectus (Exhibit A) were demonstrably false." (*Id.* ¶ 94).

First, this email in Exhibit G hardly reveals Defendants' mental state about the accuracy of the marketing materials. All the email says is "let me know you got this ... pretty big file ...." (Dkt. No. 37-7 at 2). The attachments to this email include marketing materials, appraisals, and warranty deeds. That's it.

19

Second, this email in Exhibit G does not identify with particularity any alleged statement that Linarducci made *to the Plaintiffs*. At best, this email is evidence of Linarducci's mental state, not any statement of fact or omission that he allegedly made to any Plaintiff, much less when that statement occurred.

In the absence of an allegation confining the alleged misstatements to the written brochure, Plaintiffs must allege the "when," "where," and "how" of *any* purported statements or omissions to the Plaintiffs beyond the written brochure, and without that specificity, Defendants are left only to guess at what additional unspecified misstatements Plaintiffs are alleging, much less the "who, …when, where, and how of the fraud." *Kahn*, 107 F.4th at 594; *e.g.*, *Kruse v. GS Pep Tech. Fund 2000 LP*, 897 F. Supp. 2d 769, 780 (N.D. Ind. 2012) ("Plaintiffs further fail to sufficiently plead the *when, where,* and *how.*"). When and where were these in-person meetings or telephone calls, with whom, and what was said or communicated? Even as to the written materials, the Complaint is devoid of any detail regarding when, where, or how the lead Plaintiffs received any of those materials, or even if they saw them at all. These details are required to satisfy Rule 9(b)'s pleading requirements for averments of fraud. As the Seventh Circuit said, under Rule 9(b) Plaintiffs must "plead enough about *what transpired* with the [Plaintiffs] for [the Court] to know what any defendant represented, misrepresented, or omitted … [and] allege at least *some particulars* about *the precise communications with each investor.*" *Menzies*, 943 F.3d at 341 (emphasis added).

20

Finally, this is not a case where Plaintiff cannot plead the particulars without formal discovery. Plaintiffs have all the information they need at their disposal to identify the who, what, when, where and why, of Defendants statements to them that purportedly induced their alleged purchase of REALs. Moreover, as the Second Amended Complaint alleges, some of the factual details have purportedly been disclosed in other litigation. (SAC ¶ at pp. 1–2). Plaintiff, thus, cannot make the necessary showing that no additional information about the fraud could be alleged without formal discovery. *E.g.*, *Emery v. Am. Gen. Fin., Inc.*, 134 F.3d 1321, 1323 (7th Cir. 1998) (affirming dismissal under Rule 9(b) where Plaintiff failed to make a showing that "further particulars of the alleged fraud could not have been obtained without discovery").

As a result, Count I (Section 12(a)(2) claim) and Count III (common law fraud) should be dismissed.

**C.    Count I and Count III should be dismissed with prejudice.**

This is Plaintiffs' second bite of the apple. Both the original Complaint and the Second Amended Complaint failed to allege a Section 12(a)(2) claim and failed to allege fraud with particularity. Moreover, the Second Amended Complaint suffers from the same fundamental flaw that doomed the original Complaint, namely, that it fails to allege the existence of a prospectus. Further amendment would not cure these deficiencies and would be futile.

"[T]he Court need not grant leave to amend if 'it is certain from the face of the complaint that any amendment would be futile or otherwise unwarranted.' 'An amendment is futile if it 'fails to cure the deficiencies in the original pleading, or

could not survive a second motion to dismiss.'" *Eures v. Havenpark Mgmt., LLC*, No. 4:23-CV-00184-TWP-KMB, 2025 WL 964697, at *11 (S.D. Ind. Mar. 31, 2025) (quoting *O'Boyle v. Real Time Resolutions*, 910 F.3d 338, 347 (7th Cir. 2018) and *Crestview Vill. Apts. v. U.S. Dep't of Housing & Urban Dev.*, 383 F.3d 552, 558 (7th Cir. 2004)). Under this standard, the Court should dismiss Counts I and III of the Second Amended Complaint with prejudice. *E.g.*, *id.* (dismissing complaint with prejudice where "Plaintiffs have had multiple opportunities to amend their Complaint and cure any deficiencies in their pleadings but have failed to do so."); *Stanard v. Nygren*, 658 F.3d 792, 800 (7th Cir. 2011) (affirming dismissal with prejudice where Plaintiff "repeatedly failed to follow explicit directions from the district court about how to correct specific problems in the first two complaints").

