**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

RACHEL LYNN WILLIAMSON and
CONSTANCE NOVOA, on behalf of
themselves and all others similarly
situated,

Plaintiffs,

v.

GERARDO LORENZO LINARDUCCI,
an Indiana individual,
INTEGRITY WEALTH PARTNERS, LLC, an
Indiana limited liability corporation, and
DUCCI ENTERPRISES, LLC, an
Indiana limited liability corporation,

Defendants.

Case No. 1:24-cv-01526-TWP-MJD

**PLAINTIFFS' RESPONSE TO DEFENDANTS'
INTEGRITY WEALTH PARTNERS AND DUCCI ENTERPRISES
MOTION TO DISMISS SECOND AMENDED COMPLAINT**

## <u>INTRODUCTION</u>

The Second Amended Complaint ("SAC"), Dkt. 37, addresses the Court's prior ruling

and cures the deficiencies identified in dismissing the earlier complaint. Defendants nonetheless

renew their motion to dismiss on three grounds. First, Defendants claim Count I, which alleges

violations of Section 12(a)(2) of the Securities Act, fails because Plaintiffs did not plead a

misstatement or omission of material fact made "by means of a prospectus" in a public offering.

Second, they argue that Rule 9(b)'s heightened pleading requirements apply, despite the absence

of any scienter element in a Section 12(a)(2) claim. Third, they contend that minimal diversity is

lacking under the Class Action Fairness Act, codified at 28 U.S.C. §§ 1332(d)(2) (hereafter

"CAFA"), and that dismissal of Count I would eliminate federal jurisdiction.

1

Each contention is unavailing. Plaintiffs have specifically alleged that Defendants' written offering materials qualify as a "prospectus" under the statute and were disseminated broadly in connection with a public offering. [1] Rule 9(b) does not apply because scienter is not an element of Section 12(a)(2); Plaintiffs expressly disclaim fraud, and even if Rule 9(b) were applied, the SAC alleges with particularity the who, what, when, where, and how of Defendants' misstatements and omissions. Finally, CAFA jurisdiction is firmly established: Plaintiffs allege minimal diversity, numerosity, and an amount in controversy exceeding $5 million. Defendants' conclusory declaration does not overcome those allegations and cannot defeat jurisdiction. Because the SAC cures the issues identified by the Court, states a valid claim under Section 12(a)(2), and establishes a solid basis for federal jurisdiction, Defendants' motion should be denied.

## **LEGAL STANDARD**

In ruling on a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the court must "accept the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff." *Cisneros v. Petland, Inc.,* 972 F.3d 1204, 1210 (11th Cir. 2020), *citing Almanza v. United Airlines, Inc.,* 851 F.3d 1060, 1066 (11th Cir. 2017).  To survive a motion to dismiss, a complaint need only plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the

---

[1] Interestingly, though Defendants go to great lengths to insist that Plaintiffs must allege a prospectus and a public offering, Plaintiffs do not take issue with the validity of that proposition. What is perplexing is that Defendants do not explain how Plaintiffs failed to allege those elements. Whether these materials qualify as a prospectus is inherently a fact question turning on content, purpose, and distribution—issues not properly resolved within a Motion to Dismiss.

court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).

## <u>ARGUMENTS</u>

**A. Count I of Plaintiff's Second Amended Complaint states a proper claim under Section 12(a)(2) of the Securities Act of 1933 ("Securities Act").**

Defendants recycle the same arguments the Court previously considered, claiming that Count I under Section 12(a)(2) fails because Plaintiffs did not adequately allege a prospectus and because the securities were not sold in a public offering. They also contend that, despite the absence of a scienter requirement, the claim must meet Rule 9(b)'s heightened pleading standard. The Second Amended Complaint directly addresses and cures the deficiencies identified in the Court's prior order, and as detailed below, Defendants' renewed objections provide no valid basis for dismissal.

