UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| RACHEL LYNN WILLIAMSON and CONSTANCE NOCOA, individually and on behalf of all others similarly situated<br><br>Plaintiffs,<br><br>vs.<br><br>GERARDO LORENZO LINARDUCCI, an Indiana individual, and INTEGRITY WEALTH PARTNERS, LLC, an Indiana limited liability Corporation, and DUCCI ENTERPRISES, LLC, an Indiana limited liability corporation,<br><br>Defendants. | CASE NO.: 1:24-CV-01526-TWP-MJD |

**DEFENDANTS INTEGRITY WEALTH PARTNERS, LLC AND DUCCI ENTERPRISES, LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT AND MOTION TO STRIKE DECLARATION OF ROSS GOOD**

Integrity Wealth Partners, LLC ("IWP") and Ducci Enterprises, LLC ("Ducci") (collectively "Defendants"), by counsel, files this combined *Reply in Support of Motion to Dismiss Plaintiffs' Second Amended Complaint and Motion to Strike Declaration of Ross Good.*[1]

---

[1] Defendants make this Motion to Strike within its Reply Brief in the spirit of complying with S.D. Ind. L.R. 56-1(i), which states that "[t]he court disfavors collateral motions – such as motions to strike – in the summary judgment process. Any dispute over the admissibility or effect of evidence must be raised through an objection within the party's brief." While this is not briefing on summary judgment,

# REPLY ARGUMENT

**A.     No Prospectus**

**A.1.   Plaintiffs Attach the Same Promotional Materials**

The Court plainly held in its dismissal of the original Complaint that the promotional materials appended to the Complaint did "not contain a 'substantial portion' of the information required in a registration statement" and therefore did not constitute a prospectus within the meaning of Section 12(a)(2). (Dkt. No. 32 at 12). Plaintiffs' SAC attaches no new promotional materials, but Plaintiffs still argue that those very same promotional materials "fall within the statutory definition of a prospectus at the pleading stage." (Resp. at 3). There is nothing fundamentally "new" on the prospectus issue in the SAC. The Court should dismiss the SAC for the same reason that it dismissed the original Complaint: there is no prospectus.

Plaintiffs argue the Court's primary concern with the original Complaint was that "Plaintiffs had only used the word prospectus once in their Complaint." (Resp. at 3 (citing Dkt. 32 at 11)). Plaintiffs say they cured this problem by offering "new allegations," that the exhibits to the SAC "were not mere 'marketing materials' of a general advertising nature and by alleging facts concerning substance one would normally find in registration materials." (Resp. at 4–5).

This argument fails because there are no "new allegations." The Court has already reviewed the same materials Plaintiff re-attached to the SAC and found them insufficient. All Plaintiffs have now done is add a few conclusory, self-serving

---

it is briefing on a Rule 12(b)(1) that involves a dispute of jurisdictional facts and in which the parties have presented evidence in support of their respective positions.

characterizations of those materials. Merely recharacterizing the materials in a description does not change or add to them or cure the problem. Promotional materials are not a prospectus. *In re Edward D. Jones & Co., L.P. Sec. Litig.*, No. 2:18-CV-00714-JAM-AC, 2019 WL 2994486, at *8 (E.D. Cal. July 9, 2019) (dismissing Section 12(a)(2) claim because "[t]he Amended Complaint cites no formal prospectus, and the marketing materials in this case are not a substitute for the required prospectus.").

### A.2. There Is No Issue of Fact

Plaintiffs argue that "[w]hether these materials qualify as a prospectus is inherently a fact question turning on content, purpose, and distribution – issues not properly resolved in a Motion to Dismiss." (Resp. at 2 n.1). They say that what they've alleged is sufficient under the notice pleading standards. (*Id.* at 5).

