**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

RACHEL LYNN WILLIAMSON on behalf of themselves and all others similarly situated, CONSTANCE NOVOA on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

No. 1:24-cv-01526-TWP-MJD

GERARDO LORENZO LINARDUCCI an Indiana individual, INTEGRITY WEALTH PARTNERS, LLC an Indiana limited liability corporation, DUCCI ENTERPRISES, LLC an Indiana limited liability corporation,

Defendants.

**ORDER ON DEFENDANTS' MOTIONS TO DISMISS AND MOTION TO STRIKE AND DIRECTING FURTHER ACTION**

This matter is before the Court on a Motion to Dismiss (Filing No. 38) and embedded Motion to Strike (Filing No. 43) filed by Defendants Integrity Wealth Partners, LLC ("IWP"), and Ducci Enterprises, LLC ("Ducci") (together, "Defendants"). Plaintiff Rachel Lynn Williamson ("Williamson") and Constance Novoa ("Novoa") (together, "Plaintiffs") initiated this putative class action alleging that Gerardo Lorenzo Linarducci ("Linarducci"), IWP, and Ducci misled them and other investors who were solicited to invest in Real Estate Acceleration Loans ("REAL") at non-party Drive Planning, LLC ("Drive Planning"). Plaintiffs' Second Amended Complaint asserts a claim for violation of Section 12(a)(2) of the Securities Act of 1933 and various state law claims.

For the reasons explained in this Order, the Court **denies** the Motion to Strike, **grants** the Motion to Dismiss as to Plaintiffs' Securities Act claim, and intends to **relinquish jurisdiction** over the state law claims if the federal claim is not successfully repleaded. The dismissal of

Plaintiffs' federal claim against IWP and Ducci is presently without prejudice, as the Court **grants** Plaintiffs' a final opportunity to amend their pleading. The parties are further **directed** to meet with the Magistrate Judge to discuss a plan for jurisdictional discovery and deadline for Plaintiffs to file a third amended complaint.

## I. BACKGROUND

The following facts are not necessarily objectively true, but as required when reviewing a motion to dismiss, the Court accepts as true all factual allegations in the complaint and draws all inferences in favor of Plaintiffs as the non-moving parties. *See Bielanski v. Cnty. of Kane*, 550 F.3d 632, 633 (7th Cir. 2008).

The Second Amended Complaint alleges that more than 2,000 investors invested in a Ponzi scheme centered around the REAL investments (Filing No. 37 ¶¶ 1, 2). The REAL investments were allegedly tied to real estate projects and promised a ten percent return on investment following a three-month term. *Id.* ¶ 2, 13. The scheme was carried out by Drive Planning and its founder, Russell Todd Burkhalter ("Burkhalter"), who received investments from Indiana and elsewhere. *Id.* ¶¶ 1, 2. The investors were encouraged to use any money that they had to invest, including money from their retirement accounts and pension plans. *Id.* ¶ 1. The Securities and Exchange Commission ("SEC") has charged Drive Planning and Burkhalter with claims of defrauding over 2,000 investors for $300 million. *Id.* ¶ 2 (citing *SEC v. Drive Planning, LLC and Russell Todd Burkhalter*, No. 1-24-03583 (N.D. GA, filed August 2024) (the "SEC Action").

Linarducci is an Indiana-based broker who was employed by Drive Planning. *Id.* ¶ 3. He is a principal and the sole owner of both IWP and Ducci, where he advised Plaintiffs and other putative class members to invest in Drive Planning. *Id.* ¶¶ 3, 8–9. Plaintiffs bring this putative class

action to "recover funds misused, commingled, and stolen" by Burkhalter and Drive Planning on Linarducci, IWP, and Ducci's recommendation. *Id.* ¶ 4.