**D.    The Court should dismiss the remaining State Law Claims for lack of subject matter jurisdiction under Rule 12(b)(1).**

**D.1.    Standard for motions to dismiss under Fed. R. Civ. Proc. 12(b)(6).**

When considering a motion to dismiss for lack of subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1), the Court must accept as true all well-pled factual allegations and draw reasonable inferences in favor of the plaintiff. *Rueth v. EPA*, 13 F.3d 227, 229 (7th Cir. 1993); *Coachman v. IRS Worker Comp. Branch, et al.*, No. 1:19-cv-01003-JPH-TAB, 2020 WL 1042531, at *1 (S.D. Ind. Mar. 4, 2020) (citing *Ctr. for Dermatology and Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588–89 (7th Cir. 2014)). Plaintiffs have the burden of supporting the jurisdictional allegations in their Complaint by competent proof. *Int'l Harvester Co. v. Deere & Co.*, 623 F.2d 1207, 1210 (7th Cir. 1980); *Coachman*, 2020 WL 1042531, at *1. When a defendant

raises a factual challenge to the Court's subject matter jurisdiction, the Court "may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009); *Higgins v. United States*, No. 1:13-cv-837-JMS-MJD, 2013 WL 5303780, at *1 (S.D. Ind. Sept. 20, 2013).

### D.2.  The Court lacks diversity jurisdiction under the Class Action Fairness Act

Plaintiffs allege they have minimal diversity jurisdiction under the Class Action Fairness Act ("CAFA"). (SAC ¶ 11). They cite to 28 U.S.C. § 1332(d)(2)(A), which permits original jurisdiction where "any member of a class of plaintiffs is a citizen of a State different from any defendant." However, the jurisdictional facts presented by Defendants show that CAFA does not confer diversity jurisdiction in this case for two reasons: (1) "the number of members of all proposed plaintiff classes in the aggregate is less than 100," 28 U.S.C. § 1332(d)(5)(B), and (2) two-thirds or more of the class members and Defendants are from Indiana, 28 U.S.C. § 1332(d)(4)(B).

First, Plaintiffs allege that "[t]here are more than one hundred members of the Class" because "[t]here are at least 100 or more clients of Defendants." (SAC ¶ 11; *see also id.* ¶ 65). But this cannot be true as to IWP. This entity did not exist until July 17, 2024. (Declaration ("Decl.") of Linarducci, Dkt. No. 39-1, ¶ 3; Exhibit

A to Linarducci Decl., Dkt. No. 39-2).[3] This post-dated any alleged solicitation or sales of REALs in the Second Amended Complaint. This is a jurisdictional fact on which the Court may rely to hold that there is no class, of any size, that could assert claims against Defendant IWP.

Moreover, Mr. Linarducci's bankruptcy filings identify all of the persons who may have claims against him related to the REALs. Mr. Linarducci's bankruptcy filings show that no more than 65 persons may or have alleged potential claims against him related to the REAL program at Drive Planning. (Linarducci Decl. ¶¶ 7–9; Exhibit B to Linarducci Decl., Dkt. No. 39-2).[4] Accordingly, Plaintiffs cannot show that the members of all proposed plaintiff classes exceed 100.

Second, and independently, Plaintiffs cannot overcome the "home-state exception" to CAFA jurisdiction, which forbids a district court from exercising jurisdiction over class claims where "two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed." 28 U.S.C. § 1332(d)(4)(B). Here, the jurisdictional facts presented by Defendants establish that at least two-thirds of all class members – 80% to be precise – are from Indiana, the same state

---

[3] This Declaration and the exhibits attached thereto are offered in support only of Defendants' Rule 12(b)(1) motion and for no other purpose.

[4] These bankruptcy filings are publicly available. One of the Plaintiffs, Rachel Williamson, has filed a notice in the Linarducci bankruptcy proceedings objecting to Linarducci's Chapter 13 Plan before filing the Second Amended Complaint. See *In re Gerardo Lorenzo Linarducci*, No. 25-03768-JMC-13, ECF No. 46 (August 27, 2025). Plaintiffs should have been aware of the limited number of potential creditors that Linarducci identified in his bankruptcy proceedings.

as the primary Defendants and the same state in which this action was originally

filed. (Linarducci Decl. ¶ 8; (SAC ¶¶ 7–9 (alleging Defendants are Indiana citizens)).