1. <u>Plaintiffs plausibly allege that Defendants' written offering materials constitute a 'prospectus' under 15 U.S.C. § 77b(a)(10)</u>

Plaintiffs allege that Defendants' written offering materials functioned as communications offering securities to multiple investors and therefore fall within the statutory definition of a prospectus at the pleading stage.  In dismissing Plaintiffs' First Amended Complaint without prejudice, this Court determined that Plaintiffs had not properly alleged that Defendants' misrepresentations and omissions were made by means of a prospectus. Dkt. No. 32 at 10-12. In making this determination, this Court noted that Plaintiffs had only used the word prospectus once in their Complaint. *Id.* at 11. "Prospectus" is defined in the Act as "any prospectus, notice, circular, advertisement, letter, or communication, written or by radio or television, which offers any security for sale or confirms the sale of any security." 15 U.S.C. § 77b(a)(10). Citing to a case from the Eastern District of California, the Court stated "marketing

3

materials . . . are not a substitute for the required prospectus." Dkt. No. 32 at 12, *citing In re Edward D. Jones & Co., L.P. Sec. Litig.*, No. 2:18-CV-00714-JAM-AC, 2019 WL 2994486, at [2] The Second Amended Complaint addresses this concern by alleging these were not mere "marketing materials" of a general advertising nature and by alleging facts concerning substance one would normally find in registration materials. For example, Plaintiffs' SAC alleges Defendants' prospectus provides the following information about the REAL investment:

- 3-month term;

- 10% return;

- Quitclaim deed collateral;

- If you have $20,000 you can participate;

- You can use money from your retirement account;

- You don't have to be an accredited investor;

- You can use money from savings;

- You can use money from a line of credit;

- How does Drive make sure your loan is protected from any potential losses? We've got you covered with millions of dollars in cash and real estate that we

- own outright. Your loan is due every 90 days, and you can cash out if you want to. This way, even if something goes wrong in the real estate market, the risk is really low;

---

[2] *Edward D. Jones* related to an alleged scheme to convert existing clients from a commission pricing model to a fee-based model which would generate higher revenues. *See Id.* at *16 ("Plaintiffs allege that the Individual Defendants envisioned and implemented company-wide policies and procedures to improperly increase asset-based revenue through the alleged reverse-churning scheme"). This case is not about internal materials generated for a reverse-churning scheme, but the sale of securities in a public offering.

- Is the Real Plan too good to be true? Actually, this kind of program is pretty common among people who invest in real estate. For instance, if you've watched HGTV, you've probably seen how quickly professional real estate investors can make a profit that's even better than what the REAL Plan offers. Your money is protected by collateral that includes $21 million in cash, plus $92 million worth of real estate as of March 2023. So you can be sure that we and our lenders are protected from any losses.

SAC ¶¶ 37-43. The prospectus goes on to specifically identify the real estate used as collateral. Dkt. 37-1 at 5. The Second Amended Complaint alleges specific content and substance of the information disseminated and the substantive content alleged is in fact sufficient to disregard the overly broad label "marketing materials." The substance of the new allegations in a notice pleading are sufficient to allege that the disseminated materials functioned as written communications offering securities to the public and fall within the statutory definition of a "prospectus" under 15 U.S.C. § 77b(a)(10). SAC ¶¶ 36-37, 39-43, 77.

If Congress had wanted a narrow definition of "prospectus," then the statute would not have explicitly set out a definition that labels are irrelevant, and that a broad range of written communications to investors are considered a "prospectus." Congress' rejection of a narrowly tailored definition supports a finding – when in doubt – Courts should protect investors by permitting written materials that have specifics about investments as alleged here, to fall within the statutory definition of "prospectus."

Further, Section 12(a)(2) is not limited to written communications. It imposes liability upon a seller of a security by means of *either a prospectus __or oral communication__* that includes an untrue statement of material fact or omits a material fact. 15 U.S.C. § 77*l*(a)(2). "The primary

5

innovation of the [Securities] Act was the creation of federal duties – for the most part, registration and disclosure obligations – in connection with public offerings." *Gustafson v. Alloyd Co.*, 513 U.S. 561, 571 (1995). Issuers of securities must comply with disclosure requirements set forth in 15 U.S.C. § 77*j*(a)(1).