This is a classic case of Plaintiffs pleading themselves out of court by attaching materials to their complaint that affirmatively disprove their allegations. *In the Matter of Wade*, 969 F.2d 241, 249 (7th Cir. 1992) ("A plaintiff may plead himself out of court by attaching documents to the complaint that indicate that he or she is not entitled to judgment.") "If the plaintiff chooses to provide additional facts, beyond the short and plain statement requirement, the plaintiff cannot prevent the defense from suggesting that those same facts demonstrate the plaintiff is not entitled to relief." *Thompson v. Illinois Dep't of Pro. Regul.*, 300 F.3d 750, 753 (7th Cir. 2002). The materials that Plaintiff attaches to the SAC are dispositive of the prospectus issue.

3

### A.3.  Plaintiffs Misunderstand *Gustafson*

Plaintiffs also try to limit *Gustafson* to its facts and selectively quote from the opinion while ignoring the clear implications of its holding. The Supreme Court in *Gustafson* was clear: "whatever else 'prospectus' may mean, the term is confined to a document that, absent an overriding exemption [which Plaintiffs' have not alleged or argued here], must include *the 'information contained in the registration statement.'*" *Gustafson v. Alloyd Co., Inc.*, 513 U.S. 561, 569 (1995) (emphasis added). This definition tracked the definition of "prospectus" in Section 10 of the Securities Act, which the Court held was identical to the definition of "prospectus" in Section 12. *Id.* at 570 ("'prospectus' must have the same meaning under §§ 10 and 12"). Plaintiffs concede Section 10's narrow definition of "prospectus" when they state, "Section 10 of the Securities Act sets forth the type of information Congress required in a registration statement and, by extension, in a prospectus for a registered offering." (Resp. at 7 (citing *Gustafson*, 513 U.S. at 569, 574.

Plaintiffs' interpretation of *Gustafson* does not square with a reading of the Securities Act that adopts the same meaning of "prospectus" for both Sections 10 and 12. Plaintiffs say that *Gustafston* "does not require a document to replicate a registration statement or bear the title 'Prospectus.'" (Resp. at 6–7). But that's simply not what *Gustafson* actually said, and it is inconsistent with defining the term "prospectus" consistently across all Sections of Securities Act.

4

**A.4. Plaintiffs Attempt to Transform Section 12(a) into a Rule 10b-5 Claim Without a Scienter Requirement**

If Plaintiffs are correct that "Section 12(a)(2) liability attaches when securities are sold to the public 'by means of' written communications containing material misrepresentations or omissions," (Resp. at 7), then Section 12(a)(2) is transformed into a Rule 10b-5 claim but without a scienter requirement. *See* 17 C.F.R. § 240.10b-5. That cannot be the law.

Rule 10b-5 does not require pleading a prospectus, rather it requires a material misrepresentation made with fraudulent intent:

> To establish a violation of Rule 10b-5, a plaintiff must prove that: (1) the defendant made a material misrepresentation or omission; (2) the defendant acted with fraudulent intent ("scienter"); (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) the plaintiff relied upon the misrepresentation or omission; (5) and the false statement proximately caused the plaintiff's economic damages.

*Vallabhaneni v. Endocyte, Inc.*, No. 1:14-CV-01048-TWP-MJD, 2016 WL 51260, at *8 (S.D. Ind. Jan. 4, 2016) (citing *Caremark, Inc. v. Coram Healthcare Corp.*, 113 F.3d 645, 648 (7th Cir.1997)). Under Plaintiffs' theory of Section 12(a)(2) liability, every plaintiff alleging securities fraud involving a written statement would likely plead a Section 12(a)(2) to avoid the heightened pleading standards for a Rule 10b-5 claim. 15 U.S.C. § 78u-4(b). *Cornielsen v. Infinium Capital Mgmt., LLC*, 916 F.3d 589, 598–99 (7th Cir. 2019) (noting PSLRA pleading requirements for Rule 10b-5 claims); *Vallabhaneni*, 2016 WL 51260, at *7 (same). That cannot be what Congress intended.