As a sales representative employed by Drive Planning, Linarducci promoted REAL investments as a "bridge loan opportunity promising 10% in 3 months." *Id.* ¶ 13. Linarducci was paid a four percent commission on each REAL investment he sold, including an additional commission on amounts that investors chose to rollover into a new investment. *Id.* ¶ 19. To promote these investments, Linarducci provided potential investors with promotional materials produced by Burkhalter and Drive Planning, which included a brochure that described the REAL investments in four bullet points: three-month term, ten-percent return, quitclaim deed collateral, and $20,000.00 minimum (*Id.* ¶ 37; Filing No. 37-1). This information included the term of the investment, the expected return, and the fact that the investor did not need to be accredited, as well as information on the properties used as collateral and other information (*See, e.g.*, Filing No. 37 ¶¶ 37, 41–43, 77; Filing No. 37-1). Defendants put their logos on Drive Planning's marketing materials without confirming the truth of the information on those materials (Filing No. 37 ¶ 47).

Linarducci offered the REAL investments for sale nationwide and accepted investments from international investors. *Id.* ¶ 39. The REAL brochure promoting the investment opportunity was sent to prospective investors through the U.S. mail and email and hand-delivered during in-person sales presentations. *Id.* ¶ 39. Linarducci was trained by and operated on behalf of Drive Planning wile falsely promising investors a guaranteed ten percent return on their money without informing them that the returns would come from new investors' money. *Id.* ¶ 46.

The REAL agreements signed are promissory notes with assurances that the notes were secured by real property, so Plaintiffs claim that they are "securities" under Indiana and federal securities laws. *Id.* ¶¶ 48, 51. Neither Linarducci nor any of the agents who worked under or with

him at IWP and Ducci were registered to sell securities or possessed the required licenses needed to sell securities. *Id.* ¶ 52. The Complaint alleges that "[t]he REAL agreements, aka promissory notes, were sold in a public offering through the marketing materials disseminated by Defendants (Exhibit A) which constitute a prospectus" and "were not sold on any national securities exchange." *Id.* ¶¶ 53–54.

On September 17, 2022, Linarducci induced Williamson to sign a REAL agreement in which she loaned a principle sum of $22,000.00 to Drive Planning. *Id.* ¶ 48. The agreement guarantees an interest rate of ten percent to be payable in three months and contains an option to roll over all or part of that amount at the same or current rate for another three-month period. *Id.* The agreement also contains an assurance that the note is to be secured by the "Drive-Embry Portfolio Properties" until the loan is paid back in full. *Id.*

On December 14, 2022, with Linarducci as her agent, Williamson signed another REAL agreement loaning a principal sum of $90,000.00 to Drive Planning with the same terms. *Id.* ¶ 49. At Linarducci's suggestion, Novoa invested a total of $50,351.04 in REAL investments from August 2022 through July 2024. *Id.* ¶ 50. In addition to her initial $25,000.00 investment, Novoa made periodic additional investments and rolled over her entire investment for three months at a time with guarantees of a ten percent return pursuant to instructions by Linarducci. *Id.*

Plaintiffs began experiencing issues contacting Linarducci and his staff in June 2024. *Id.* ¶¶ 56–59. Williamson requested a withdrawal but did not receive her funds. *Id.* ¶ 57. After multiple attempts to reach Linarducci about the status of her withdrawal, she received a response on June 25, 2024, in which Linarducci informed her that he was not allowed to speak on any Drive Planning terms or contracts. *Id.* ¶ 59. Linarducci then forwarded Williamson a text message from Burkhalter about Drive Planning being "under scrutiny" by the government. *Id.* ¶¶ 59–60.

The SEC Action was filed in August 2024. *Id.* ¶ 2. Burkhalter and Drive Planning are not named in this lawsuit because of a pending injunction that prohibits actions against them by investors. *Id.* ¶ 3. In this action, Plaintiffs bring their claims on behalf of themselves and all individuals who invested in Drive Planning through any company owned or controlled by Linarducci, IWP, or Ducci. *Id.* ¶ 62. Plaintiffs allege at least 100 people were solicited. *Id.* ¶ 65. Plaintiffs claim that this Court has subject matter jurisdiction pursuant to 15 U.S.C. § 78a, 28 U.S.C. § 1331, 28 U.S.C. § 1332(d)(2), and 28 U.S.C. § 1367(a). *Id.* ¶ 10–11.