This eliminates CAFA jurisdiction under the home-state exception. *See, e.g.*, *In re*

*Sprint Nextel Corp.*, 593 F.3d 669, 673 (7th Cir. 2010) (holding that party opposing

CAFA jurisdiction "had to establish by a preponderance of the evidence that two-

thirds of their proposed class members are Kansas citizens" under the "home-state

exception" of 1332(d)(4)(B)).

### D.3.  Without subject matter jurisdiction, the Court should decline to exercise supplemental jurisdiction over any remaining state law claims.

The Complaint invokes this Court's subject matter jurisdiction based, in part,

on supplemental jurisdiction for state law claims. (SAC ¶ 10, citing 28 U.S.C. §

1367(a) (supplemental).) Its sole federal claim is Count I asserted under Section

12(a)(2) of the Securities Act [15 U.S.C.A. § 77l(a)(2)].

For the reasons discussed above, Plaintiffs' sole federal claim should be

dismissed. And without a federal claim, the Court should also decline to exercise its

discretionary supplemental jurisdiction over any remaining state law claims. *See* 28

U.S.C. § 1367(c)(3) (allowing district court to "decline to exercise supplemental

jurisdiction" over state-law claims if the court has dismissed all claims over which it

has original jurisdiction). "[I]t is the well-established law of this circuit that the

usual practice is to dismiss without prejudice state supplemental claims whenever

all federal claims have been dismissed prior to trial." *Groce v. Eli Lilly & Co.*, 193

F.3d 496, 501 (7th Cir. 1999). The Seventh Circuit "presume[s] that a district court

will relinquish jurisdiction over supplemental state-law claims when no federal

claims remain in advance of a trial." *Walker v. McArdle*, 861 F. App'x 680, 687 (7th Cir. 2021). "Indeed, this presumption counsels that the better practice is for district courts to state explicitly their reasons for taking the opposite course." *Groce*, 193 F.3d at 501; *see also, Stamatio v. Hurco Companies, Inc.*, 885 F. Supp. 1180, 1186 (S.D. Ind. 1995) (declining to exercise supplemental jurisdiction over common law fraud claims after dismissing federal securities claims); *Tirapelli v. Advanced Equities, Inc.*, 215 F. Supp. 2d 964, 974 (N.D. Ill. 2002) (same).

Thus, the Court should decline to exercise supplemental jurisdiction over any remaining state-law claims and dismiss them without prejudice.

## **CONCLUSION**

THEREFORE, Defendants Integrity Wealth Partners, LLC and Ducci Enterprises, LLC request the Court for an order dismissing Counts I and III, with prejudice, and to dismiss the remaining state-law claims without prejudice, and for all other just and proper relief.

Respectfully submitted,

/s/ *Kevin D. Koons*
Kevin D. Koons, Atty. No. 27915-49
Justin R. Olson, Atty. No. 31450-49
KROGER, GARDIS & REGAS, LLP
111 Monument Circle, Suite 900
Indianapolis, IN 46204
Phone: (317) 692-9000
kkoons@kgrlaw.com
jolson@kgrlaw.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on October 2, 2025, I filed the foregoing *Defendants Integrity Wealth Partners, LLC and Ducci Enterprises, LLC's Brief in Support of Motion to Dismiss Plaintiffs' Second Amended Complaint* electronically with the Clerk of the Court. Notice of this filing will be sent to the following by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

Mark E. Maddox
Maddox Hargett & Caruso, P.C.
10150 Lantern Road
Suite 175
Fishers, IN 46037
mmaddox@mhclaw.com

Shawn M. Good
Ross M. Good
The Good Law Group
800 E. Northwest Hwy
Suite 814
Palatine, IL 60074
Shawn@thegoodlawgroup.com
ross@thegoodlawgroup.com

Brian Pastor
Sonn Law Group PA
3455 Peachtree Rd NE
Ste 500
Atlanta, GA 30326
bpastor@sonnlaw.com

Jeffrey R. Sonn
Sonn Law Group PA
19495 Biscayne Blvd.
Suite 607
Aventura, FL 33180
jsonn@sonnlaw.com

/s/ *Kevin D. Koons*
Kevin D. Koons

KROGER, GARDIS & REGAS, LLP
111 Monument Circle, Suite 900
Indianapolis, IN 46204
Phone: (317) 692-9000