*Gustafson* limits § 12(a)(2) to public offerings; it does not require a document to replicate a registration statement or bear the title 'Prospectus.' The inquiry is functional—content, purpose, and distribution. *Gustafson* did not create a content checklist or transform "by means of a prospectus" into a test equivalent to the requirements for registration. *See Gustafson v. Alloyd Co.*, 513 U.S. 561, 569, 571, 574 (1995). Under the Securities Act, a prospectus is broadly defined to include written communications offering a security for sale, 15 U.S.C. § 77b(a)(10), and Section 12(a)(2) imposes liability for material misstatements or omissions made "by means of" such a prospectus or an oral communication, 15 U.S.C. § 77l(a)(2). Plaintiffs specifically and adequately allege that Defendants' written offering materials—distributed to multiple investors—contained material misrepresentations and omissions, which meets the statutory requirement at the pleading stage. *Gustafson, 513 U.S. at 571.*

Defendants mischaracterize *Gustafson*. Specifically, in *Gustafson,* "[t]he question presented is whether this right of rescission extends to a private, secondary transaction, on the theory that recitations in the purchase agreement are part of a 'prospectus.'" *Gustafson* at 564. The Supreme Court ruled that it did not. In stark contrast, the matter presented here does not relate to secondary transactions nor recitations merely in a secondary market purchase agreement. *See Gustafson* at 566 ("The buyers [] alleged that **the contract of sale** was a 'prospectus,' so that any misstatements contained in the agreement gave rise to liability under" the Securities Act) (Emphasis added). Nowhere in *Gustafson* does the Supreme Court require

that, to qualify as a "prospectus," a document must contain all, or even substantially all, of the information included in a formal SEC registration statement.  Indeed, it is undeniable that Congress could have, but did not create such a requirement.  Instead, the Supreme Court made two key points:

- A "prospectus" under Section 12(a)(2) refers to a communication used in connection with a public offering, not a private contract of sale which was the fact pattern in that case. *Id.* at 569–71.

- In describing the statutory framework, the Supreme Court noted that Section 10 of the Securities Act sets forth the type of information Congress required in a registration statement and, by extension, in a prospectus for a registered offering. *Id.* at 569, 574.

The definition of "prospectus" that Congress set out for purposes of 12(a) liability is not the same as a requirement for SEC registration.   What constitutes a prospectus that is filed with the SEC is not what Congress defined or required of a prospectus within the context of 12(a).  Consistent with this, and critically, *Gustafson* did not hold that a "prospectus" must be the functional equivalent of a Section 10 registration statement to fall within the Securities Act. *See Gustafson* at 569 ("Section 10 does not provide that some prospectuses must contain the information contained in the registration statement."). Rather, *Gustafson* reaffirmed that Section 12(a)(2) liability attaches when securities are sold to the public "by means of" written communications containing material misrepresentations or omissions. 15 U.S.C. § 77l(a)(2); *see also Gustafson* at 571 ("the liability [] cannot attach unless there is an obligation to distribute the prospectus in the first place…"). Here, Plaintiffs have specifically alleged that Defendants' offering materials were written communications broadly disseminated to multiple investors and

that those materials contained material misstatements and omissions. SAC ¶¶ 36–37, 39–43, 77. Plaintiffs have met the Section 12(a)(2) requirements at the pleading stage.

Plaintiffs' Second Amended Complaint now details how Defendants' offering materials for the REAL securities meet the statutory criteria for a prospectus under the Securities Act. SAC ¶¶ 36-37, 39-43, 77. Indeed, Defendants described with great specificity documents that included a substantial portion of the information required to be included in a Form S-1 SEC registration statement. *Id*. Under the statutory definition and *Gustafson*, a document may constitute a prospectus based on its content and purpose. Plaintiffs allege the content and purpose of the publicly disseminated investment materials satisfy the definition of a prospectus, and therefore, Defendants' arguments to the contrary should be rejected and Plaintiff's permitted to proceed past this stage.

2. <u>Contrary to Defendants' assertion, the misstatements and omissions made by Defendants were made in a public offering.</u>

Defendants appear to suggest that the securities offered herein were akin to a private transaction not covered by the Act, though they fail to offer any support for that assertion. Dkt. 39 ("MTD") at 10-13. Plaintiffs do not take issue with the requirement that Section 12(a)(2) claims apply only to public offerings. As already noted, "[t]he primary innovation of the 1933 Act was the creation of federal duties – for the most part, registration and disclosure obligations – in connection with public offerings." *See Gustafson,* 513 U.S. at 571. In its Order dismissing the First Amended Complaint, this Court declined to make a finding as to whether Plaintiffs properly alleged a public offering, given that the dismissal was based upon the prospectus issue.

The SAC alleges a public offering via broad dissemination of written solicitation materials—even if the securities did not trade on a national exchange. *See* ¶¶ 53, 54. The

plaintiffs in *Gustafson* bought securities in connection with a private contract of sale between them and the corporation selling the securities. By contrast, as already discussed above, the securities herein were offered and purchased in connection with a "prospectus," or written communication if you will, disseminated to the public at large. The securities were not offered or issued to a closed, pre-identified group of investors as they were in *Gustafson.* That some investors purchased the REAL notes individually does not alter the fact that the securities were offered to the public as a whole.