\* \* \*

Accordingly, as a matter of law, the promotional materials attached to the SAC cannot be a prospectus as alleged by Plaintiffs. And without a prospectus, Plaintiffs have no Section 12(a)(2) claim.

**B.     No Particularity**

**B.1.    Rule 9(b) Applies to the Section 12(a)(2) Claim**

Plaintiffs concede that "[t]he Seventh Circuit has held that Rule 9(b) applies to 'averments of fraud,' not claims of fraud. Therefore, whether Rule 9(b) rule [sic] applies depends on the plaintiffs' factual allegations." (Resp. at 12 (citing *Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 507 (7th Cir. 2007)). And as discussed in the opening brief, the allegations in the SAC demonstrate a "unified course of fraudulent conduct" because all the purported false or misleading statement or material omissions are "false or misleading for the same reasons." *W. Palm Beach Firefighters' Pension Fund v. Conagra Brands, Inc.,* 495 F. Supp. 3d 622, 636–37 (N.D. Ill. 2020), *aff'd sub nom. Nat'l Elevator Indus. Pension Fund v. Conagra Brands, Inc.*, No. 21-1155, 2022 WL 1449184 (7th Cir. May 9, 2022),

Nonetheless, Plaintiffs argue that the SAC *does not* allege a unified course of conduct for both the Section 12(a)(2) claim and the common law fraud claim because Section 12(a)(2) claim does not have an intent requirement and the fraud claim does. (Resp. at 13). Plaintiffs attempt to distinguish *Conagra Brands, Inc.*, saying that unlike the SAC, *Conagra Brands, Inc.* involved a Section 12(a)(2) claim that shared a unified scheme with a claim under Section 10(b) of the Exchange Act of 1934, which does carry a heightened pleading standard and does require scienter.

6

Plaintiffs also argue the absence of a Section 10(b)(5) claim in their lawsuit distinguishes their case from *Conagra*. (Resp. at 11).

Fundamentally, Plaintiffs' arguments fail because they conflate "averments of fraud" with "claims of fraud," which *Borsellino* forbids. Plaintiffs focus solely on the legal elements of a Section 12(a)(2) and common law fraud *claims* (which are obviously different) while ignoring the *averments* of a unified scheme alleged in the SAC (which are the same for both claims). Plaintiffs allege only one scheme in the SAC – the REAL Ponzi scheme. (SAC ¶¶ 1–4, 39, 46, 48–50, 65–67, 69, 71, 91). There is only one set of alleged misrepresentations and omissions at issue. Plaintiffs ignore the fact that the alleged misleading statements are the same statements for both the 12(a)(2) and common law fraud claim and are allegedly misleading for the same reasons. Regardless of whether Defendants' intent in making the alleged misrepresentations and omissions is *legally required* for a Section 12(a)(2) claim, Plaintiffs have alleged that those same misrepresentations and omissions *were actually made* with intent to defraud.

Plaintiffs cite *Marshall v. Munder*, No. 23 C 1958, 2024 WL 2861793 (N.D. Ill. 2024), to support their argument that "claims … based on separate, non-fraudulent conduct are not subject to dismissal" "even if a complaint contains allegations of fraud." (Resp. at 13). But this case supports Defendants' argument. Plaintiffs misread this case because, as discussed above, the Section 12(a)(2) claim in the SAC is not based on "separate, non-fraudulent conduct" other than the alleged conduct underlying the common law fraud claim. Both claims are based on

7

the same alleged Ponzi scheme and the same set of alleged misrepresentations and omissions. Accordingly, Plaintiffs' Section 12(a)(2) claim sounds in fraud, and the Rule 9(b) particularity standard applies.

**B.2.   Plaintiffs Fail to Plead Fraud with Particularity**

Plaintiffs argue that even if their Section 12(a)(2) claim sounds in fraud, they have "satisfied even heightened requirements regarding their allegations of false or misleading statements." (Resp. at 13). They say they have "identified numerous false statements and omissions attributable to Defendants, and they have specified the manner in which those false statements and omissions were made, when they were made, by whom, and to whom." (Resp. at 14).