After Plaintiff initiated this suit, Linarducci filed a Notice of Bankruptcy (Filing No. 30), so the claims against him have been stayed (Filing No. 31). In the Court's Order granting Defendants' Motion to Dismiss the original Complaint (Filing No. 32), the Court (1) severed all claims related to Linarducci, (2) dismissed all claims against IWP and Ducci, and (3) granted Plaintiffs leave to amend their Complaint. Plaintiffs subsequently filed their First Amended Complaint (Filing No. 33), and then, with leave of Court (Filing No. 36), filed the operative Second Amended Complaint (Filing No. 37). On October 2, 2025, Defendants IWP and Ducci filed the instant Motion to Dismiss the Second Amended Complaint (Filing No. 38) pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), which is now ripe for the Court's review.

## II. LEGAL STANDARD

### A. Rule 12(b)(1)

A motion to dismiss under Rule 12(b)(1) challenges the court's subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The burden of proof is on the plaintiff, the party asserting jurisdiction. *United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003), *overruled on other grounds by Minn-Chem, Inc. v. Agrium, Inc.*, 683 F.3d 845 (7th Cir. 2012) (en banc). "The plaintiff has the burden of supporting the jurisdictional allegations of the complaint by competent

proof." *Int'l Harvester Co. v. Deere & Co.*, 623 F.2d 1207, 1210 (7th Cir. 1980). "In deciding whether the plaintiff has carried this burden, the court must look to the state of affairs as of the filing of the complaint; a justiciable controversy must have existed at that time." *Id.*

"When ruling on a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), the district court must accept as true all well-pleaded factual allegations, and draw reasonable inferences in favor of the plaintiff." *Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995) (citation omitted). Further, "[t]he district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Id.* (citation and quotation marks omitted).

**B. <u>Rule 12(b)(6)</u>**

Similarly, Rule 12(b)(6) allows a defendant to move to dismiss a complaint that has failed to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When deciding a motion to dismiss under Rule 12(b)(6), the Court accepts as true all factual allegations in the complaint and draws all inferences in favor of the plaintiff. *Bielanski*, 550 F.3d at 633. However, courts "are not obliged to accept as true legal conclusions or unsupported conclusions of fact." *Hickey v. O'Bannon*, 287 F.3d 656, 658 (7th Cir. 2002).

The complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In *Bell Atlantic Corp. v. Twombly*, the Supreme Court explained that the complaint must allege facts that are "enough to raise a right to relief above the speculative level." 550 U.S. 544, 555 (2007). Although "detailed factual allegations" are not required, mere "labels," "conclusions," or "formulaic recitation[s] of the elements of a cause of action" are insufficient. *Id.*; *see also Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 603 (7th Cir.

2009) ("[I]t is not enough to give a threadbare recitation of the elements of a claim without factual support"). The allegations must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. Stated differently, the complaint must include "enough facts to state a claim to relief that is plausible on its face." *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009) (citation and quotation marks omitted). To be facially plausible, the complaint must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

## III. DISCUSSION

Plaintiffs assert six claims in their Second Amended Complaint: (I) violation of Section 12(a)(2) of the Securities Act of 1933 (the "Securities Act"); (II) negligent misrepresentation; (III) common law fraud; (IV) breach of fiduciary duty; (V) violation of the Indiana Securities Act; and (VI) unjust enrichment. In their Motion to Dismiss, Defendants argue that Plaintiffs fail to state a Section 12(a)(2) claim because they fail to allege that there is a prospectus (Filing No. 39 at 10). Further, they assert that Plaintiffs' Section 12(a)(2) claim (Count I) and common law fraud claim (Count III) do not meet the heightened pleading standards under Federal Rule of Civil Procedure 9(b). *Id.* at 15. Defendants also argue that the Court should dismiss Plaintiffs' sole federal claim with prejudice and decline to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c)(3) over the remaining state law claims. *Id.* at 22, 25. Plaintiffs respond that they have properly alleged a prospectus, that the REAL investments were sold in a public offering, that they are not subject to heightened Rule 9(b) pleading requirements, and that this Court should exercise diversity and/or supplemental jurisdiction over their state law claims under 28 U.S.C. §§ 1332(d) and 1367 (Filing No. 42).

The Court will first address Plaintiffs' federal claim under the Securities Act. Then, because the Court again finds that Plaintiffs have failed to adequately plead their federal claim, the Court will discuss whether it should retain supplemental jurisdiction over Plaintiffs' remaining state law claims, and whether leave to amend should be granted.