Cases in which motions to dismiss have been granted based upon the absence of a public offering are distinguishable from the case at bar. For example, in *Abbell Credit Corp. v. Banc of Am. Sec.., L.L.C.,* 2001 U.S. Dist. LEXIS 14643, the court for the Northern District of Illinois dismissed the Section 12(a)(2) claim because the alleged misrepresentations and omissions were made by a broker who was recommending the purchase of commercial paper to a particular customer. In *Abbell,* the complaint did not allege that the broker's representations were held out to the public nationwide and internationally. *Abbell at 8, *9;* SAC ¶ *39* (Plaintiffs allege that Defendants offered the REAL investments for sale nationwide and accepted investments from international investors, and that they promoted the securities to prospective investors through the U.S. mail, by emailing it as a Portable Document Format (PDF), by reproducing it on the Drive Planning website (www.driveplanning.com), by handing it directly to prospective investors during in-person sales presentations, and by making hard copies available to Drive Planning's sales agents), by handing it directly to prospective investors during in-person sales presentations, and by making hard copies available to Drive Planning's sales agents). In-person delivery does not render a public solicitation private; what matters is that the same written materials were disseminated broadly to multiple prospective investors. *Gustafson*, 513 U.S. at 569, 574, 576. In-

person delivery does not convert a public solicitation into a private offering; what matters is that the same written materials were disseminated broadly to multiple prospective investors. The prospectus described in the SAC was, as required by the Act and by *Gustafson,* a document "soliciting the public" and relating to a "public offering." *See Gustafson*, 513 U.S. at 569, 574, 576. Whether these materials qualify as a prospectus is a fact-intensive question (content, purpose, distribution) not suited for resolution on a Rule 12(b)(6) motion.

Because the SAC alleges facts that constitute a related to a "public offering," and does not allege facts in connection with a "private offering," Defendants Motion fails.

3. <u>As Plaintiff's Section 12(a)(2) claim does not require an allegation of fraud, and does not "sound in fraud," the heightened pleading requirements of Fed. R. Civ. P. 9(b) do not apply.</u>

Rule 9(b) does not apply to Count I because neither fraud nor scienter is an element of a § 12(a)(2) claim. "To establish a [12(a)(2)] claim, plaintiffs need only show that they purchased the security and that there was a material misrepresentation or omission. Scienter is not required." *In re Ulta Salon, Cosmetics & Fragrance, Inc.,* 604 F. Supp. 2d 1188, 1192 (N.D. IL 2009) (citations omitted). Defendants contend that the Section 12(a)(2) claim 'sounds in fraud' and therefore must satisfy Rule 9(b), yet *Ulta Salon* expressly noted that no court in this Circuit has applied Rule 9(b) to such claims. *In re Ulta Salon,* 604 F. Supp. 2d at 1193. The court in *Ulta Salon* questioned the soundness of any decision requiring a plaintiff to plead fraud and scienter with particularity when neither is an element of the claim,. *Id.* at 1193 citing *Sears v. Likens*, 912 F.2d 889 (7th Cir. 1990). ("This court agrees that the *Sears* court was not asked to and did not determine that Rule 9(b) applies to §§ 11 and 12 claims even if those claims 'sound in fraud.'"). The court in *Ulta Salon* concluded that such a requirement would run contrary to

Supreme Court precedent and the liberal system of "notice pleading" embodied in the Federal Rules of Civil Procedure. *Id.* at 1193.