Defendants agree that Plaintiffs have disclosed the "who" and the "what" of the statements and omissions of Defendants – it's the promotional materials presented to the Plaintiffs. But Plaintiffs fail to identify the "when," "where," and "how" of those statements and omissions. The SAC refers generally to "in-person sales presentations" (SAC ¶ 39), states that Defendants "solicite[d] Plaintiffs in person, over the telephone, through the mail, and through email" (SAC ¶ 75), and says Defendants "induced" Plaintiffs to sign REAL agreements at Linarducci's "behest." (SAC ¶¶ 1, 48–50). As the Seventh Circuit said, under Rule 9(b) Plaintiffs must "plead enough about *what transpired* with the [Plaintiffs] for [the Court] to know what any defendant represented, misrepresented, or omitted … [and] allege at least *some particulars* about *the precise communications with each investor*." *Menzies v. Seyfarth Shaw LLP*, 943 F.3d 328, 341 (7th Cir. 2019) (emphasis added).

8

In the end, Plaintiffs plead only the inferences about the when, where, and how of the alleged statements and omissions. Rule 9(b) prohibits pleading the essential details of a fraud by inference alone. As Plaintiffs said in their Response, "[T]he inference drawn from the facts as to the elements of the claim must be cogent and compelling – not merely reasonable or permissible." (Resp. at 14 (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324, 127 S. Ct. 2509–2510 (2007)).

Plaintiffs argue that Defendants "seek to impose a standard far beyond what Rule 9(b) or precedent requires." (Resp. at 15). Not so. Plaintiffs should be able to plead when, where, and how alleged misstatements and material omissions were communicated to them. But they do not. This is not stretching Rule 9(b) beyond its bounds, but simply applying its plain requirements to the SAC

Even as to the written promotional materials themselves, the Complaint is devoid of any detail regarding when, where, or how the lead Plaintiffs received any of those materials, or even if they saw them at all. (Opening Brief, Dkt. 39, at 18–21). Plaintiffs provide no response to this argument.

In the end, Plaintiffs' allegations simply piggyback off the Drive Planning lawsuit while trying to implicate Defendants by association. The SAC does not reflect what Rule 9(b) requires: "more than the usual investigation before filing [their] complaint." *Kahn v. Walmart Inc.*, 107 F.4th 585, 594 (7th Cir. 2024).

**C.      No Jurisdiction**

**C.1.   No Supplemental Jurisdiction**

Plaintiffs argue that under 28 U.S.C. § 1367(a), supplemental jurisdiction would still exist "even if the federal securities claim were dismissed" because "the

9

federal and state claims arise from the same nucleus of operative facts, the case has already progressed significantly, and judicial economy favors resolving the overlapping claims in a single proceeding." (Resp. at 16). This is simply incorrect. "[I]t is the well-established law of [the Seventh] circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial." *Groce v. Eli Lilly*, 193 F.3d 496, 501 (7th Cir. 1999). (*See also* Dkt. 32 at 16).

### C.2. The Court Should Grant Defendants' Motion to Strike[2] the Ross Declaration for Lack of Foundation, Eliminating Any Basis for CAFA Jurisdiction

Plaintiffs do not dispute that to show diversity jurisdiction under the Class Action Fairness Act ("CAFA") they must show that less than two-thirds of all class members will be from Indiana, 28 U.S.C. § 1332(d)(4)(B), and that they must allege that there are more than 100 class members. 28 U.S.C. § 1332(d)(5)(B). (*See* Resp. at 16–19).