**A. Securities Act Claim**

Count I of the Complaint alleges Defendants violated Section 12(a)(2) of the Securities Act by offering, selling, or soliciting a security, specifically the REAL agreements, to Plaintiffs by and through making untrue or misleading statements of material fact that they should have known were false with the exercise of reasonable care (Filing No. 1 ¶ 74). Section 12(a)(2) prohibits the offer or sale of a security by means of a prospectus or oral communication that includes an untrue statement of material fact or that omits a material fact necessary to make the statements not misleading. 15 U.S.C. § 77l(a)(2); *see Gustafson v. Alloyd Co.*, 513 U.S. 561, 567 (1995).

In its previous Order Granting Defendants' Motion to Dismiss (Filing No. 32), the Court found that the original Complaint did not properly allege that the misrepresentations and omissions were made by means of a prospectus and accordingly dismissed the Plaintiff's Section 12(a)(2) claim. Section 10 of the Securities Act, 15 U.S.C. § 77j(a), states that a prospectus must "contain *the information contained in the registration statement*, but it need not include the documents referred to in paragraphs (28) to (32), inclusive, of schedule A [15 U.S.C. § 77aa]." 15 U.S.C. § 77j(a)(1) (emphasis added). *Gustafson* held that a "prospectus" is a document that must generally "include the 'information contained in the registration statement'" that a company must file with the SEC prior to an initial public offering. 513 U.S. 561 at 569. As used in Section 12(a)(2), "'prospectus' is a term of art referring to a document that describes a public offering of securities

by an issuer or controlling shareholder" and "must include a substantial portion of the information required in the 'registration statement.'" *Id.* at 583–84.

In general, registration forms call for a description of the company's properties and business; a description of the security to be offered for sale; information about the management of the company; and financial statements certified by independent accountants. U.S. Sec. and Exch. Comm'n, https://www.sec.gov/rules-regulations/statutes-regulations (last visited Sept. 27, 2026). The SEC Form S-1 is the form for an initial registration statement under the Securities Act, and it contains twenty-five pages of required information. *Registration Statement Under the Securities Act of 1933 (Form S-1)*, U.S. Sec. and Exch. Comm'n, (OMB Number 3235-0065), https://www.sec.gov/files/forms-1.pdf. Part One of Form S-1 provides a list of twelve items with numerous subparts detailing information required in a prospectus. *Id.* at 7–10. This comprehensive list includes information on risk factors, ratio of earnings to fixed charges, the use of proceeds, determination of offering price, dilution, the selling security holders, the plan of distribution, a description of securities to be registered, and other information with respect to the registrant. *Id.*

Defendants argue that Plaintiffs fail to state a claim under Section 12(a)(2) because they have not alleged that there is a prospectus in this case, even after amending their complaint (Filing No. 39 at 10, 13). Plaintiffs argue that their Second Amended Complaint does allege that there was a prospectus (Filing No. 42 at 3). Specifically, Plaintiffs contend that they cured any previous defects in their Complaint by alleging that the document attached as Exhibit A to the Second Amended Complaint was not mere marketing material and explicitly stating facts that show that the materials contain information that registration materials would typically contain. *Id.* at 4. This information includes the term of the investment, the expected return, and the fact that the investor did not need to be accredited. *Id.* Defendants contend that Plaintiffs have not made new allegations

since their original Complaint because they have attached the same materials to the Second Amended Complaint as the ones attached to the original Complaint (Filing No. 43 at 2–3). Defendants argue that the only additions since the Court dismissed that original Complaint are conclusory, self-serving statements. *Id.*

The Court agrees with the Defendants that the minimal changes that the Plaintiffs made did not cure the defects from the original Complaint related to alleging a prospectus. In their Second Amended Complaint, the Plaintiffs alleged that "[t]he materials disseminated by Defendants (*see* Exhibit A) constitute a prospectus . . . because they contain a substantial portion of information that would be required in a SEC registration statement (Form S-1)" (Filing No. 37 ¶ 77). Exhibit A to the Second Amended Complaint ("New Exhibit A") is substantially the same as the document attached as Exhibit A to the original Complaint ("Old Exhibit A") (Filing No. 1-1; Filing No. 37-1). The Court has already considered this information in its previous Order Granting Defendants' Motion to Dismiss (Filing No. 32) and found that this information is not sufficient to allege a prospectus.