As Plaintiffs have specifically alleged: "For purposes of [Count I (alleging violation of Section 12(a)(2) of the Securities Act of 1933)], Plaintiffs expressly exclude and disclaim any allegation that could be construed as fraud or intentional or reckless misconduct, as this Count is based solely on claims of strict liability and/or negligence under the Securities Act." SAC ¶72. Nevertheless, Defendants assert that Plaintiffs have simply attempted to "plead around" the heightened pleading requirements by including this allegation. MTD at 15-18. In support of this assertion, Defendants cite to *W. Palm Beach Firefighters' Pension Fund v. Conagra Brands, Inc.*, 495 F. Supp. 3d 622, 636 (N.D. Ill. 2020), *aff'd sub nom. Nat'l Elevator Indus. Pension Fund v. Conagra Brands, Inc.*, No. 21-1155, 2022 WL 1449184 (7th Cir. May 9, 2022), which is distinguishable from the case at bar. Defendants' reliance on *Conagra* is similarly misplaced because that court held that, at least with respect to certain defendants, plaintiffs had alleged a "unified course of fraudulent conduct" that formed the basis of claims under both the Securities Act of 1933 and the Exchange Act <u>(which requires scienter)</u>. MTD at 16-17; *Conagra,* 495 F. Supp. At 637. In stark contrast to the claim in *Conagra,* Plaintiffs' Second Amended Complaint (and the earlier complaints too) under Section 12(a)(2) does not sound in fraud, and scienter and reliance are irrelevant. More significantly, Plaintiffs' claim does not rely upon the same sort of misrepresentations/reliance that are central to a 10b-5 fraud claim. In fact, unlike *Conagra,* the SAC does not include a claim under 10b-5. Without a 10b-5 claim, there cannot possibly be the sort of overlap between securities claims described in *Conagra* and therefore, *Conagra* does not apply.

Defendants' entire argument that Plaintiffs' 12(a)(2) claim "sounds in fraud" relies upon cases where there were concurrent Rule 10b-5 fraud claims and both 12(a) and 10(b) claims were grounded in the same unified course of fraudulent conduct. MTD at 16-18. None of those cases apply here.

In 1995, Congress enacted the Private Securities Litigation Reform Act (PSLRA) to impose heightened pleading requirements on Rule 10b-5 actions, a claim not made in Plaintiffs' SAC. 15 U.S.C. §78u-4; *see Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 127 S. Ct. 2499, 2502 (2007)**.** The PSLRA does not impose heightened pleading requirements claims brought under the Securities Act of 1933. The Seventh Circuit has held that Rule 9(b) applies to "averments of fraud," not claims of fraud. Therefore, whether Rule 9(b) rule applies depends on the plaintiffs' factual allegations. *Borsellino v. Goldman Sachs Group, Inc*., 477 F. 3d 502, 507 (7th Cir. 2007). In *Borsellino,* the complaint was "riddled with references to fraud, showing that this theory pervades their entire case." *Id.* By contrast, Plaintiffs' complaint is focused on the sale of unregistered securities – which were sold in the course of a ponzi scheme. What is essential is that such sales violate the law regardless of Defendants' intent or Plaintiffs' reliance.

Count I is premised upon Section 12(a)(2) which imposes liability for false claims *without any element* of the claim or requirement to prove that the Defendants had knowledge their statements were false or intended for Plaintiffs to rely on the false statements Defendants made. Whether this was innocent or in the course of a ponzi scheme is irrelevant. Merely that the statements were false is all that is required. Not needing to allege that Defendants made their misrepresentations or omitted material facts with knowledge or intent that statements were false or misleading, Plaintiffs did not allege such in support of their 12(a) claim.

Nevertheless, to escape liability for the sale of unregistered securities through misrepresentations at this very early Motion to Dismiss stage, Defendants conflate claims to get the Court to apply Rule 9(b)'s heightened pleading standards based upon the "unified course of fraudulent conduct" test because Plaintiffs alleged common law fraud in Count III of the complaint.  MTD at 17-18.   In support of this theory, Defendants cite to the common facts in Plaintiffs' allegations of false statements, false promises, omissions, and inducements based upon those false statements and omissions. *Id.*  Yet, nowhere within the common facts in Plaintiffs' allegations is scienter relevant or necessary to the cause of action alleged in Count I.

It is Defendants attempt at conflation in an attempt to escape 12(a) liability at the motion to dismiss stage to confuse and impose pleading requirements that do not exist for the 12(a) claim brought here for facts that are not required.  Nowhere in the common factual allegations supporting Count I is scienter relevant or necessary to the cause of action.

Defendants, without precedent or authority, attempt to conflate the Section 12(a)(2) claim with fraud-based claim in order to argue for heightened pleading requirements that do not apply to be required in the 12(a) allegations.  This effort is simply an attempt to avoid Section 12(a)(2) liability at the motion to dismiss stage by demanding facts that are not required. *See Marshall v. Munder*, No. 23 C 1958, 2024 U.S. Dist. LEXIS 100378, 2024 WL 2861793 (N.D. Ill. 2024) (holding that even if a complaint contains allegations of fraud, claims also based on separate, non-fraudulent conduct are not subject to dismissal (citations omitted)).