Instead, Plaintiffs argue that the declaration of Gerardo Linarducci does not raise a factual challenge to the Court's subject matter jurisdiction because it is merely a "conclusory" and "unsupported estimate that he may be liable to fewer than one hundred individuals." (Resp. 17–19). But the Linarducci declaration is not

---

[2] Defendants make this Motion to Strike within its Reply Brief in the spirit of complying with S.D. Ind. L.R. 56-1(i), which states that "[t]he court disfavors collateral motions – such as motions to strike – in the summary judgment process. Any dispute over the admissibility or effect of evidence must be raised through an objection within the party's brief." While this is not briefing on summary judgment, it is briefing on a Rule 12(b)(1) that involves a dispute of jurisdictional facts and in which the parties have presented evidence in support of their respective positions.

10

conclusory. It is based on his personal knowledge and the fulsome bankruptcy disclosures that he filed under penalties for perjury. Beyond mere estimates, Mr. Linarducci's identification of the Defendants' clients were made, under penalties for perjury, as a precondition for him seeking bankruptcy and definitively resolving all outstanding potential claims that could be asserted by any creditor. 11 U.S.C. § 110; Fed. R. Bk. Proc. 1007.

The same cannot be said for the Declaration of Ross Good. (*See* Dkt. 42-1 ¶¶ 5–8). On its face, his declaration merely purports to describe "Exhibit 2," which is nothing more than a spreadsheet of a list of purported investments by date, state, and amount. (Dkt. 42-2). In their Response, Plaintiffs assert that they have "analyzed the source material reflecting payments made to Defendants" and attached that analysis as Exhibit 2. (Dkt. 42 at 18.) And therein lies the problem. Plaintiffs did not attach any "source material," nor does Mr. Good's declaration even explain what such "source material" is or how it was analyzed. Insofar as Mr. Good's declaration and Exhibit 2 purport to describe the "source material," both the declaration and Exhibit 2 are merely hearsay about what is contained in this supposed "source material."

Even taking Plaintiffs' Response at face value, they say that the "source material" reflects *payments made*, not *individual investors*. For all that the Court and Defendants know from this information, a single investor could have made multiple payments listed on Exhibit 2. Plaintiffs have not identified individual *investors* (i.e., class members) but apparently individual *payments*. Mr. Good's

11

declaration to the contrary is purely hearsay, as it simply characterizes the "source material." No clients are identified by name or address. Mr. Good's declaration only shows that he has personal knowledge of the existence of Exhibit 2 and provides his own characterization of it (without disclosing the "source material" that was used to create it) not that he has personal knowledge of at least 100 actual investors, their residences, and their investments, nor how Exhibit 2 was created or what "source material" was consulted to create it.

The Court should strike Mr. Good's Declaration because it is not based on personal knowledge. "[B]ald, unsupported assertion[s] of competence to testify" are not sufficient to establish personal knowledge. *Schneider v. United States*, 257 F. Supp. 2d 1154, 1158 (S.D. Ind. 2003) (citations omitted) (granting motion to strike verified declarations). Mr. Ross's declaration "lack[s] foundation as to personal knowledge." *Id*. Where a declarant cites to information "to which the [declarant] was not a party, and lack any indication as to how the [declarant] learned of the information alleged in the statement," the Court is well within its discretion to strike the declaration. *Id*.

### C.3. Defendants Improperly Shift the Burden of Proof

Even if the Court does not strike the Ross Declaration, it appears tailored merely to raise a factual dispute, not to meet Plaintiffs' burden of proof on a Rule 12(b)(1) motion. "When faced with a 12(b)(1) motion, the plaintiff 'bears the burden of establishing that the jurisdictional requirements have been met'" not merely raising a factual dispute and hoping to return to the issue later in discovery. *Coachman v. IRS Worker Comp. Branch, et al.*, No. 1:19-cv-01003-JPH-TAB, 2020

WL 1042531, at *1 (S.D. Ind. Mar. 4, 2020) (quoting *Ctr. for Dermatology and Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588–89 (7th Cir. 2014)). Plaintiffs have not met their burden to satisfy the Court that it has diversity jurisdiction over this case.