The only difference between Old Exhibit A and New Exhibit A is the additional page in New Exhibit A that contains additional information on the properties that allegedly were collateral for the REAL investments (Filing No. 37-1 at 5). Although this new page does add information regarding the investments, New Exhibit A still falls short of providing a substantial portion of the information required by a registration statement.

Plaintiffs also emphasize that the Court's previous Order noted in dicta that the word "prospectus" was only used once (Filing No. 32; Filing No. 42 at 3). Plaintiffs make greater use of the word "prospectus" in their Second Amended Complaint (Filing No. 37 ¶¶ 36, 53, 77, 93, 94),

but merely using the word "prospectus" does not cure the substantive deficiencies of Count I. *See Hickey*, 287 F.3d at 658.

Plaintiffs also argue that Section 12(a)(2) imposes liability for misstatements that are made via an oral communication as well as a prospectus (Filing No. 42 at 5). Defendants argue that oral communications only include oral communications in relation to a prospectus, and thus, if there is no prospectus, there cannot be oral communications that qualify under Section 12(a)(2) (Filing No. 39 at 12–13). The Court agrees with Defendants. *See Gustafson*, 513 U.S. at 567–68. The Plaintiffs have not alleged a prospectus, so they cannot allege oral communications that subject Defendants to liability under Section 12(a)(2). A failure to allege a prospectus was dispositive for the previous Order Granting Defendants' Motion to Dismiss (Filing No. 32), and it is dispositive here. Accordingly, Count I fails to state a claim upon which relief may be granted and is **dismissed** on this basis.

## B. State Law Claims

Defendants also move for dismissal of Plaintiffs' state law claims (Filing No. 39 at 25). Plaintiffs respond that even if Count I is dismissed, the Court has jurisdiction pursuant to 28 U.S.C. § 1332(d), the Class Action Fairness Act ("CAFA") (Filing No. 42 at 16). Defendants argue that CAFA does not apply here, and the Court should decline to exercise its discretionary supplemental jurisdiction over the remaining state law claims (Filing No. 39 at 23–26).

### 1. Diversity Jurisdiction under CAFA

Under CAFA, a federal court has "'original jurisdiction' to hear a 'class action' if the class has more than 100 members, the parties are minimally diverse, and the 'matter in controversy exceeds the sum or value of $5,000,000.'" *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 592 (2013) (quoting 28 U.S.C. § 1332(d)). Plaintiffs have sufficiently alleged that at least one Plaintiff

is a citizen of a different state than the Defendants, given that Plaintiffs allege that Novoa is a citizen of Nevada and Linarducci[1] is a citizen of Indiana. Plaintiffs have also alleged a matter in controversy that exceeds $5,000,000.00.

Plaintiffs allege that there are at least 100 people who were solicited by the Defendants (Filing No. 37 ¶ 65). Plaintiffs argue that, when ruling on a motion to dismiss for lack of subject matter jurisdiction, the Court cannot consider evidence outside of the Second Amended Complaint (Filing No. 42 at 17–18). That is incorrect. "When ruling on a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), the district court . . . may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Ezekiel*, 66 F.3d at 897.

Defendants argue that there is no subject matter jurisdiction under CAFA because (1) there cannot be 100 members of the putative class and (2) at least two-thirds of the putative class members are citizens of Indiana (Filing No. 39 at 23). They also argue that it is not possible for 100 putative class members to assert claims against IWP, because IWP was not formed until July 17, 2024, which postdates any alleged solicitation or sales of REAL investments. *Id.* at 23–24.