The Seventh Circuit has yet to find that the heightened pleading requirements of Rule 9(b) apply to claims brought under the Securities act of 1933.  Nevertheless, Plaintiffs here have satisfied even heightened requirements regarding their allegations of false or misleading statements.

The Supreme Court has held that, to adequately plead false or misleading statements, plaintiffs must (1) "specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading," 15 U.S.C. § 78u-4(b)(1); and (2) "state with particularity facts giving rise to a *strong inference* that the defendant acted with the required state of mind." § 78u-4(b)(2); *See Tellabs*, 127 S. Ct. at 2508 (emphasis supplied). Putting aside the issue of "state of mind," which is not relevant to the 12(a) claim here, the Supreme Court held that courts determine whether there is a strong inference based upon all of the facts, considered collectively. *Id.* at 2509. As such, courts must take into account plausible opposing inferences, an examination that is inherently comparative. *Id.* at 2509-2510. The inference drawn from the facts as to the elements of the claim must be cogent and compelling – not merely reasonable or permissible. *Id.* As the Court held in *Conagra*, the relevant question at the pleading stage regarding whether statements were false or misleading – the relevant issue for purposes of Count I -- is "whether the facts alleged are sufficient to support a reasonable belief as to the misleading nature of the statement or omission.*" Conagra,* 495 F. Supp. at 638.

Plaintiffs added detailed factual allegations explaining that Defendants' offering materials contained investment summaries, return projections, and subscription information distributed to multiple investors—facts that, if true, are sufficient to qualify as a prospectus at the pleading stage.

Plaintiffs have identified numerous false statements and omissions attributable to Defendants, and they have specified the manner in which those false statements and omissions were made, when they were made, by whom, and to whom. *See, e.g., Danis v. USN Communs, Inc*., 73 F. Supp. 2d 923, 932 (N.D. IL 1999)(where the Court declined to apply Rule 9(b)

14

standards because, as here, the plaintiffs alleged false and misleading statements with particularity).

Even if Rule 9(b) applied, Defendants seek to impose a standard far beyond what Rule 9(b) or precedent requires.  Unsurprisingly, Defendants demand factual detail that no plaintiff could reasonably provide before discovery.  Defendants seek a standard wholly inapplicable at the Motion to Dismiss stage.  Of course, Defendants seek an extreme 9(b) bar that could never be realistically satisfied at the Motion to Dismiss stage since their sole interest is to not have their conduct examined in fair discovery. If the Court were to adopt Defendants' position, virtually no plaintiff could survive a motion to dismiss, since undiscovered facts would always leave a pleading incomplete. That is not the function of Rule 12(b)(6). The notice-pleading standard exists to allow claims to be tested on their merits, not to invite premature dismissal. This principle is especially important where the allegations involve serious misconduct: the sale of unregistered securities and the facilitation of a Ponzi scheme that defrauded innocent investors. Plaintiffs allege that Defendants ignored clear warning signs while collecting millions in commissions and other benefits, placing personal gain above compliance with the securities laws and their professional obligations.  If the Court determines that Plaintiffs have somehow not satisfied the pleading requirements as to their Count III fraud claim, they readily agree to amend the complaint to comply with those requirements[3].

---

[3] Defendants suggest that the remedy must be dismissal with prejudice, claiming that the SAC "suffers from the same fundamental flaw that doomed the original Complaint." MTD at 21. Even if the Court finds that Plaintiffs have not adequately corrected any defects, this hardly rises to the level of errors leading to dismissal with prejudice in cases cited by Defendants. *See, e.g., Stanard v. Nygren,* 658 F.3d 792, 800 (7th Cir. 2011) (where the Court noted that multiple iterations of a complaint had been incomprehensible and riddled with errors). In its Order dismissing the previous Complaint, the Court did not even hint at such egregious errors, and indeed did not even reach most of the arguments raised in the first Motion to Dismiss. Dkt. 32.