Plaintiffs argue that "CAFA does not require Plaintiffs to prove jurisdictional facts at this stage; the burden rests with Defendants," citing *Hart v. FedEx Ground Package Sys., Inc.*, 457 F.3d 675, 680 (7th Cir. 2006) (Resp. at 18–19). But this is only half correct. *Hart* applies only to the burden of showing the home-state exception, not the 100-class member minimum. *Hart* held only that "the party seeking to take advantage of the home-state or local exception to CAFA jurisdiction has the burden of showing that it applies." *Id.* The Seventh Circuit did not shift Plaintiffs' Rule 12(b)(1) burden onto Defendants when the 100-member class minimum requirement is at issue under 28 U.S.C. 1332(d)(5). *Id.* at 681.[3] Thus, to establish CAFA diversity jurisdiction, Plaintiffs retain the burden to show that there are at least 100 class members in this case. *Loonsfoot v. Stake Ctr. Locating, LLC*, No. 23-CV-3171-DWD, 2024 WL 2815422, at *3 (S.D. Ill. June 3, 2024) ("the proponent of federal jurisdiction, bears the burden of establishing the general requirements of CAFA jurisdiction"). They have not met that burden.

---

[3] *Hart* shifted the burden to a party resisting CAFA jurisdiction only with respect to CAFA "exceptions," not "prerequisites" to jurisdiction. The Seventh Circuit has stated that it had "implied in *Hart* that subsection (d)(5) was a prerequisite to establishing jurisdiction" and not "an exception." *Appert v. Morgan Stanley Dean Witter, Inc.*, 673 F.3d 609, 618–19 (7th Cir. 2012). This Court should not be the first to impose the burden of disproving the 100-member minimum onto the party resisting CAFA jurisdiction.

13

**C.4. Defendants Ignore that Integrity Wealth Partners Did Not Exist During the Relevant Time**

At the very least, the Court must dismiss Defendant Integrity Wealth Partners. The entity did not exist until July 17, 2024, which post dates any alleged solicitation or sale of REALs in the SAC. (Opening Brief at 23–24; Dkt. 39-2). Plaintiffs failed to address this argument, thereby, waiving any opposition.

## CONCLUSION

THEREFORE, Defendants Integrity Wealth Partners, LLC and Ducci Enterprises, LLC request the Court for an order dismissing Counts I and III, with prejudice, and to dismiss the remaining state-law claims without prejudice, and for all other just and proper relief.

Respectfully submitted,

/s/ *Kevin D. Koons*
Kevin D. Koons, Atty. No. 27915-49
Justin R. Olson, Atty. No. 31450-49
KROGER, GARDIS & REGAS, LLP
111 Monument Circle, Suite 900
Indianapolis, IN 46204
Phone: (317) 692-9000
kkoons@kgrlaw.com
jolson@kgrlaw.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on October 23, 2025, I filed the foregoing *Defendants' Reply in Support of Motion to Dismiss Second Amended Complaint* electronically with the Clerk of the Court. Notice of this filing will be sent to the following by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

Mark E. Maddox
Maddox Hargett & Caruso, P.C.
10150 Lantern Road
Suite 175
Fishers, IN 46037
mmaddox@mhclaw.com

Brian Pastor
Sonn Law Group PA
3455 Peachtree Rd NE
Ste 500
Atlanta, GA 30326
bpastor@sonnlaw.com

Shawn M. Good
Ross M. Good
The Good Law Group
800 E. Northwest Hwy
Suite 814
Palatine, IL 60074
Shawn@thegoodlawgroup.com
ross@thegoodlawgroup.com

Jeffrey R. Sonn
Sonn Law Group PA
19495 Biscayne Blvd.
Suite 607
Aventura, FL 33180
jsonn@sonnlaw.com

/s/ *Kevin D. Koons*
Kevin D. Koons

KROGER, GARDIS & REGAS, LLP
111 Monument Circle, Suite 900
Indianapolis, IN 46204
Phone: (317) 692-9000