Both sides present evidence to support their arguments. Defendants submit a Declaration of Linarducci, in which he states that the total number of his current or former clients does not exceed sixty-five, and eighty percent of them are Indiana residents (Filing No. 39-1 ¶ 8). Plaintiffs

[1] The Second Amended Complaint alleges that IWP and Ducci are "wholly owned by Linarducci." (Filing No. 37 ¶¶ 8–9). These allegations, however, fail to properly allege the citizenship of IWP and Ducci because they do not identify IWP or Ducci's "members," as compared to their owner. *See Middlemen Serv. Professionals, LLC v. Aion Mgmt., LLC*, No. 23-cv-1336, 2024 WL 454975, at *2 (S.D. Ind. Feb. 6, 2024) (finding defendants did not adequately allege citizenship of limited liability company by asserting that "[the Defendant] is a wholly owned subsidiary of [another company]'—as opposed to identifying who the Defendant's *members* are"); *Great Am. Assurance Co. v. Michel*, No. 23-cv-1668, 2023 WL 6519499, at *1 (S.D. Ind. Oct. 5, 2023) (finding allegation identifying sole manager of limited liability company did not adequately identify members or citizenship). If Linarducci is the sole member of IWP and Ducci, Plaintiffs must allege as much.

submit a competing Declaration from their counsel, Ross Good ("Good"), stating he has analyzed source material revealing 110 putative class members who invested in the REAL program promoted by Linarducci, IWP, and Ducci (Filing No. 42-1 ¶¶ 4–6).

In their reply, Defendants move to strike Good's Declaration (Filing No. 43 at 10). They analogize this embedded motion to an evidentiary challenge properly included in summary judgment briefs under the Court's Local Rule 56-1 (Filing No. 43 at 1 n.1). However, as Plaintiffs point out, this is not a motion for summary judgment (Filing No. 44 at 1 n.1). The Motion to Strike is therefore improper. S.D. Ind. Local R. 7-1(a) ("A motion must not be contained within a brief, response, or reply to a previously filed motion, unless ordered by the court."). Accordingly, Defendants' Motion to Strike is **denied**.

Plaintiffs and Defendants each argue that the other has the burden of proving the requisite number of putative members for subject matter jurisdiction (Filing No. 42 at 18; Filing No. 43 at 13). Plaintiffs, as the parties invoking federal jurisdiction, bear the burden of proving subject matter jurisdiction generally. *See Hart v. FedEx Ground Package Sys. Inc.*, 457 F.3d 675, 679 (7th Cir. 2006). Additionally, Defendants correctly point out that the court in *Hart* stated that the party seeking an exemption to CAFA bears the burden of proving that exemption (Filing No. 43 at 13 & n.3). Since the Plaintiffs have not cited other support for shifting the general burden onto the Defendants for proving that there are 100 putative members and the Court has not found any in its research, the Court concludes that Plaintiffs bear the burden of proving that there are at least 100 putative class members.

The Plaintiffs have not met their burden. The evidence they cite is ambiguous at best. Good's Declaration claims to contain a list of investors who invested in REAL. However, the Declaration lacks sufficient explanation of the underlying data or the source of the data.

Additionally, the spreadsheet attached to the Declaration explicitly states that the information shows investments, when the Plaintiffs are required to show possible individuals who could be members of the class (Filing No. 42-2). Although the Declaration notes that these are the individual investors' last investment dates (Filing No. 42-1 ¶ 5), the evidence is too weak to prove the number of individuals who may qualify for the class. In contrast, Defendants provide a Declaration from Linarducci that is based on a list of claimants that was developed during bankruptcy proceedings and identifies specific individuals (Filing No. 39-1 ¶¶ 6–9; Filing No. 39-3 at 24–54).

Given the evidence presented, Plaintiffs have not met their burden of proving that there are at least 100 putative class members, so there is no diversity jurisdiction under CAFA.

**2. Supplemental Jurisdiction**

With the federal claim having been dismissed and diversity jurisdiction under CAFA having been denied, the Court must determine whether it should accept supplemental jurisdiction over the remaining state law claims. The Seventh Circuit has stated consistently that "the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial." *Groce v. Eli Lilly*, 193 F.3d 496, 501 (7th Cir. 1999); *see Al's Serv. Ctr. v. BP Prods. N. Am., Inc.*, 599 F.3d 720, 727 (7th Cir. 2010) (citing 28 U.S.C. § 1367(c)(3)).