**B. This Court has jurisdiction over the remaining State Law Claims (Counts II through VI).**

As already discussed above, Plaintiffs' federal claim pursuant to Section 12(a)(2) of the Securities Act should not be dismissed. As explained above, Plaintiffs stated a valid federal claim under Section 12(a)(2) of the Securities Act, and that claim provides a clear basis for subject matter jurisdiction under 15 U.S.C. § 78a and 28 U.S.C. § 1331. The Court also has supplemental jurisdiction over the related state-law claims pursuant to 28 U.S.C. § 1367(a). SAC ¶ 10. Thus, even if the federal securities claim were dismissed, the Court could and should retain jurisdiction under § 1367(a) because the federal and state claims arise from the same nucleus of operative facts, the case has already progressed significantly, and judicial economy favors resolving the overlapping claims in a single proceeding.

1.  CAFA's requirements for minimum diversity are satisfied.

Plaintiffs meet the CAFA requirements which are minimum diversity, over 100 plaintiffs, and over 5 million in issue. SAC ¶ 65. Minimal diversity exists where one plaintiff is diverse from one defendant. 28 U.S.C. §§ 1332(d), 1453, 1711-15. As Plaintiffs unambiguously allege in the SAC, at least one member of the Class is a citizen of a different state than the Defendant. As to the other two requirements, Plaintiffs allege there are more than one hundred members of the Class, and the aggregate amount in controversy exceeds five-million dollars ($5,000,000). SAC ¶ 10.

Nevertheless, Defendants seek to show that the CAFA requirements not by challenging the well pled allegations, which are all that are relevant at the Motion to Dismiss stage, but instead by introducing outside evidence of the unsupported (and unchallenged by deposition or discovery) declaration of Defendant Linarducci. Dkt 39-1 ("Linarducci Declaration") ¶¶ 23-25.

Defendants contend through Linarducci Declaration that CAFA jurisdiction does not exist because Linarducci makes an unsupported estimate that he may be liable to fewer than one hundred individuals.  Linarducci Declaration ¶¶ 2-9.  Of course at this stage – no discovery or other evidence has been developed to show Linarducci Declaration is true or false.  And indeed, Defendant Linarducci himself declares he makes this estimate ends with, at best, a lukewarm assertion that his estimate is correct: "*To the best of my knowledge and belief*, neither I, nor Integrity Wealth Partners, LLC nor Ducci Enterprises, LLC, had contact with any other persons during the time-period alleged in the Second Amended Complaint who may have invested in the REAL program at Drive Planning." *Id.* ¶ 9 (Emphasis added). Relying on this conclusory declaration, Defendants improperly ask the Court to look beyond the well-pleaded jurisdictional allegations in the complaint and let them introduce evidence without the benefit of depositions, document production or other discovery.  This is wholly improper at this stage.

    2.   <u>No Exception Applies to Escape CAFA</u>

      CAFA confers original jurisdiction where minimal diversity is met, but 28 U.S.C. § 1332(d)(4)(B) provides a narrow exception requiring the federal court to decline jurisdiction only if two-thirds or more of all proposed class members and the primary defendants are citizens of the same state. This exception is strictly construed against remand. *See Hart v. FedEx Ground Package Sys., Inc*., 457 F.3d 675, 680 (7th Cir. 2006) ("the party seeking to take advantage of the home-state or local exception to CAFA jurisdiction has the burden of showing that it applies."). Defendants have failed to meet that burden. Their sole evidentiary support—the Linarducci Declaration—is both self-serving and legally deficient, as it merely identifies alleged "residences" of a limited number of investors based on bankruptcy filings, without competent proof of citizenship as of the date of filing, as required by § 1332(d)(7).  And as stated above, to

accept Defendants' self-interested declaration, riddled with speculation, which is unsupported and unchallenged in discovery at this MTD stage is improper.

Defendants cite the inapposite case of *Apex Digital, Inc. v. Sears, Roebuck & Co.,* in support of their contention that the CAFA requirements are not met here. Unlike the present case, the defendants in *Apex Digital* produced clear documentary evidence (not just a single self-serving declaration) indicating that the plaintiff lacked standing. *Apex Digital, Inc. v. Sears, Roebuck & Co.,* 572 F.3d 440, 444 (7th Cir. 2009). Here, Defendants have merely produced the single declaration, and this is far from establishing at this stage CAFA is inapplicable. Defendants contend there cannot be 100 or more clients of Integrity Wealth Partners by suggesting that there are 65 individuals with potential claims against Defendant Linarducci. But even accepting those numbers, Defendants offer no legitimate basis to dispute that at least 100 class members have potential claims against one or more of the Defendants collectively. Their own figures only underscore that numerosity is plausible. In any event, their reliance on *Apex* is misplaced, as that case did not involve a class action and provides no guidance on CAFA jurisdiction here.