Exceptions to the general rule exist: "(1) when the statute of limitations has run on the pendent claim, precluding the filing of a separate suit in state court; (2) substantial judicial resources have already been committed, so that sending the case to another court will cause a substantial duplication of effort; or (3) when it is absolutely clear how the pendent claims can be decided." *Davis v. Cook Cnty.*, 534 F.3d 650, 654 (7th Cir. 2008) (quoting *Wright v. Associated Ins. Cos. Inc.*, 29 F.3d 1244, 1251 (7th Cir. 1994)) (internal quotation marks omitted).

Here, the statute of limitations has not run on Plaintiffs' state law claims, as both federal and state law toll the relevant limitations period when claims are pending in a civil action (except in limited circumstances not present here). *See* 28 U.S.C. § 1367(d); Ind. Code § 34-11-8-1; *see also Hemenway v. Peabody Coal Co.*, 159 F.3d 255, 266 (7th Cir. 1998). Substantial judicial resources have not been expended, and it is not absolutely clear how the state law claims will be decided. Accordingly, the Court **intends to relinquish supplemental jurisdiction** over Plaintiffs' state law claims.[2]

## C. Leave to Amend and Jurisdictional Discovery

Plaintiffs have requested that the Court deny the Motion to Dismiss or, in the alternative, allow them leave to amend (Filing No. 42 at 20). The Seventh Circuit has instructed that "'[u]nless it is *certain* from the face of the complaint that any amendment would be futile or otherwise unwarranted, the district court should grant leave to amend after granting a motion to dismiss.'" *Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 519–20 (7th Cir. 2015) (emphasis in original) (quoting *Barry Aviation Inc. v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 687 & n.3 (7th Cir. 2004)). Here, although Plaintiffs have already had one chance to address the deficiencies identified by Defendants, the Court is not "*certain*" that Plaintiffs cannot cure these deficiencies if given a final opportunity to amend. Accordingly, Plaintiffs' request for leave to amend is **granted**. Further, the Court finds that jurisdictional discovery will aid both parties in determining whether the CAFA provides an independent basis for jurisdiction over Plaintiffs' state law claims, so the parties will be permitted to conduct jurisdictional discovery **before** Plaintiffs will be required to file their third amended complaint. The parties shall discuss the jurisdictional discovery process and Plaintiffs' deadline to amend with the Magistrate Judge.

[2] Because the Court dismisses Plaintiffs' Securities Act claim for the reasons stated above and intends to relinquish jurisdiction over Plaintiffs' state law claims, the Court need not reach Defendants' Rule 9(b) argument.

## IV. CONCLUSION

For the reasons explained above, the Court **DENIES** Defendants' embedded Motion to Strike (Filing No. 43), **GRANTS** Defendants' Motion to Dismiss (Filing No. 38) as to Plaintiffs' Securities Act claim (Count I) against IWP and Ducci, which are **dismissed without prejudice**, and intends to **relinquish** supplemental jurisdiction over Plaintiffs' remaining state law claims against IWP and Ducci.

Plaintiffs' request for leave to file a third amended complaint is **GRANTED**. Plaintiffs, IWP, and Ducci are **DIRECTED** to contact the chambers of the Magistrate Judge to discuss a plan for jurisdictional discovery and deadline for Plaintiffs to file a third amended complaint. If Plaintiffs do not file a third amended complaint, then the dismissal of their Securities Act claim against IWP and Ducci will be converted to a dismissal with prejudice, their state law claims against IWP and Ducci will be dismissed without prejudice for lack of subject matter jurisdiction, and this action shall proceed only as to Plaintiffs' claims in the Second Amended Complaint against Linarducci, which **remain stayed**.

**SO ORDERED:**

Date: 9/30/2026

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

Distribution:

Shawn M. Good
THE GOOD LAW GROUP
info@thegoodlawgroup.com

Ross M Good
The Good Law Group
ross@thegoodlawgroup.com

Kevin Dale Koons
KROGER GARDIS & REGAS LLP
kkoons@kgrlaw.com

Mark E. Maddox
MADDOX HARGETT & CARUSO, P.C.
mmaddox@mhclaw.com

Brian Pastor
Sonn Law Group PA
bpastor@sonnlaw.com

Jeffrey R. Sonn
Sonn Law Group PA
jsonn@sonnlaw.com