Assuming *arguendo* that Linarducci Declaration is to be considered, Plaintiffs have provided competing evidence that directly undermines it. Plaintiffs analyzed the source material reflecting payments made to Defendants for investors brought to Drive Planning. Declaration of Ross Good, attached hereto as Exhibit 1 ("Good Declaration"), ¶¶ 5–6. That analysis, attached hereto as Exhibit 2, shows Defendants were paid in connection with 110 investors, approximately 45% of whom resided outside Indiana. Good Declaration ¶¶ 6–7. As the Seventh Circuit has made clear, CAFA does not require Plaintiffs to prove jurisdictional facts at this stage; the burden rests with Defendants. *Hart v. FedEx Ground Package Sys., Inc.*, 457 F.3d 675,

680 (7th Cir. 2006). And if the Court elects to consider the extrinsic evidence in the Linarducci Declaration, it should likewise give equal weight to Plaintiffs' Declaration, which at a minimum demonstrates a disputed issue of fact that should be resolved through discovery rather than on a motion to dismiss.

Defendants also invoke the "home-state exception" to CAFA, suggesting it defeats diversity jurisdiction. But Defendants bear the burden of establishing that an exception to CAFA applies. *See Matthews v. Cresco Labs, Inc.*, 2025 U.S. Dist. LEXIS 1132177, 2025 WL 1918581. Even crediting the Linarducci Declaration, it offers no independent or verifiable evidence that the class includes fewer than 100 members or that the majority of unidentified members are Indiana citizens.  Further, Defendant Linarducci's self-serving unsupported Declaration relies solely on Linarducci's personal knowledge and belief, not competent proof, and therefore fails to undermine minimal diversity. Moreover, Linarducci's calculations were based on information from his bankruptcy proceeding, not on class membership as of the filing of this case. *See* Linarducci Declaration ¶ 24. CAFA makes clear that class citizenship is determined "as of the date of filing of the complaint or amended complaint." 28 U.S.C. § 1332(d)(7).

Even aside from the inapplicability of the exception, CAFA's minimal diversity requirement is plainly met. At least one class member—indeed, nearly half—are citizens of states other than Indiana, while all Defendants are Indiana citizens. This satisfies § 1332(d)(2), which requires only that "any member of a class of plaintiffs is a citizen of a State different from any defendant."

## **CONCLUSION**

For these reasons, Plaintiffs respectfully request that the Court deny Defendants' Motion to Dismiss the Second Amended Complaint, or alternatively, grant leave to amend.

Dated: October 16, 2025

Respectfully submitted,

/s/ Ross M. Good
Ross M. Good, Esq. (IL Bar No. 6312917;
FL Bar No. 0116405)
Shawn M. Good Esq. (IL Bar No. 632932)
The Good Law Group
800 E. Northwest Hwy, Ste 814
Palatine, IL 60074
Ph: (847) 577-4476
Fax: (800) 709-1179
Ross@thegoodlawgroup.com
Shawn@thegoodlawgroup.com

Jeffrey Sonn, Esq. (Pro Hac Vice)
Sonn Law Group PA
19495 Biscayne Blvd, Suite 607
Aventura, Fl 33180
Tel 305-912-3000
Fax 786-485-1501
FL Bar No. 773514
Jsonn@Sonnlaw.com

Brian B. Pastor, Esq. (Pro Hac Vice) Sonn
Law Group PA
3455 Peachtree Rd NE,
Ste. 500
Atlanta, GA 30326
Tel: 305-912-3000 Ext. 538
Fax: 404-607-7121
GA Bar No. 565860
E-Mail: BPastor@SonnLaw.com

Mark E. Maddox Esq.
Maddox Hargett & Caruso PC
10150 Lantern Rd, Ste 175

Fishers, IN 46037
Tel: (317) 598-2043
Fax: (317) 598-2050
IN Attorney No. 11252-49
mmaddox@mhclaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on October 16, 2025, I filed the foregoing *Plaintiffs' Response to Defendants' Motion to Dismiss Second Amended Complaint* electronically with the Clerk of the Court. Notice of this filing will be sent to the following by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/Ross M. Good
Ross M. Good

Ross M. Good
The Good Law Group
800 E. Northwest Hwy
Suite 814
Palatine, IL 60074